United States District Court
Southern District of Texas
FILED

APR 0 8 2014

David J. Bradley, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Michael D. Van Deelen, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| James Cain and | ) |
| | ) |
| Curt Drouillard and | ) |
| | ) |
| L.S. Spencer and | ) |
| | ) |
| Patricia Crittendon and | ) |
| | ) |
| Susan Murphy and | ) |
| | ) |
| Jeremy Lewis and | ) |
| | ) |
| Ronnie Anderson and | ) |
| | ) |
| Steven Smith and | ) |
| | ) |
| Rick Mann and | ) |
| | ) |
| Paul Lanham and | ) |
| | ) |
| William Pilkington and | ) |
| | ) |
| Georgan Reitmeier and | ) |
| | ) |
| Stephen Szymczak and | ) |
| | ) |
| Klein Independent School District and | ) |
| | ) |
| Ellen Spalding | ) |
| Defendants. | ) |

H-14·0923

Case No.

Jury

## PETITION

COMES NOW the Plaintiff, Michael D. Van Deelen, and sues the above-named defendants and as grounds therefore alleges:

1.    This action arises under the First and Fourteenth Amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42, United States Code, Section 1983.

2.    The jurisdiction of this Court is invoked under the provisions of Title 28, United States Code, Sections 1331 and 1343.

3.    Plaintiff, Michael D. Van Deelen, is a citizen of the United States of America who presently resides at 6014 Capella Park Drive, Spring, Texas 77379.

4.    At all times material herein, Defendant Cain was the Superintendent of Defendant Klein Independent School District (hereinafter, 'Klein ISD'); Defendant Drouillard was an Associate Superintendant of Human Resource Services at Klein ISD; Defendant Spencer was an Executive Director of Human Resource Services at Klein ISD; Defendant Crittendon was the Principal of Klein Forest High School; Defendant Murphy was an Associate Principal at Klein Forest High School; Defendant Lewis was an Assistant Principal (House 6 Principal) at Klein Forest High School; Defendants Anderson, Smith, Mann, Lanham, Pilkington, Reitmeier and Szymczak were members of the Klein ISD Board of Directors (hereinafter collectively referred to as 'Defendant School Board' or the 'School Board Defendants'); and Defendant Spalding was the attorney for Defendant Klein ISD.

5.     At all times material herein, the individual defendants worked under the supervision and guidance of Defendant School Board.

6.     At all times material herein, the individual defendants, except the School Board Defendants, worked under the supervision and guidance of Defendant Cain.

7.     At all times material herein, Defendant Spencer worked under the supervision and guidance of Defendant Druillard.

8.     At all times material herein, Defendants Murphy and Lewis worked under the supervision and guidance of Defendant Crittendon.

9.     Plaintiff sues all individual defendants in both their individual and official capacities.

## BACKGROUND

10.     On information and belief:

11.     Klein Forest High School (hereinafter, 'KF') has pervasive discipline problems.  Many of the students can be characterized as out-of-control.  The inappropriate behavior includes verbal abuse of teachers and other students, constant profanity, sexual innuendo, improper dress (including the wearing of 'hoodies' and drooping pants and shorts), skipping class, constant tardies, assault and battery.

12.     Many of the infractions of the misbehaving students rise to the level of misdemeanors and felonies, but the inappropriate behavior is not reported to the appropriate authorities by the KF administration.  Teachers who attempt to report the inappropriate behavior are ignored, chastised for 'causing' it to occur or reprimanded and retaliated against for reporting it.

13.     The Defendants repeatedly fail to follow state law in the discipline of students at KF.  KF teachers are essentially forced to keep unruly, disrespectful and violent students in their classrooms even though they do not want them there.  KF students know, or soon learn, that they can engage in improper behavior, do little or no work and still receive a passing grade of 70.  (The fly in the ointment is the fact that these students cannot pass the end-of-course tests because they have done no classroom work.)

14.     Mr. Mario Cruz was a first-year teacher at Klein Forest High School during the first semester of the current school year.  Mr. Cruz taught Geometry to five periods of students.  Louis Trigueros was a student in Mr. Cruz's fifth period Geometry class.

15.     Student behavior in Mr. Cruz's first, fifth and seventh period classes was incomprehensibly bad.  Even though Mr. Cruz consistently and regularly sought help from the KF administration, including Defendant Lewis, in handling the discipline problems, he was largely ignored and told to handle the discipline problems internally (i.e. – by himself and in his classroom).

16.     Louis Trigueros was a particular problem for Mr. Cruz.  Louis was absent from Geometry class 27 days during the first semester of the current year.  However, he was only reported as being absent from his other classes on five or six days.  This means that Louis was often intentionally skipping his Geometry class but attending his other classes during the course of a school day.  Even though this information was readily available to KF administrators, nothing was done about it.  In violation of district policy, Louis was allowed to roam the halls during Geometry class with impunity.

17.     When Louis did attend Mr. Cruz's Geometry class, his behavior consistently disrupted the class.  Louis would often spend his time causing a

ruckus in class and then ask to use the restroom.  He would gain permission to use the restroom, leave class to do so, and not return.  Accordingly, many of the days that Louis was actually counted as present in class were not days in which Louis actually remained in class for the entire period.

18.    Mr. Cruz attempted to send misbehaving students, including Louis Trigueros, to the office of Defendant Lewis, but Defendant Lewis instructed Mr. Cruz not to send students to him.  Against district policy, Defendant Lewis forced Mr. Cruz to deal with inappropriate behavior himself in his own classroom and not seek help from the KF administration. Because Mr. Cruz could not get any help with student discipline from Defendant Lewis or other KF administrators, Mr. Cruz let Louis Trigueros go to the restroom every time Louis showed up for class, knowing (and probably hoping) that Louis would not return to class.

19.    For the first semester of the current school year, Louis Trigueros earned a 28% (out of 100%) in fifth period Geometry and he received a conduct rating of 'U' (Unsatisfactory).  In the six weeks grading period that was coterminous with the end of the first semester, Louis earned a 1% (out of 100%) in Geometry.  He was also given a conduct rating of 'U' in his sixth period English class.

20.    Because of the severe strain caused by inappropriate student behavior in his classrooms, and the lack of assistance from the KF administration in dealing with it, Mr. Cruz, trying to maintain his physical and emotional health, attempted to resign his teaching position a few weeks after the school year started.  The KF administration convinced Mr. Cruz to stay on through the end of the semester.

21.    After Mr. Cruz first tried to resign, the KF administration knew that they had to hire another Geometry teacher to take over for Mr. Cruz

during the second semester. That is when Plaintiff received a call to interview for a teaching position at KF. The interview went well and Plaintiff was offered a teaching position, but Plaintiff was told that he was being hired to be a PreCalculus teacher, not a Geometry teacher. The intent of the KF administration was to get Plaintiff on board when they had the chance, then put him into Mr. Cruz's out-of-control classrooms when Mr. Cruz left at the semester break. This plan was not conveyed to Plaintiff when he was interviewed, when he was hired or any time before the end of the first semester. At no time was Plaintiff told that he was going to be teaching disruptive, out-of-control, delinquent students. Plaintiff was led to believe that he would be teaching well-behaved juniors and seniors taking PreCalculus.

22.    Plaintiff started work on October 16, 2013, and was assigned as a roving PreCalculus teacher who would go into various PreCalculus classrooms during the day and tutor students who needed help. This went very well and Plaintiff received a near-excellent PDAS (Professional Development and Appraisal System) review from Defendant Lewis. But on the last day of school before the Christmas break, Plaintiff was called into Associate Principal Michelle Nance's office and informed that he would no longer be a PreCalculus teacher when the students came back from their holiday break. Instead, Plaintiff was informed that he would be taking over Mr. Cruz's Geometry classes.

23.    Mrs. Nance did not tell Plaintiff that the student behavior in three of Mr. Cruz's classes was out-of-control. Had she done so, Plaintiff may well have refused the assignment. Mrs. Nance actually went out of the way to hide the bad behavior from Plaintiff. She instructed Plaintiff not to visit any of Mr. Cruz's classrooms before Mr. Cruz left.

24.     On or about the first day that school was in session after the Christmas break, Plaintiff came across two students who were carving a hole in a concrete block wall in one of the hallways.  Plaintiff told them to stop and they left.  Plaintiff reported the incident to the KF administration. Nothing was ever done to identify, apprehend or discipline the two students who were walking around school with a knife carving up the walls.

25.     After the Christmas break, Plaintiff took over Mr. Cruz's Geometry classes.  The behavior of the first, fifth and seventh period classes remained abysmal.  Plaintiff was shocked to witness the inappropriate conduct of many of the students.  They verbally abused Plaintiff, continually refused to do any class work, came late to class, left class during the period without permission, used constant profanity and even assaulted and battered each other in Plaintiff's presence.  Plaintiff immediately sought help from Defendant Lewis, Plaintiff's Assistant Principal. Defendant Lewis' operating instruction to Plaintiff was 'Whip them into shape!'  Other than providing this instruction, Defendant Lewis refused to help Plaintiff discipline the students in any way.  Whenever Plaintiff would send a misbehaving student to his office, Defendant Lewis would send the student right back into Plaintiff's classroom.  On many different occasions, Plaintiff told Defendant Lewis that Plaintiff did not want the violent, misbehaving and disruptive students back in Plaintiff's classroom because they made it impossible for the other students to learn and because they were violent and posed a threat to the safety of Plaintiff's students and himself.  Nevertheless, Defendant Lewis, in violation of state law, always immediately sent said students back to Plaintiff's classroom.

26.     The behavior of the students in Plaintiff's first, fifth and seventh period Geometry classes started out bad and got worse as the

students sensed that there was nothing Plaintiff could do to stop them from misbehaving and as they felt a sense of empowerment resulting from Defendant Lewis constantly sending them back into Plaintiff's classroom without disciplining them in any way.

27.     It wasn't long before some of the male students began to act in a physically intimidating and violent fashion.  On February 4, 2014, two of Plaintiff's first period students, Daniel Ramon and Marquan Reed, became disruptive, intimidating, loud, threatening and aggressive during class. Trying to end the disruption, and out of fear for the safety of Plaintiff's students and himself, Plaintiff sent them out of the classroom and then made a report to the campus police.  Said police report included Plaintiff's complaint that Defendant Lewis repeatedly sent misbehaving students back to class even though Plaintiff had requested that they not be allowed to return out of fear for the safety of Plaintiff's students and himself.  Later the same day, Defendant Lewis chastised Plaintiff for calling the police and told Plaintiff not to call the police again.  Defendant Lewis was extremely upset that Plaintiff had made a police report of the incident.

28.     Plaintiff was subsequently called into the office of the KF Principal, Defendant Crittendon.  Defendant Crittendon was very upset that Plaintiff had called the campus police to report the incident in his classroom on February 4.  During the meeting, Defendant Crittendon told Plaintiff not to call the campus police again.  Also during the meeting, in an attempt to intimidate Plaintiff into stop making police and other reports of student misbehavior, Defendants Crittendon and Lewis made it clear to Plaintiff that no school district would hire Plaintiff in the future if Plaintiff made waves at Klein Forest High School.

29.     Having realized that they could act in a threatening, abusive,
manner in Plaintiff's classroom with impunity, Daniel Ramon's and
Marquan Reed's disruptive, abusive, threatening and antagonistic behavior
during first period escalated.  Plaintiff sent Defendant Lewis an email
informing him about their continuing inappropriate conduct.  The email told
Defendant Lewis that Plaintiff did not want those students back in his
classroom out of fear for the safety of Plaintiff's students and himself.
Plaintiff's email informed Defendant Lewis that, if Daniel Ramon or
Marquan Reed came back into Plaintiff's classroom over Plaintiff's
objection, Plaintiff would make another police report the next time they
acted in a threatening, abusive, manner.  Defendant Lewis did not ever
respond to the email and the next day Daniel and Marquan were still in class.

30.     After Plaintiff sent the email to Defendant Lewis informing him
that Plaintiff would make a police report against Daniel Ramon and/or
Marquan Reed, Plaintiff was summoned into another meeting in Defendant
Crittendon's office.  Defendant Crittendon had called Defendant Spencer,
Defendant Klein ISD's Human Resources officer, to the meeting.  During
the meeting, Defendants Crittendon and Spencer, in violation of district
policy, told Plaintiff that Plaintiff was not a 'good fit' for Klein Forest High
School.  Defendant Crittendon threatened to 'remove' Plaintiff from his
classroom if Plaintiff did not stop making police and other reports
concerning disruptive students.  The message Plaintiff received was that he
would be terminated if he continued to make reports, including police
reports, concerning the disruptive and/or violent behavior of students in his
and other teachers' classrooms.

31.     After the meeting with Defendants Crittendon and Spencer,
Defendant Lewis completely shunned the Plaintiff.  Defendant Lewis would

not talk to Plaintiff or meet with Plaintiff.  Defendant Lewis would not come
to Plaintiff's classroom even when Plaintiff called for help in dealing with
the unruly students.  Plaintiff informed Defendant Crittendon about this in
an email.  The email also informed Defendant Crittendon that Plaintiff was
thinking about talking to Superintendent Cain about the disciplinary problem
that Plaintiff was having in his classroom.  Defendant Crittendone did not
ever respond to the email.

32.    On February 7, 2014, the door to Plaintiff's classroom
happened to be open.  A large male student had found himself locked out of
Mrs. Boen's English classroom which was next to Plaintiff's classroom.  All
of a sudden, the student yelled at the top of his voice, 'OPEN THE
FUCKING DOOR, BITCH!'  Plaintiff reported this abusive, threatening,
conduct to Defendants Crittendon and Lewis.  No action was taken against
the offending student.

33.    On February 11, 2014, Marquan Reed told Plaintiff during first
period that he was going to fight Plaintiff and that he was going to 'whoop
your ass'.  Plaintiff emailed Defendant Lewis about this.  Defendant Lewis
did not respond to the email and Plaintiff then made a police report to the
campus police.  Said police report included Plaintiff's complaint that
Defendant Lewis repeatedly sent misbehaving students back to class even
though Plaintiff had requested that they not be allowed to return.  Plaintiff
subsequently encountered Defendant Lewis in the hallway, informed
Defendant Lewis about Marquan's threats and about the fact that Plaintiff
had made a police report about the incident.  Plaintiff told Defendant Lewis
that Plaintiff did not want Marquan Reed back in Plaintiff's classroom due
to his disruptive behavior and out of fear for the safety of Plaintiff's students

and himself.  In spite of Plaintiff's request to the contrary, Marquan Reed was allowed to come back to Plaintiff's classroom the very next day.

34.    One of the worst-behaving students in Plaintiff's fifth period class was Louis Trigueros.  The bad behavior that Louis exhibited when Mr. Cruz was his teacher continued in Plaintiff's class.  He was absent much of the time.  When he did come to class, Louis spent the majority of his time distracting the class with constant talking which included disrespectful comments to Plaintiff.  Louis had informed Plaintiff that he had started school in Bakersfield, California, at the beginning of the current school year.  However, he explained that he was expelled from his Bakersfield high school on the second day of school for fighting.  Louis also had a tattoo of the state of California on his neck.  Plaintiff considered the tattoo to be a gang tattoo.  Plaintiff was afraid of Louis because of his demeanor, his vulgar and disrespectful comments to Plaintiff during class, the fact that he had been kicked out of school for fighting and because he had an apparent gang tattoo on his neck.

35.    On February 11, 2014, Louis Trigueros was late to class so Plaintiff instructed him to go get a tardy slip from Defendant Lewis.  (Getting tardy slips for students late to class was a common, well-known procedure instituted by the Klein Forest administration as a method of tracking tardy students.)  Because Louis did not want to get a tardy slip, he spent several minutes verbally abusing Plaintiff through the locked classroom door.  (The door has a window through which persons can see and hear in and out of the classroom.)  Louis eventually left.

36.    When Louis returned to class, he began to pound on the door loudly and repeatedly in order to gain entrance.  Louis also directed verbally abusive language at Plaintiff through the door.  Plaintiff instructed him to

report to Defendant Lewis because his demeanor, past history of violent behavior and abusive language caused Plaintiff to fear for the safety of Plaintiff's students and himself. Plaintiff did not let Louis enter his classroom. Later that day, Plaintiff informed Defendant Lewis that Plaintiff did not want Louis to return to Plaintiff's classroom because Plaintiff thought his presence placed Plaintiff's students and himself in danger because of Louis' violent, abusive, behavior and because Louis' behavior was disruptive to the learning process. Nevertheless, Defendant Lewis allowed Louis to return to return to Plaintiff's classroom the very next day.

37.     The following day, February 12, 2014, (the day after Plaintiff had made the police report about Marquan Reed's threats to Plaintiff) the same sequence of events occurred. Louis Trigueros was late to class so Plaintiff instructed him to go get a tardy slip from Defendant Lewis. Because he did not want to get a tardy slip, he spent several minutes verbally abusing Plaintiff through the locked classroom door. When Louis eventually came back with a tardy slip, he began banging loudly and repeatedly on the door as he had done the previous day. He again directed verbally abusive language at Plaintiff through the locked classroom door. As Plaintiff did the previous day, Plaintiff instructed Louis to go to Defendant Lewis' office because his demeanor, his past history of violent, disruptive, behavior and his abusive language caused Plaintiff to fear for the safety of Plaintiff's students and himself. Plaintiff told Louis through the locked classroom door that he could not enter Plaintiff's classroom.

38.     While this was happening, another student who had gotten a tardy slip came to the door and requested to enter Plaintiff's room. Plaintiff told the student that he could enter as soon as Plaintiff opened the door. Before Plaintiff opened the door, Plaintiff instructed Louis, who had not left

as instructed, not to enter the classroom when Plaintiff opened the door for
the other student. Plaintiff then opened the door for the other student to
enter, which he did. There were other students standing there with tardy
slips that Plaintiff wanted to admit, but Louis was standing between Plaintiff
and them. Plaintiff again told Louis that he could not enter Plaintiff's
classroom and again instructed him to report to Defendant Lewis' office.

39.    At that point, Louis became even more enraged. He told
Plaintiff that he was going to 'stick' Plaintiff. Plaintiff interpreted this to
mean that Louis was going to attack Plaintiff with a knife. Any student can
walk into any Klein Forest classroom with a weapon at any time, so Plaintiff
was extremely fearful for his safety and the safety of his students.

40.    After Louis told Plaintiff that he was going to 'stick' Plaintiff,
he attempted to gain entrance to Plaintiff's classroom by pushing Plaintiff
out of the way. After Louis assaulted and battered the Plaintiff, Plaintiff,
thinking that Louis had a knife in his possession and fearing for the safety of
Plaintiff's students and himself, pushed Louis across the hallway and pinned
him up against the wall (lockers) and held him there until Defendant Lewis
arrived.

41.    While reflecting on the incident, Plaintiff thought it was quite a
coincidence that Defendant Lewis was the administrator who showed up
after the incident. (KF is a very large school with more than a dozen
administrators.) Plaintiff found out later from Defendant Klein ISD
personnel that Defendant Lewis had gone to the video room after the
students had gotten tardy slips and began to monitor the door of Plaintiff's
classroom. Defendant Lewis had consistently refused to help Plaintiff with
classroom discipline and Defendant Lewis knew that the discipline problems
Plaintiff was facing were increasing, escalating and becoming more

dangerous by the day.  Defendant Lewis had repeatedly refused to expel violent, abusive and disruptive students from Plaintiff's classroom even though Plaintiff had asked him to do so.  Defendant Lewis also knew that Plaintiff had had a problem with Louis Trigueros and other students being tardy the day before.  Defendant Lewis also knew that Mr. Cruz had similar problems with Louis Trigueros and other misbehaving students.  Knowing these facts, Defendant Lewis should have come to Plaintiff's classroom to help manage the discipline problem Plaintiff was sure to have when the students returned with their tardy slips.  Instead, Defendant Lewis went to the video monitors and watched and waited for the fireworks to start! Defendant Lewis did this so that he could gather 'evidence' of improper behavior against Plaintiff that he, Defendant Crittendon and Defendant Spencer could subsequently use to remove Plaintiff from Plaintiff's position at Klein Forest High School.  The Defendants wanted to get rid of Plaintiff because Plaintiff was making police and other reports about the disruptive, violent, out-of-control behavior of certain Klein Forest High School students, one of whom was a Klein Forest football player (Marquan Reed).

42.     After Defendant Lewis got the video of the incident with Louis Trigueros, he and Defendant Susan Murphy edited it by removing the beginning and the end of the incident.  All that remained was a video of Plaintiff shoving Louis across the hallway.  Defendants Lewis and Crittendon then called Defendant Spencer who came to Klein Forest High School, saw the edited video and told Plaintiff that Plaintiff was being removed from his teaching assignment.  Defendant Spencer asked Plaintiff if Plaintiff would like to resign.  Plaintiff refused to resign.  Defendant Klein ISD police officer Marlon Runnels and another police officer were present.

Officer Runnels told Plaintiff that he would call Plaintiff for an interview at a later date if there was going to be a criminal investigation into the incident.

43.     Later on February 12, 2014, the same edited video was shown to Defendant Drouillard, Associate Superintendant of Defendant Klein ISD, and perhaps to Defendant Cain, the Superintendent of Defendant Klein ISD. The next day, February 13, 2014, Plaintiff was summoned to Defendant Drouillard's office.  Defendants Crittendon and Spencer were also there. Defendant Drouillard gave Plaintiff a letter dated February 12, 2014, signed by Defendant Cain, placing Plaintiff on administrative leave.  In the letter, Defendant Cain, acting on a recommendation from Defendant Spalding, prohibited Plaintiff from communicating with any Defendant Klein ISD students, parents and employees regarding issues related to Plaintiff's employment and/or the allegations.  Defendant Drouillard further told Plaintiff that Defendant Cain was going to recommend Plaintiff's termination to the Defendant School Board during its March, 2014, meeting. Defendant Drouillard told Plaintiff this even though Defendant Drouillard admitted that the 'investigation' into the incident was ongoing.  Defendant Spencer again asked Plaintiff if Plaintiff would like to resign.  Plaintiff refused to resign.

44.     As of February 12, 2014, the day Plaintiff was removed from his teaching duties, Louis Trigueros had been absent from Geometry on seven days of the second semester and his grade is estimated to have been under 5% (out of 100%).  Louis had failed to take the two tests that had been given to Plaintiff's Geometry class during the second semester and he had failed to turn in five out of the six homework assignments the class had been assigned during that time.

15

45.    On Monday morning, February 17, 2014, Plaintiff filed a grievance with Defendant Druillard.  The grievance was hand-delivered to the district office for Defendant Druillard.  At the same time, Plaintiff hand-delivered a Notice of Claim to the district office for Defendant Cain.   The grievance and the Notice of Claim concerned Plaintiff's unfair, improper suspension from his teaching duties as the result of the incident on February 12 with Louis Trigueros.  The grievance and the Notice of Claim included notification to Defendants Klein ISD, Dr. Cain and Druillard that Defendant Lewis had sent misbehaving students back to Plaintiff's classroom even though Plaintiff had asked him not to.

46.    On Monday, February 17, 2014, after she had received a copy of Plaintiff's grievance and Notice of Claim, Defendant Spalding, attorney for Defendant Klein ISD, attempted to get Plaintiff to withdraw the grievance and to promise not to sue the Defendants.  Plaintiff refused.  The grievance was over Plaintiff's suspension on February 13, 2014, so Plaintiff had to file it by February 23, 2014, for it to be in compliance with district policy.  After Plaintiff refused to withdraw the grievance on Monday, February 17, 2014, Defendants Spalding and Druillard waited until Friday, February 21, 2014, to send Plaintiff a letter stating that the grievance had been denied because it did not have a district-approved cover sheet attached to it.  Defendants Druillard and Spalding hoped that, by waiting an entire working week to send Plaintiff the letter, Plaintiff would not receive it in time to be able to resubmit his grievance within the ten-day window allowed for filing it.  Luckily, Plaintiff received the letter denying the grievance on Saturday afternoon, February 22, 2014.  Plaintiff subsequently added a cover sheet to the grievance (grievance 1) and, in an abundance of caution, served

it on Defendant Druillard at his residence on Sunday, February 23, 2014, the tenth day after February 13, 2014.

47.    During the week of February 17, 2014, Defendant Spalding informed Plaintiff's attorney on two occasions that there was not going to be a criminal investigation into the incident with Louis Trigueros.  Neither was Plaintiff ever contacted during that time by officer Runnels or any other Defendant Klein ISD police officer to come in and give a statement about the incident as Plaintiff had been told would be necessary by officer Runnels if an investigation were commenced.  Nevertheless, on Monday, February 24, 2014, in retaliation for Plaintiff's having served the grievance on Defendant Drouillard the previous day, Defendants Spalding, Druillard and Cain instructed Officer Runnels to issue a criminal citation to Plaintiff even though they knew that Plaintiff had committed no crime.

48.    Plaintiff received the criminal citation from officer Runnels on Tuesday, February 25, 2014.  The next day, February 26, 2014, Plaintiff filed a second grievance (grievance 2), as well as a complaint (complaint 1) under Defendant Klein ISD policy DIA with the Defendant School Board President and its members individually, that Plaintiff had been retaliated against by the Defendants for filing the February 23, 2014, grievance (grievance 1) when they knowingly caused Plaintiff to be charged with a crime (assault) that the Defendants knew he had not committed.  In violation of district policy, the School Board Defendants, on the recommendation of Defendant Spalding, refused to hear the complaint (complaint 1).  Defendant Klein ISD subsequently abandoned the criminal complaint that had been issued to Plaintiff.

49.    Over the next few days, Plaintiff personally delivered to each Defendant School Board member a background document which described

17

the disruptive, violent, out-of-control classroom conditions at Klein Forest High School.  The document included notification to the individual Defendant School Board members that Defendant Lewis had sent misbehaving students back to Plaintiff's classroom even though Plaintiff had asked him not to.

50.  On Monday, March 3, 2014, Defendant Klein ISD held a regular school board meeting.  On the agenda for the meeting was the proposed termination of Plaintiff's contract effective at the end of the current school year.  Prior to the meeting, Plaintiff made a written request to Defendant Cain that Plaintiff be allowed to speak to the Defendant School Board members in closed session during the meeting.  Defendant Cain did not respond to the email and Plaintiff was not allowed to speak to the Defendant School Board in closed session concerning the proposed termination of Plaintiff's contract.  During the March 3 meeting the Defendant School Board, acting on the recommendation of Defendants Cain and Spalding, terminated Plaintiff's contract effective at the end of the current school year 'in the best interests of the District'.  Plaintiff received a letter from Defendant Cain a few days later stating the same.  The short letter, only four sentences long, did not provide any reasons why Plaintiff had been terminated.  The letter stated that Plaintiff had been terminated pursuant to Klein policy DFAB, from which there is no appeal.  By the Defendant School Board's actions, Plaintiff was not allowed to make any presentation before them before they terminated Plaintiff's contract with no appeal possible.

51.  On March 6, 2014, Plaintiff's grievances 1 and 2 were heard before Dr. Jan Marek, Associate Superintendent of School Administration for Defendant Klein ISD.  Also participating on behalf of Defendant Klein

ISD was Defendant Spalding. Defendant Spalding improperly attempted to expand the scope of the hearing by asking Plaintiff questions that attempted to discern Plaintiff's legal basis for possibly instituting a lawsuit against the Defendants. During the hearing, Plaintiff's testimony included the fact that that Defendant Lewis had sent misbehaving students back to Plaintiff's classroom even though Plaintiff had asked him not to.

52.     On March 17, 2014, Plaintiff filed a third grievance (grievance 3) by hand-delivering it to the district offices. Grievance 3 concerned the unfair, improper termination of Plaintiff's teaching contract effective at the end of the current school year that the Defendant School Board had approved on March 3. Grievance 3 included notification to Defendants Klein ISD and Cain that Defendant Lewis had sent misbehaving students back to Plaintiff's classroom even though Plaintiff had asked him not to.

53.     On March 18, 2014, Plaintiff filed a second complaint pursuant to Klein policy DIA (complaint 2) with the President of the Defendant School Board and the individual Defendant School Board members. The complaint alleged that the district had terminated Plaintiff's teaching contract in retaliation for Plaintiff's filing police reports and grievances concerning the disruptive, violent, out-of-control behavior that exists at Klein Forest High School. In violation of district policy, and on the recommendation of Defendant Spalding, the Defendant School Board refused to hear the complaint (complaint 2).

54.     On March 27, 2014, Dr. Marek issued her decision in grievances 1 and 2. Dr. Marek, acting on the recommendation of Defendant Spalding, dismissed Plaintiff's grievance 1 (concerning Plaintiff's suspension) and, contrary to law and district policy, prohibited Plaintiff from appealing her decision to a level 3 hearing before an independent hearing

officer.  Dr. Marek, acting on the recommendation of Defendant Spalding, also denied Plaintiff's grievance 2 (district employees knowingly caused Plaintiff to be issued a false police citation).  Dr. Marek's decisions, which were clearly written by Defendant Spalding, failed to address Plaintiff's allegations of improper behavior by Klein students, employees and administrators.  The decision also failed to investigate Plaintiff's allegations of retaliation and retaliation for whistle blowing.  In her letter, Dr. Marek, acting under the direction and supervision of Defendant Spalding, also demanded that Plaintiff turn in to the district certain of the exhibits that Plaintiff had submitted during the March 6 grievance hearing.  Her reason was that the exhibits were student records that Plaintiff could not have in his possession and that Plaintiff could not use as exhibits in Plaintiff's grievance hearings.  However, Mrs. Marek did not tell Plaintiff which documents out of the many submitted she wanted returned.   Her letter implied that Plaintiff would be arrested if Plaintiff did not return the unnamed, unspecified, records.  Plaintiff subsequently asked Dr. Marek to specifically identify the records that she though Plaintiff could not legitimately have and, for each record so identified, to explain why Plaintiff could not have the record.  Dr. Marek, acting under the supervision and direction of Defendant Spalding, refused to do this.  Plaintiff appealed Dr. Marek's decisions on March 28, 2014.

55.    On March 27, 2014, Plaintiff contacted Defendant Spalding, attorney for Defendant Klein ISD, and informed her that Plaintiff was contemplating a civil suit against Klein ISD and certain of its employees.  It was implied to Defendant Spalding that she would be named a defendant in the suit at least partly because of her involvement, which she did not deny, in directing certain of the Defendants to knowingly cause Plaintiff to be

charged with a criminal offense she and they knew that Plaintiff did not commit and because of her involvement, which she did not deny, in directing certain of the Defendants to prohibit Plaintiff from speaking to or associating with Klein ISD employees, students and parents.  On April 3, 2014, in retaliation for Plaintiff's threatening suit against the Defendants, Defendants Spalding and Cain directed the Klein ISD police department to re-institute the criminal charge against Plaintiff, even though they knew that Plaintiff had not committed the crime for which he was charged.

56.   At all times material, Defendant Klein ISD had a policy in place under which disruptive, out-of-control, violent, abusive and profane students were not to be removed from classrooms, even upon a teacher's insistence that the students be removed.

## FEDERAL CLAIMS

## COUNT 1

## RETALIATION FOR THE EXERCISE OF FIRST AMENDMENT RIGHT OF FREEDOM OF SPEECH

57.   The foregoing is incorporated herein by reference.

58.   The Defendants retaliated against the Plaintiff for Plaintiff's constitutionally-protected speech.  Said speech included plaintiff's reports to police, school officials and the Defendants of the violent, out-of-control, disruptive and often criminal behavior of students at Klein Forest High School, including students in Plaintiff's Geometry classes.  Plaintiff's protected speech also included the grievances, complaints and notice of

claim Plaintiff made to the Defendants which detailed the improper student behavior as detailed herein.  Plaintiff's protected speech also included his telling Defendant Spalding on March 27, 2014, that he was considering filing suit against the Defendants.

59.    Plaintiff suffered adverse treatment and employment decisions as a result of the Defendants' retaliation against him.  In order to intimidate Plaintiff into quitting and/or to manufacture 'evidence' of improper conduct against him, the Defendants, in violation of state law, continued to send offending students back into Plaintiff's classroom even though Plaintiff had asked that the disruptive students not be allowed to return.  By their actions, the Defendants knowingly created a virtual powder keg in Plaintiff's classrooms until, on February 12, 2014, Plaintiff was assaulted by one of the students he had previously sent out of his classroom.  In said assault, the student told Plaintiff that the student was going to 'stick' (knife) the Plaintiff and then pushed the Plaintiff.

60.    The Defendants' retaliation against the Plaintiff continued when the Defendants suspended Plaintiff with pay and sent Plaintiff home on February 13, 2014.  The Defendants' retaliation against the Plaintiff continued when the Defendants caused a criminal citation to be issued to the Plaintiff on February 25, 2014, even though the Defendants knew Plaintiff had not committed a crime.  The Defendants' retaliation against the Plaintiff continued when the Defendants terminated the Plaintiff's employment contract as of the end of the current school year on March 3, 2014.  The Defendants' retaliation against the Plaintiff continued when the Defendants caused a criminal charge to be re-instituted against the Plaintiff on March 27, 2014, even though they knew that Plaintiff had not committed the crime for which he was charged.  The Defendants' retaliation against the Plaintiff

continued when the Defendants knowingly demanded that the Plaintiff return to them, under the implied threat of arrest if he didn't, unknown, unspecified documents the description of which the Defendants refused to divulge to Plaintiff.

61.   Plaintiff's protected speech as detailed herein involved matters of public concern.

62.   Plaintiff's interest in commenting on matters of public concern (violence, assaults, batteries, threats, profanity, disruptive behavior, etc., at Klein Forest High School) outweighed any possible interest the Defendants could have had in promoting efficiency.

63.   Plaintiff's protected speech motivated the Defendants' actions against him as detailed herein.

64.   Plaintiff was damaged by the Defendants actions against him.

65.   The actions of the Defendants against the Plaintiff as detailed herein caused the Plaintiff to suffer severe emotional distress.  As a direct result of the Defendants' actions against him, Plaintiff suffers from nausea, headaches and stomach disorders.  Plaintiff is stressed, anxious and depressed.  Plaintiff has difficulty sleeping and eating and is uncharacteristically irritable.  Plaintiff lives in constant fear of continued harassment, including false arrest, by the Defendants.  Plaintiff lives with a constant feeling of doom.  Plaintiff has sought medical care for his symptoms and is currently on medication to help alleviate said symptoms.

66.   In addition to the severe emotional distress visited upon the Plaintiff by the Defendants, Plaintiff has suffered lost future income, reputation damage and medical expenses as a result of the actions of the Defendants.

## COUNT 2

## VIOLATION OF PLAINTIFF'S 14TH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS

67.     The foregoing is incorporated herein by reference.

68.     The Defendants violated Plaintiff's substantive due process rights by virtue of their abusive, irrational and malicious abuse of government power that shocks the conscience.

69.     In order to intimidate Plaintiff into quitting and/or to manufacture 'evidence' of improper conduct against him, the Defendants, in violation of state law, continued to send offending students back into Plaintiff's classroom even though Plaintiff had asked that the disruptive students not be allowed to return.  By their actions, the Defendants knowingly created a virtual powder keg in Plaintiff's classrooms until, on February 12, 2014, Plaintiff was assaulted by one of the students he had previously sent out of his classroom.  In said assault, the student told Plaintiff that the student was going to 'stick' (knife) the Plaintiff and then pushed the Plaintiff.

70.     Prior to and during the assault of Plaintiff, Defendant Lewis had stationed himself in Klein Forest High School's video surveillance room and was filming the outside of Plaintiff's classroom waiting for something to happen that he and Defendants Crittendon and Spencer could use to remove the Plaintiff from his teaching duties at Klein Forest.  After the assault of Plaintiff by student Louis Trigueros, Defendants Lewis and Murphy edited the video by removing the beginning of the video in which Louis Trigueros was violently pounding on the door of Plaintiff's classroom and using

24

abusive language directed at Plaintiff in the attempt to gain entrance into Plaintiff's classroom. Defendants Lewis and Murphy also edited the video by removing the end of the video which showed Plaintiff simply restraining Louis Trigueros until help arrived. Plaintiff also believes that Defendants Lewis and Murphy also edited the video by causing it to be zoomed out so that the details of the incursion by Louis Trigueros were obscured. Defendants Lewis and Murphy edited the video as described herein in order to make it falsely appear that Plaintiff had committed an unprovoked attack on Louis Trigueros. When Defendants Lewis and Murphy had finished editing the video, the only thing that remained was video from a distance of Plaintiff pushing Louis Trigueros up against some lockers in a seemingly unprovoked attack. Defendants Lewis and Murphy immediately showed the edited video to Defendants Crittendon and Spencer, who suspended the Plaintiff from his teaching duties.

71.    Furthermore, the Defendants caused a criminal citation to be issued to the Plaintiff on February 25, 2014, even though the Defendants knew Plaintiff had not committed a crime. They did this after Plaintiff refused Defendant Spalding's attempt to get Plaintiff to drop the grievance Plaintiff had just filed against the school district and certain of its employees, including Defendant Lewis, and after Plaintiff refused to promise that he would not sue the Defendants. The Defendants subsequently abandoned the complaint. However, after Plaintiff informed Defendant Spalding on March 27, 2014, that he was contemplating suing the Defendants, the Defendants knowingly had the charge re-issued even though they knew Plaintiff had not committed the crime for which he was charged.

72.    The Defendants' conscious-shocking actions against the Plaintiff continued when the Defendants knowingly demanded that the

Plaintiff return to them, under the implied threat of arrest if he didn't, unknown, unspecified, documents the description of which the Defendants refused to divulge to Plaintiff.

73.    Plaintiff's constitutional rights, including his right to be free of the conscience-shocking behavior of the Defendants as described herein were clearly established when the Defendants' adverse actions against him occurred.

74.    The Defendants caused the conscious-shocking behavior that adversely affected the Plaintiff as detailed herein.

75.    The Defendants' conscious-shocking actions against the Plaintiff as detailed herein were not objectively reasonable by any standard that can be applied.

76.    Plaintiff was damaged by the Defendants' actions against him.

77.    The actions of the Defendants against the Plaintiff as detailed herein caused the Plaintiff to suffer severe emotional distress.  As a direct result of the Defendants' actions against him, Plaintiff suffers from nausea, headaches and stomach disorders.  Plaintiff is stressed, anxious and depressed.  Plaintiff has difficulty sleeping and eating and is uncharacteristically irritable.  Plaintiff lives in constant fear of continued harassment, including false arrest, by the Defendants.  Plaintiff lives with a constant feeling of doom.  Plaintiff has sought medical care for his symptoms and is currently on medication to help alleviate said symptoms.

78.    In addition to the severe emotional distress visited upon the Plaintiff by the Defendants, Plaintiff has suffered lost future income, reputation damage and medical expenses as a result of the actions of the Defendants.

## STATE CLAIMS

79.    Plaintiff respectfully requests this Court to accept jurisdiction over Plaintiff's state claims.

## COUNT 3

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80.    The foregoing is incorporated herein by reference.

81.    The Defendants acted intentionally or recklessly in inflicting severe emotional distress upon the Plaintiff and their conduct was extreme and outrageous.

82.    In order to intimidate Plaintiff into quitting, as Mr. Cruz had done, and/or to manufacture 'evidence' of improper conduct against him, the Defendants, in violation of state law, intentionally continued to send offending students back into Plaintiff's classroom even though Plaintiff had asked that the students not be allowed to return.  By their actions, the Defendants intentionally knowingly created a virtual powder keg in Plaintiff's classrooms until, on February 12, 2014, Plaintiff was assaulted by one of the students he had previously sent out of his classroom.  In said assault, the student told Plaintiff that the student was going to 'stick' (knife) the Plaintiff and then pushed the Plaintiff.

83.    Prior to and during the assault of Plaintiff, Defendant Lewis had intentionally stationed himself in Klein Forest High School's video surveillance room and was filming the outside of Plaintiff's classroom waiting for something to happen that he and Defendant Crittendon could use

to remove the Plaintiff from his teaching duties at Klein Forest.  After the assault of Plaintiff by student Louis Trigueros, Defendants Lewis and Murphy intentionally edited the video by removing the beginning of the video in which Louis Trigueros was violently pounding on the door of Plaintiff's classroom and using abusive language directed at Plaintiff in the attempt to gain entrance into Plaintiff's classroom.  Defendants Lewis and Murphy also intentionally edited the video by removing the end of the video which showed Plaintiff simply restraining Louis Trigueros until help arrived.  Plaintiff also believes that Defendants Lewis and Murphy also intentionally edited the video by causing it to be zoomed out so that the details of the incursion by Louis Trigueros were obscured.  Defendants Lewis and Murphy edited the video as described herein in order to make it falsely appear that Plaintiff had committed an unprovoked attack on Louis Trigueros.  When Defendants Lewis and Murphy had finished editing the video, the only thing that remained was video from a distance of Plaintiff pushing Louis Trigueros up against some lockers in a seemingly unprovoked attack.  Defendants Lewis and Murphy immediately showed the edited video to Defendants Crittendon and Spencer, who suspended the Plaintiff from his teaching duties.

84.    Furthermore, the Defendants intentionally caused a criminal citation to be issued to the Plaintiff on February 25, 2014, even though the Defendants knew Plaintiff had not committed a crime.  They did this after Plaintiff refused Defendant Spalding's attempt to get Plaintiff to drop the grievance Plaintiff had just filed against the school district and certain of its employees, including Defendant Lewis, and after Plaintiff refused to promise that he would not sue the Defendants.  The Defendants subsequently abandoned the complaint.  However, after Plaintiff informed

Defendant Spalding on March 27, 2014, that he was contemplating suing the Defendants, the Defendants knowingly had the charge re-issued even though they knew Plaintiff had not committed the crime for which he was charged.

85.     The Defendants' intentional infliction of emotional distress against the Plaintiff continued when the Defendants knowingly demanded that the Plaintiff return to them, under the implied threat of arrest if he didn't, unknown, unspecified, documents the description of which the Defendants refused to divulge to Plaintiff.

86.     Plaintiff was damaged by the Defendants' actions against him.

87.     The actions of the Defendants against the Plaintiff as detailed herein caused the Plaintiff to suffer severe emotional distress.  As a direct result of the Defendants' actions against him, Plaintiff suffers from nausea, headaches and stomach disorders.  Plaintiff is stressed, anxious and depressed.  Plaintiff has difficulty sleeping and eating and is uncharacteristically irritable.  Plaintiff lives in constant fear of continued harassment, including false arrest, by the Defendants.  Plaintiff lives with a constant feeling of doom.  Plaintiff has sought medical care for his symptoms and is currently on medication to help alleviate said symptoms.

88.     In addition to the severe emotional distress visited upon the Plaintiff by the Defendants, Plaintiff has suffered lost future income, reputation damage and medical expenses as a result of the actions of the Defendants.

## COUNT 4

## NEGLIGENCE

89.     The foregoing is incorporated herein by reference.

90.     Defendant Klein ISD and the School Board Defendants owed a legal duty to the Plaintiff.

91.     Defendant Klein ISD and the School Board Defendants owed a legal duty to the Plaintiff to use ordinary care in providing a reasonable safe workplace and working environment.

92.     Defendant Klein ISD and the School Board Defendants owed a legal duty to the Plaintiff to use ordinary care in establishing rules and regulations for Plaintiff's and other employees' safety.

93.     Defendant Klein ISD and the School Board Defendants owed a legal duty to the Plaintiff to follow state law, policy and guidelines concerning the discipline of students.

94.     Defendant Klein ISD and the School Board Defendants owed a legal duty to the Plaintiff to warn the Plaintiff of the hazards of his employment with Defendant KISD that were not commonly known or appreciated by Plaintiff and other employees.

95.     Defendants Klein ISD, School Board and Cain owed a legal duty to the Plaintiff to use ordinary care in hiring and supervising Klein ISD employees.

96.     Defendants Klein ISD, School Board, Cain, Crittendon and Lewis owed a legal duty to the Plaintiff to provide Plaintiff adequate help in the performance of his teaching duties at Klein Forest High School.

97.   Defendant School Board owed Plaintiff a legal duty to investigate the two complaints Plaintiff made pursuant to Klein ISD Policy DIA.

98.   The Defendants breached each and every legal duty they owed to Plaintiff enumerated herein.

99.   The Defendants' breach of their legal duties to Plaintiff proximately caused the Plaintiff's injuries as detailed herein.

100.   The Defendants' breach of their legal duties to Plaintiff caused the Plaintiff to suffer severe emotional distress.  Plaintiff suffers from nausea, headaches and stomach disorders.  Plaintiff is stressed, anxious and depressed.  Plaintiff has difficulty sleeping and eating and is uncharacteristically irritable.  Plaintiff lives in constant fear of continued harassment, including false arrest, by the Defendants.  Plaintiff lives with a constant feeling of doom.  Plaintiff has sought medical care for his symptoms and is currently on medication to help alleviate said symptoms.

101.   In addition to the severe emotional distress visited upon the Plaintiff by the Defendants' breach of their legal duties to Plaintiff, Plaintiff has suffered lost future income, reputation damage and medical expenses as a result of the negligence of the Defendants.

## DAMAGES

102.   Plaintiff was damaged by the Defendants' actions against him as detailed herein.  Furthermore, Plaintiff has experienced and will continue to experience mental aguish, pain and suffering, shame, humiliation, loss of standing in the community, reputation damages, emotional distress, medical

expenses and financial loss as the result of the actions of the Defendants against him.

103. The conduct of the Defendants towards the plaintiff as described herein was wanton, willful and done with malice.

104. The Defendants' conduct as described herein was extreme, outrageous and grossly negligent and done with reckless disregard for the rights and welfare of the Plaintiff. At all material times, the Defendants acted with willfulness and malice against the Plaintiff with a specific intent to cause substantial injury. The Defendants' improper actions against the Plaintiff were done with conscious indifference to the rights, safety and welfare of the Plaintiff. Plaintiff is therefore entitled to recover exemplary damages and Plaintiff sues the Defendants for the maximum amount of punitive damages possible from the trier of fact in light of all relevant factors considered in determining such an award.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

1. Court costs.

2. Nominal damages.

3. Compensatory damages in the amount of $300,000 or the amount deemed just and equitable by the trier of fact.

4. Exemplary (punitive) damages as detailed herein.

5. A declaratory judgment that the Defendants unlawfully retaliated against the Plaintiff for Plaintiff's exercising and attempted exercising of his First Amendment right of freedom of speech.

6. A declaratory judgment that the Defendants unlawfully violated Plaintiff's 14th Amendment Substantive due process rights.

7.    Such other and further relief as the Court deems just and equitable.

Respectfully submitted:

*Michael D. Van Deelen*

Michael D. Van Deelen
6014 Capella Park Drive
Spring, Texas 77379
(832) 562-0723

## DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff and requests a trial by jury on all matters in controversy in the above-captioned matter.

*Michael D. Van Deelen*

Michael D. Van Deelen

Plaintiff designates Houston, Texas, for trial.