## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL D. VAN DEELEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:14 cv 923 |
| | § | |
| | § | |
| KLEIN INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al.* | § | |
| | § | |
| Defendants. | § | |

## APPENDIX TO DEFENDANTS' MOTION FOR PRE-FILING INJUNCTION AND REQUEST FOR EXPEDITED CONSIDERATION

*Van Deelen v. Alamogordo Pub. Sch.;*
CV 07-171 MV/LCS, slip op. (D.N.M. Mar. 12, 2008) ...................................TAB A

*Van Deelen v. City of Eudora;*
1996 U.S. Dist. LEXIS 18075 (D. Kan. Nov. 5, 1996) ...................................TAB B

*Van Deelen v. City of Kansas City*;
2006 U.S. Dist. LEXIS 30485 (D. Kan. May 9, 2006)....................................TAB C

*Van Deelen v. City of Kansas City;*
2006 U.S. Dist. LEXIS 50734 (W.D. Mo. July 24, 2006)..............................TAB D

*Van Deelen v. City of Kansas City;*
262 F. App'x 723 (8th Cir. Oct. 19, 2007) .......................................................TAB E

*Van Deelen v. Eudora Amateur Baseball Association;*
1993 U.S. Dist. LEXIS 13919 (D. Kan. Sept. 23, 1993)................................. TAB F

*Van Deelen v. Fairchild;*
2006 U.S. App. LEXIS 22537 (10th Cir. Aug. 31, 2006) ..............................TAB G

*Van Deelen v. McAnany;*
No. 03-1408 (D. Kan Jan. 27, 2004)................................................................TAB H

*Van Deelen v. Ramirez;*
2001 U.S. Dist. LEXIS 9925 (D. Kan. May 1, 2001)........................................ TAB I

*Van Deelen v. Shawnee Mission Unified School District.;*
316 F. Supp. 2d 1052 (D. Kan. 2004)...............................................................TAB J

# TAB A

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MICHAEL D. VAN DEELEN**

       **Plaintiff,**

**vs.**                                                              **CV 07-171 MV/LCS**

**ALAMOGORDO PUBLIC SCHOOLS**
**(a.k.a. Alamogordo School District),**
**PHILLIP KNIGHT, JOE JARAMILLO,**
**JUDY JONES, MELISSA LOMAX,**
**MICHELLE DILWORTH, ADRIAN GUERRERO,**
**CLARISSA JOHNSON, TONY KORWIN,**
**LORA PEACHEY, BILL BUHLER,**
**J.R. GUINN, NED KLINE, HOLLY BIRD,**
**CARLY STEVENS, ROBERT PACHECO,**
**MIKE MAY, SUE MEDINA, JOSEPH HALBIG,**
**RHONDA CROSS, ALLAN RICKMAN,**
**STATE OF NEW MEXICO PUBLIC EDUCATION**
**DEPARTMENT, and 10 JOHN/JANE DOES,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER COMES BEFORE THE COURT on: (i) the Alamogordo Public School

Defendants' Motion to Dismiss Plaintiff's Constitutional Claims based on the Defense of Qualified

Immunity, Doc. 42, filed July 13, 2007; (ii) the same Defendants' Motion to Dismiss Plaintiff's State

Law Claims, Doc. 51, filed August 13, 2007; (iii) Defendants Robert Pacheco's and Mike May's

Motion to Dismiss Plaintiff's Constitutional Claims Based on the Defense of Qualified Immunity,

Doc. 56, filed August 20, 2007; (iv) Defendants Pacheco's and May's Motion to Dismiss Plaintiff's

State Law Claims, Doc. 55, filed August 20, 2007; (v) Defendant Pacheco's Motion for Summary

Judgment on Plaintiff's Count V on the Basis of the Defense of Qualified Immunity, Doc. 59, filed

August 28, 2007; and (vi) Defendant New Mexico Public Education Department's ("PED) Motion

to Dismiss, Doc. 76, filed Oct. 26, 2007. Having carefully reviewed the parties' briefs, the record, and the relevant law, the Court concludes that the Defendants' requests for dismissal should be granted in part and denied in part, that the Motion for Summary Judgment should be denied as moot, and that Defendants PED, Lomax, Guerro, Buhler, Bird, Stevens, May, Medina, Halbig, Cross, and Rickman should be dismissed as Defendants.

## APPLICABLE LEGAL STANDARDS

**I. Motions to dismiss.** The Defendants' motions to dismiss are brought pursuant to FED. R. CIV. P. 12(b), thus they bear the burden of showing that, viewing the well-pleaded factual allegations in Plaintiff Michael Van Deelen's complaint as true and in the light most favorable to him, he has not alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S.___, 127 S. Ct. 1955, 1974 (2007); *MacArthur v. San Juan County*, 497 F.3d 1057, 1064-65 (10th Cir. 2007) (discussing new rule 12(b)(6) standard). In applying this standard, the Court "need not accept [a party's] conclusory allegations as true." *S. Disposal, Inc. v. Tx. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). Nor may pleading deficiencies be overcome by mere "arguments that extend beyond the allegations contained in the complaint." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997). In resolving a motion to dismiss, the Court may consider attachments to the plaintiff's complaint and may take judicial notice of applicable ordinances or statutes. *See Pace v. Swerdlow*, __ F.3d ___, 2008 WL 570805, *5 (10th Cir., Mar. 4, 2008).

**II. Pro se litigation.** Van Deelen alleges twenty violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983 in his amended complaint, including First-Amendment retaliation and violation of his rights to equal protection and procedural and substantive due process.

2

He also alleges twelve state-law claims in his 65-page amended complaint. Because he proceeds pro se, Van Deelen asserts that his filings are "entitled to a solicitous construction." Doc. 54 at 3-4. While a pro se litigant's pleadings and filings are usually given a liberal interpretation and the pro se litigant is sometimes accorded an opportunity to amend his complaint to correct factual deficiencies, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), Van Deelen is not the "run-of-the-mill" pro se litigant[1]. A quick review of the electronic databases from federal courts within and without the Tenth Circuit indicates that Van Deelen has a long history of engaging in extensive litigation against judges, attorneys, police and security officers, school districts, and governmental boards, commissions, employees and employers, and of making very similar claims to the ones in the case at bar. The Courts have carefully schooled him in how to properly state claims, in standards of review, and in how to follow the rules of procedure, and Van Deelen has had extensive experience in arguing legal issues related to § 1983 actions, including First-Amendment retaliation claims, due-process violations, and qualified immunity defenses since at least 1993. *See, e.g., Van Deelen v. Eudora Amateur Baseball Ass'n*, No. 93-2319 1993 WL 390376 (D. Kan. Sept. 23, 1993) (dismissing § 1983 claims against unincorporated volunteer association that suspended Van Deelen from coaching a little-league team because he "had a history of using profanity and of behaving irrationally while coaching," requiring his removal from the playing field by a city police officer, and noting that Van Deelen had also filed a state-court case with different claims and additional defendants arising from the same events); *Van Deelen v. City of Eudora*, No. 96-4040, 1996 WL

---

[1] Van Deelen "is a member of MENSA, the international high-IQ society." Am. Compl., Ex. B. He has filed a 65-page amended complaint and a 60-page response brief as well as lengthy affidavits and amended affidavits, redundant exhibits, and other responses and surreplies.

3

707016 (D. Kan. Nov. 5, 1996) (explaining, in § 1983 action alleging malicious prosecution, violation of right to be free from humiliation, intimidation, and harassment, and violation of right to privacy against police officers arising from events surrounding Van Deelen's 1993 criminal charges, that conclusory allegations do not provide a basis for relief, allowing Van Deelen to amend his complaint, and imposing Rule 11 sanctions because Van Deelen alleged claims that he had already released as part of a settlement agreement with one of the defendants); *Van Deelen v. City of Eudora*, 53 F. Supp. 2d 1223 (D. Kan. June 29, 1999) (granting summary judgment in § 1983 action in favor of prosecuting/investigating attorney who charged Van Deelen with assault after victim identified Van Deelen as his aggressor, and carefully explaining the requirement that Van Deelen allege all relevant facts in his complaints in a non-conclusory manner); *Van Deelen v. Ramirez*, No. 00-4067, 2001 WL 789275 (D. Kan. May 1, 2001) (dismissing complaint brought under § 1983 for First-Amendment retaliation against board of county commissioners and its attorney after attorney instructed Van Deelen that, because of Van Deelen's "contentious phone conversations," the attorney and his staff would only communicate with Van Deelen in writing, and noting that Van Deelen was characterized as a "professional litigant"); *Van Deelen v. McAnany*, No. 03-1408 (D. Kan. Jan. 27, 2004) (dismissing § 1983 action for retaliation and violation of right of equal access to the courts, due process, and equal protection rights against state-court judge in Johnson County, Kansas who was presiding over five state-court actions in which Van Deelen was the plaintiff); *Van Deelen v. Shawnee Mission Unified Sch. Dist.*, 316 F. Supp. 2d 1052 (D. Kan. 2004) (dismissing case for First Amendment retaliation brought against school district and principals for allegedly defaming Van Deelen and coloring him "in a false light" – by barring Van Deelen from school property because of his conduct of using inappropriate language and obscene hand

gestures towards teachers, students, and the principal of another school at a wrestling match, and by publishing a letter stating that Van Deelen violated warnings from school security officers, made threats, used profanity during meetings, had a bad record of behavior, personally attacked others, was "the most out-of-control parent [the principal] had witnessed in 31 years of education" and was so threatening to the principal that the principal physically feared Van Deelen – in retaliation for Van Deelen's threats to file suits and for filing a separate state-court suit against the same defendants for "negligence, defamation, invasion of privacy, intentional infliction of emotional distress, assault, criminal and terroristic threats and extreme and outrageous conduct" and setting out pleading requirements and qualified immunity defense standards); *Van Deelen v. City of Kan. City, Mo.*, No. 05-2028, 2006 WL 1301000 (D. Kan. May 9, 2006) (noting that Van Deelen asserted, *inter alia*, due process, equal protection, and First-Amendment retaliation claims and fraud and negligence claims against city employer and city attorney and contended that city security guards detained Van Deelen, intimidated him, and barred him from entering city public buildings unless accompanied by a security guard because he had previously filed two state-court suits against the city and its employees); *Van Deelen v. Johnson*, No. 05-4039, 2006 WL 1764381 (D. Kan. June 27, 2006) (noting that Van Deelen is "a pro se frequent filer;" that he alleged 18 separate federal and state-law claims, including claims for First-Amendment retaliation, violation of rights to free speech, equal protection, and due-process, and conspiracy against board of commissioners, county appraisers, sheriffs, and deputies, and granting summary judgment in favor of defendants on federal claims and dismissing state-law claims), *aff'd in part & rev'd in part*, 497 F.3d 1151 (10th Cir. 2007); *Van Deelen v. Fairchild*, No. 05-3468, 2006 WL 2507599 (10th Cir. Aug. 31, 2006) (affirming dismissal of lawsuit against six state-court judges – who were presiding over several state-court suits brought

5

by Van Deelen in Douglas County, Kansas – and a judicial assistant for retaliation in violation of his First-Amendment rights and for negligent supervision and defamation after one judge informed Van Deelen that, because of Van Deelen's oral threat to sue the judge and his administrative assistant, all communication should be in writing); *Van Deelen v. City of Kan. City, Mo.*, Nos. 06-1896, 06-3058, 2007 WL 3101816 (8th Cir., Oct. 19, 2007) (affirming Missouri district court's conclusion that Van Deelen had filed suit alleging constitutional violations with regard to the termination of his city employment "maliciously to vex and annoy the City" and that he should be sanctioned in the amount of $6000 and that filing restrictions should be imposed against him).  The suits Van Deelen has prosecuted have been hotly contested and have required extensive briefing in motions to dismiss and for summary judgment, and he also has experience in litigating his suits at trial.

Indeed, after disposing of several motions for summary judgment that Van Deelen briefed and observing Van Deelen litigate his case during a week-long trial, a federal district-court judge stated:

> Although proceeding pro se, Van Deelen demonstrated his knowledge of the Federal Rules of Civil Procedure and Evidence and the Rules of this Court.  However, Van Deelen failed to comply with general rules governing proper courtroom decorum and respect for the Court and the judicial proceedings which he had initiated. Throughout the trial Van Deelen repeatedly interrupted and argued with the Judge, counsel for the City and numerous witnesses.  Van Deelen presented a voluminous amount of cumulative and irrelevant evidence wasting valuable judicial resources.  His flippant and disrespectful remarks impeded the efficient resolution of his constitutional claims. Additionally, and perhaps most offensive, Van Deelen fabricated evidence to support his claims.

*Van Deelen v. City of Kan. City, Mo.*, No. 04-989, 2006 WL 2077640, *1 (W. D. Mo. July 24, 2006). The Court notes that the Tenth Circuit gave Van Deelen's filings made in 2005-2006 a "solicitous construction."  *See Van Deelen v. Johnson*, 497 F.3d at 1153 n.1.  Thus, while the Court remains

mindful that it may need to be solicitous in areas in which Van Deelen has had no previous

experience or received no instruction from the federal courts, Van Deelen has already amended his

complaint once and the Court sees no reason to continue to give Van Deelen repeated opportunities

to amend pleadings in the same way that it would give an inexperienced, uneducated, or

disadvantaged pro se litigant.[2] *See Hall*, 935 F.2d at 1110 (stating that the rule that courts should

be less stringent in interpreting pro se complaints "means that if the court can reasonably read the

pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the

plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements"). The Court will

use an approach consistent with FED. R. CIV. P. 8(f), which provides that "[a]ll pleadings shall be

so construed as to do substantial justice." *See Castro v. United States*, 540 U.S. 375, 386 (2003)

(Scalia, J., concurring) ("'Liberal construction' of pro se pleadings is merely an embellishment of

the notice-pleading standard set forth in the Federal Rules of Civil Procedure.").

    **IV. Qualified immunity.** The doctrine of qualified immunity is "designed to protect public

officials from spending inordinate time and money defending erroneous suits at trial." *Nelson v.*

*McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). When a public official raises qualified immunity

---

    [2] Although the Tenth Circuit applies the standard of reviewing pro se filings liberally and
giving the pro se litigant opportunities to cure deficiencies in most pro se cases, the Court notes
that the rule was developed in pro se prisoner litigation, where legal and educational
disadvantages are obvious. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), *Hall*, 954 F.2d
at 1106. And the Supreme Court has "never suggested procedural rules in ordinary civil
litigation should be interpreted so as to excuse mistakes by those who proceed without counsel,"
*McNeil v. United States*, 508 U.S. 106, 113 (1993), and has held that a pro se litigant "must
conduct enough investigation to draft pleadings that meet the requirements of the federal rules,"
*Burnett v. Grattan*, 468 U.S. 42, 50 (1984). Accordingly, the Tenth Circuit "has repeatedly
insisted that pro se parties follow the same rules of procedure that govern other litigants."
*Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted).

as an affirmative defense, "the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007).

Thus, the qualified immunity analysis begins with the court asking "whether the plaintiff's allegations, if true, establish a constitutional violation." *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005) (internal quotation marks omitted). Accordingly, the Court initially must accept as true Van Deelen's assertions made in his amended complaint. *See Van Deelen*, 497 F.3d at 1159.

> To make out a claim of unlawful retaliation by government officials in response to the exercise of his or her First Amendment right to petition, we have indicated three elements must be present. The plaintiff must show that (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Id.* at 1155-56. "In order to state a claim against a government entity under Section 1983, however, a plaintiff must demonstrate the existence of a policy or custom precipitating the plaintiff's injury." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1334 n.12 (10th Cir. 2007).

When, as here, some of Van Deelen's First-Amendment retaliation claims involve speech related to his public employment as a teacher, the Court must apply a five-step analysis.

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the

8

employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech. The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact.

. . . .

. . . . [S]peech is made pursuant to official duties if it is generally consistent with the type of activities the employee was paid to do.

An employee's official job description is not dispositive, however, because speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform. The ultimate question is whether the employee speaks as a citizen or instead as a government employee-an individual acting in his or her professional capacity. Consequently, if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties.

At the same time, not all speech that occurs at work is made pursuant to an employee's official duties. Nor is all speech about the subject matter of an employee's work necessarily made pursuant to the employee's official duties. Instead, we must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship.

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202-04 (10th Cir. 2007)

(internal quotation marks, brackets, and citations omitted).

In *Brammer-Hoelter*, the Tenth Circuit agreed with the Fifth Circuit's approach when

resolving whether the actions of a school employee that criticized his superiors were taken in the

course of his official duties.

In *Williams* [*v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir.2007) (per curiam)], an athletic director wrote memoranda to an office manager and principal alleging financial improprieties regarding certain athletic accounts. The school district conceded that the athletic director was not required to write letters to the principal concerning athletic accounts. After noting that the speech in the

9

memoranda focused on the athletic director's daily operations, the Fifth Circuit stated:

> Simply because Williams wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job. He needed account information so that he could properly execute his duties as Athletic Director, namely, taking the students to tournaments and paying their entry fees. The memoranda were not written from Williams's perspective as a "father" and "taxpayer."

*Id.* at 1203 n.5.

**V. Due Process.** "[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest" or of an interest in life or liberty. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 & n.2 (10th Cir. 2000). "Property" in the context of the Due Process clause, is a "legitimate claim of entitlement to some benefit" based on a statute or state law, as opposed to unilateral expectation of a benefit. *See id.* at 1210 (internal quotation marks omitted). "Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Kirkland v. St. Vrain Valley Sch. Dist.*, 464 F.3d 1182, 1189 (10th Cir. 2006) (internal quotation marks omitted)

> "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed.2d 1043 (1998) (internal quotation marks omitted). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Rather, the plaintiff must show "a high level of outrageousness." *Id.* The conduct required to meet this standard depends on the circumstances. "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." *Lewis*, 523 U.S. at 853 (internal quotation marks omitted).

10

*Clark v. Edmunds*, ___ F.3d ___, ___, 2008 WL 185615, *2 (10th Cir. 2008).

**VI. Equal protection.** "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). Although not a member of a protected class, a plaintiff may bring an equal protection claim as a "class of one" by proving he was "singled out for persecution due to some animosity, meaning that the actions of [the defendant] were a spiteful effort to 'get' [the plaintiff] for reasons wholly unrelated to any legitimate state activity" and that he was "treated differently than those similarly situated." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (internal quotation marks omitted). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (internal quotation marks omitted).

## RELEVANT FACTS

The Court accepts the following allegations in Van Deelen's amended complaint as true for the purposes of its analysis on the motion to dismiss. Van Deelen, who previously had no education, training, or experience as a teacher, was provisionally hired in late September 2006 to teach one class at Alamogordo High School ("AHS"). *See* Am. Compl. (Doc. 37) at 4, 25-26. He moved from Kansas to take the teaching position. *See id.* Between the time he started teaching that class on September 27 and October 17, 2006, Van Deelen reported four times to his supervisors and school security officers that students were assaulting each other either in his class or in the hallways, reported twice that he was assaulted and battered by his students, reported "numerous times" that

11

his students and their parents were threatening him with bodily harm, and reported "numerous times" that his students were grossly insubordinate to him and threw food at him, were harassing each other, were behaving improperly, and were cheating on examinations. *See id.* at 8-9. AHS officials reportedly took no official action on Van Deelen's complaints.

On October 9, a student ("J.B.") became angry when Van Deelen gave him a note to take home about J.B's bad behavior. *See id.* at 10. J.B. threatened to "kick [Van Deelen's] ass," told Van Deelen that he might get hurt if he continued teaching, and told Van Deelen that J.B. would get his mom ("Mrs. B") to "take care" of Van Deelen. *Id.* AHS officials refused Van Deelen's plea to immediately post a security guard in Van Deelen's classroom. The next day, J.B. accused Van Deelen of being a "racist", which Van Deelen separately reported to school officials as harassment. *See id.* at 11. When J.B's sister, who also was in Van Deelen's class, told other students that Van Deelen was an "idiot," Van Deelen also reported her behavior as "harassment." *Id.* A few days later, Van Deelen reported to officials that J.B. harassed him at an off-campus gas station by calling him an "idiot and a fool." *Id.* On October 17, Mrs. B came to Van Deelen's classroom, demanded to talk to him in front of all the students, and refused to leave. *See id.* After Van Deelen called school security, Mrs. B approached Van Deelen and "bumped" him with her body. *Id.* at 12. After school security removed Mrs. B and her two children from Van Deelen's classroom, Van Deelen asked Defendant Dilworth, a school security guard, to call police so that Van Deelen could file a police report. *See id.* Dilworth did so, and Defendant May, an Alamogordo police officer assigned as a school safety officer, arrived and took the report. *See id.* Defendant May filed a police report that Van Deelen contends contained some false information. *See id.* at 13. Dilworth refused to stay in Van Deelen's classroom to provide protection. *See id.* at 12.

In early October 2006, Defendants Bird and Stevens, two teachers whose classrooms were near Van Deelen's, began to file written and oral complaints with Defendant Jones (the Human Resources Director for the Alamogordo Public Schools ("APS")) expressing their opinions that Van Deelen "presented a danger" and "security risk" to students and to them; that he was "mentally disturbed," "intimidating," "extremely unstable," and "irrational;" that he yelled at his students' parents and at them; and that he told students they would "never amount to anything." *Id.* at 27. In mid October, Mrs. S., another parent with a student in Van Deelen's class who also was an AHS employee, filed a complaint letter against Van Deelen arising from her interactions with him. *See id.* at 15. Defendants Lomax and Jones called Van Deelen to their offices after the October 17 incident with Mrs. B and her children was over and informed him that he was being indefinitely suspended with pay from teaching. *See id.* at 13.

The next day, October 18, Van Deelen filed a civil lawsuit in state court against Mrs. B and her two children for assault, battery, defamation, slander, invasion of privacy, conspiracy, and intentional infliction of emotional distress. *See id.* at 14. On December 19, while he was still suspended from teaching, Van Deelen announced his candidacy for a vacant Alamogordo school-board seat. *See id.* at 17. On January 15, 2007, Van Deelen filed a notice of claim with Defendant Knight, APS' superintendent, requesting $50,000 for negligence for AHS' alleged failure to protect him from "violence in his classroom." *Id.* at 14.

On January 16, Jones gave Van Deelen a memorandum reprimanding Van Deelen for improper behavior in dealing with students and parents and warning him that further infractions could result in his immediate termination. *See id.* at 15. But she also informed Van Deelen that he could resume teaching his class at AHS. *See id.* at 18.

13

On January 17, AHS held a public forum at the high school on the issue of "block scheduling[3]," which Knight and AHS's principal, Defendant Jaramillo, attended. *Id.* at 17. Van Deelen also attended the forum and "was the only teacher who spoke out against block scheduling." *Id.* Van Deelen's children had already graduated from high schools located in other states and lived in other cities. *See id.*, Ex. B. Defendant Buhler, another AHS teacher, berated Van Deelen at the public forum for speaking out against the District, and later allegedly slandered Van Deelen and "colored him in a false light" by telling other teachers that Van Deelen was a "troublemaker" and "outsider," and that he "was not a good teacher" and should not be employed by AHS. Am. Compl. at 20. Buhler also made fun of a hat Van Deelen wore one day and caused other teachers to shun Van Deelen. *See id.*

On the morning of January 18, Defendant Pacheco, a police officer who also is a school-resource officer at AHS, told Van Deelen that he needed to see him. *See id.* at 17. Pacheco allegedly said that he and principal Jaramillo were concerned that Van Deelen had committed unspecified crimes on school property; that they were conducting an investigation; and that Van Deelen would be arrested and could lose his job "if the investigation found that [Van Deelen] had committed any crimes while on school property." *Id.* Pacheco allegedly told Van Deelen that he "needed to keep [his] mouth shut and stop talking about the problems at the High School." *Id.*

During his campaign for the school-board seat, Van Deelen distributed flyers to 2100 homes in his district. *Id.* at 18. In them, he contended that violence at AHS was "rampant" and he accused

_____

[3] "Block scheduling" consists of scheduling fewer classes in one day -- for example, 4 classes/day instead of 6 -- but students spend more time in each class. Students spend an equivalent number of hours/week/class as they would on a regular schedule, but spend less time changing classes and being in hallways.

AHS officials of not following District policy regarding the reporting of student violence. *See id.*, Ex. B. He also accused the District of not reporting violence to the PED, which he characterized as a "crime." *Id.* If elected, Van Deelen promised to ensure that District rules were followed; to investigate the underreporting of student violence and vandalism; and to vote against block scheduling. *See id.* Van Deelen also created a similar flyer that he desired to send to all of the teachers in the District using the District's e-mail system. *See* Am. Compl. at 18. Besides containing the same information as the first flyer, this campaign flyer also accused the District of using one-year teacher contracts to keep its teachers "in line;" complained that the District did not rehire teachers who sent too many students to the office for disciplinary reasons or who complained about problems; and opined that allowing teachers to have multi-year contracts would allow them to follow the District's policy on reporting violence without fear of retaliation. *Id.*, Ex. C.

Although the District has a written policy prohibiting the distribution of political literature through the schools, because the District gave teachers literature advocating the passage of a 2-mil bond levy to be used for public schools, Van Deelen contended that he had the right to e-mail his campaign flyer to all teachers using the school's e-mail system and the teachers' employee e-mail addresses. *See* Am. Compl. at 18. Although Defendants Knight and Peachey allegedly told Van Deelen he could use the system to distribute his flyer, Defendants Knight, Peachey, Korwin, and John/Jane Does allegedly blocked all e-mails from Van Deelen so that he could not e-mail the campaign flyer through the public-school e-mail system before February 6, the date of the school-board election. *See id.* at 19. Van Deelen did, however, actively champion his views at a public school-board election forum, through the physical distribution of his 2100 flyers, at a Rotary Club luncheon, and on a radio talk show. *See id.* at 18.

15

On February 7, Jaramillo gave Van Deelen an unsatisfactory performance review and said he did not want to employ Van Deelen as a teacher. *See id.* at 20-21. On February 15, Defendant Guinn evaluated Van Deelen and gave him a satisfactory rating on all measured criteria. *See id.* at 21. Van Deelen filed his federal complaint in this case on February 20, 2007. Defendant Dilworth subsequently warned AHS employees that Van Deelen had not sued that Van Deelen was going to sue them, causing them to shun Van Deelen. *See id.* at 30.

On March 2, Jaramillo told Van Deelen that he was being held to a higher standard than other "Pre-Level 1 Internship," temporarily-licensed teachers and took over the evaluation process from Guinn. *See id.* at 22, 26. On March 8, Jaramillo evaluated Van Deelen and gave him an unsatisfactory rating on all measured criteria, told him that receiving unsatisfactory ratings could result in termination, and told him he would be evaluating Van Deelen again the next day. Jaramillo refused to tell Van Deelen how he could improve. *Id.* at 22-23.

On March 9, Van Deelen reported to AHS officials that one of his students made a "bomb threat" and then left class without permission. *Id.* at 28. A security guard came to the classroom to investigate. *See id.* at 29. But school officials "suppressed an investigation" and refused to make a police report on the incident. *Id.* at 28. Van Deelen made a police report about the alleged incident to Pacheco, but Pacheco allegedly falsified information in his police report so that the student would not be prosecuted and did not forward the report to the Attorney General's office until May 10. *See id.* at 29-30.

Jaramillo's March 9 and March 22 evaluations gave Van Deelen unsatisfactory ratings in most categories, and Jaramillo informed Van Deelen that he would not recommend his re-employment. *Id.* at 23-24. Jaramillo told Guinn that he thought Van Deelen had a low IQ. On

March 26, Guinn refused to conduct an investigation after Van Deelen discovered that screws had been placed behind his vehicle's tires in the school parking lot. On April 12, Jaramillo changed the March 22 evaluation to make it more negative than it had been and asked Van Deelen to sign it. *Id.* at 25. On April 13, Defendants Jones and Johnson again suspended Van Deelen from his teaching duties, with pay. *See id.* at 28. Johnson refused to give Van Deelen the reasons for his suspension. *See id.* Van Deelen was not rehired for the next school year.

## ANALYSIS

### I. Constitutional claims against the Alamogordo School Defendants.

**a. Counts I-III.** Van Deelen asserts First-Amendment retaliation claims in Counts I through XI of his amended complaint. *See* Doc. 37, ¶¶ 93-122. The first three counts are against the same defendants, which are the School Board and its members, Jaramillo, Johnson, Knight, Jones, Guinn, Kline, Dilworth, and Pacheco. All allege retaliation for having filed this federal lawsuit, which Van Deelen contends violated his rights to free speech, to petition the courts, and to equal access to the courts. *See id.* ¶¶ 93, 96, 99. The Defendants seek dismissal of the first three counts solely on their contention that "the speech alleged in Plaintiff's Complaint is not a matter of 'public concern' that is afforded protection by the First Amendment." Doc. 42 at 6.

Clearly, filing a lawsuit to seek redress for alleged grievances is a constitutionally-protected activity, regardless whether the suit is related to a matter of public concern. *See Van Deelen*, 497 F.3d at 1153. Thus, Van Deelen has shown that he "was engaged in constitutionally protected activity" when he filed the federal complaint, *id.* at 1155 and the Defendants have not shown entitlement to dismissal of these claims.

**b. Counts IV, V, and IX.** Count IV asserts that Defendants Board of Education, Knight,

Johnson, Jones, Stevens, Bird, and Jaramillo unlawfully retaliated against Van Deelen for exercising

his constitutional right to make "reports of discipline problems at the high school." Doc. 37 at ¶ 102.

Count V alleges that the Board, Jaramillo, Jones, Johnson and Pacheco retaliated against him for

exercising his constitutional right to "speak[] out against block scheduling at the public forum." *Id.*

at ¶ 105.   Count IX alleges that Defendant Buhler, a co-teacher, similarly retaliated against Van

Deelen for exercising his right to speak out against block scheduling and problems in the District.

*See id.* at ¶ 117.

      Citing *Garcetti v. Ceballos*, 126 S. Ct. 1591 (2006), and *Casey*, 473 F.3d 1323, the

Defendants contend that none of this speech is constitutionally protected because Van Deelen made

the speech as part of his duties as a teacher.   The Court agrees.

      In his complaint, Van Deelen contends that District policies and handbooks required him,

as a teacher and District employee, to report disciplinary problems and violent behavior.   *See* Doc.

37 at ¶¶ 16-17.   As a matter of law, this speech is related to his duties as a teacher and is not,

therefore, constitutionally protected.   *See Casey*, 473 F.3d at 1330.   Count IV must be dismissed.

      The issue of speaking out against block scheduling at a public forum that took place at the

high school with District officials and board members is a closer question. Van Deelen contends that

he spoke as a private citizen and that it was not part of his job description to speak out at public

forums.   *See* Doc. 43 at ¶¶ 19, 53.   But "[a]n employee's official job description is not dispositive,"

*Brammer-Hoelter*, 492 F.3d at 1203, and "[t]he ultimate question is whether the employee speaks

as a citizen or . . . in his or her professional capacity."   *Id.* (internal quotation marks omitted).

      Van Deelen's complaint states that he "was the only teacher who spoke out against block

scheduling," Doc. 37 at 17, showing that he identified himself at the forum in his professional

capacity as a teacher and that he thought that his opinion was important and distinguished because of that fact. The attachments to Van Deelen's complaint establish that he has no children affected by block scheduling at AHS, and Van Deelen's complaint about block scheduling was that students were being more violent in classrooms instead of in the hallways, which affected his personal teaching situation. Block scheduling is purely an internal educational matter and affected Van Deelen solely as a teacher, thus he could not have been speaking out as a concerned "father or taxpayer." *Brammer-Hoelter*, 492 F.3d at 1204 n.5 (internal quotation marks omitted). Taking "a practical view of all the facts and circumstances surrounding the speech and the employment relationship," *see id.* at 1204, as alleged in the amended complaint and its attachments, and noting that persuading the District to change the practice of block scheduling would serve to facilitate Van Deelen's performance of his teaching duties, in his opinion, the Court concludes that Van Deelen's speech at the school forum was made from the perspective of, and pursuant to, his professional capacity as a teacher, and that it, therefore, was not constitutionally protected. Counts V and IX must be dismissed.

Even if Van Deelen's speech at the high-school forum were protected, Count IX would still have to be dismissed. Count IX is against Defendant Buhler, a co-teacher. Claims brought under § 1983 require state action. There are no allegations that Buhler had any supervisory authority over Van Deelen and the complaint states that Buhler "berate[d]" Van Deelen for his opinions on block scheduling before the forum even concluded. *See* Doc. 37 at ¶ 59. Thus, Van Deelen cannot establish that Buhler's actions constituted "a detrimental employment decision" for the state-action requirement under § 1983. *See Brammer-Hoelter*, 492 F.3d at 1202. Further, as a matter of law, expressing personal opinions that differ from a co-teacher's, characterizing the co-teacher as a

"trouble-maker" and an "outsider" to other teachers, and expressing a personal opinion to other teachers that the co-teacher is "not a good teacher" who should not be employed or elected as a school-board member would not cause the co-teacher "to suffer an injury that would chill a person of ordinary firmness from continuing to engage" in speaking out against a school district. *See Van Deelen*, 495 F.3d at 1155. Buhler's treatment of Van Deelen clearly had no effect on Van Deelen continuing to speak out and publish negative comments and political advertisements against block scheduling and the District or running for the school-board position.

     **c. Counts VI, VII, and VIII.** All three of these counts are against the Board, Knight, and Jones for unlawful retaliation after Van Deelen submitted his Notice of Claim against the Board for $50,000 for negligence on January 15, 2007. Defendants' sole basis for dismissal is their legal contention that the Notice of Claim "is not a matter of public concern for First Amendment purposes." Doc. 45 at 5. The Court concludes that, like filing a lawsuit, filing a Notice of Claim to seek redress for alleged tort violations is a constitutionally-protected activity, regardless whether the claim touches a matter of public concern. *Cf. Van Deelen*, 497 F.3d at 1153. Thus, Van Deelen has shown that he "was engaged in constitutionally protected activity" when he filed the Notice of Claim, *cf. id.* at 1155, and the Defendants have not shown entitlement to dismissal of these counts.

     **d. Counts X, XI, and XII.** These three counts are against Defendants Board, Knight, Peachey, Jones, Korwin, and Does. *See* Doc. 37, ¶¶ 120-128. Counts X and XI allege denial of free speech and retaliation in violation of Van Deelen's right to run for a School Board election and to use the District's e-mail system, *see id.* at ¶¶120, 123, and Count XII alleges denial of equal protection in using the e-mail system, *see* ¶ 126. All three counts relate to the incident in which Van Deelen tried to e-mail his political campaign flyer to teachers using the District's e-mail and

teachers' professional e-mail addresses, but was blocked from doing so.  Van Deelen also asserts

that, in retaliation for running for election, Korwin ordered District employees not to communicate

with Van Deelen and Jones and Johnson retaliated by wrongfully suspending and terminating him

from his employment. *See id.* at ¶ 120.

Defendants' motion to dismiss counts X and XI is based solely on its premise that Van

Deelen's campaign speech was not protected because it concerned matters associated with his job

as a teacher. *See* Doc. 42 at 7; Doc. 45 at 5.  Citing *Casey*, 473 F.3d 1323, they argue that, even

when an employee speaks on matters related to school issues outside of the employment context,

school-related speech is unprotected -- that "the critical inquiry is the nature of the speech."  Doc.

45 at 5.  The Court disagrees.

In *Casey*, the Tenth Circuit held that a school employee's speech was unprotected when she

spoke *as a school-district employee* by relating concerns about the school to the school board, her

supervisors, and her subordinates "pursuant to her official duties" with the school district.  *Id.* at

1329.  The Court made clear that similar speech would be protected if she had been acting as an

"ordinary citizen speaking on his or her own time," *see id.* at 1331, and held that the same speech

that was unprotected when made to her supervisors was protected when she made it to the attorney

general, *see id.* at 1333-34 (noting that, "[i]t has long been established law in this circuit that when

a public employee speaks as a citizen on matters of public concern to outside entities despite the

absence of any job-related reason to do so, the employer may not take retaliatory action").  The

Defendants have not carried their burden to demonstrate that Van Deelen's right to run for a political

office or to speak as a school-board candidate to teachers about school matters as part of his political

campaign was unprotected speech such that Counts X and XI should be dismissed.

Regarding Count XII, Defendants contend that Van Deelen has failed to show he was "singled out for persecution" and "treated differently than those similarly situated" because he has stated no facts alleging that anyone else was permitted to e-mail school employees with personal political campaign literature. *See Mimics, Inc.,* 394 F.3d at 849. Van Deelen contends that anyone may use the public-school's e-mail system to e-mail teachers, so he has shown that he was denied equal protection. The Court disagrees. Van Deelen's complaint establishes that the District's written policy prohibits individuals from distributing political literature through the schools. *See* Doc. 37 at ¶ 54 (alleging that the District policy provides, "Political literature shall not be distributed through the schools to staff members . . . "). Van Deelen has not alleged that the District allowed any other political candidate to distribute campaign flyers via the school's e-mail. And even though the District may have given its teachers some literature advocating the passage of a 2 mil levy for the District's benefit, Van Deelen is not "similarly situated" to the District and thus cannot be said to have been "singled out", thus he cannot show an equal protection violation as a matter of law. Van Deelen has previously been instructed that "'allegations [that] are merely conclusory . . . do not allege the factual basis for an equal protection claim, and even pro se litigants must do more than make mere conclusory statements regarding constitutional claims.' *Brown v. Zavaras,* 63 F.3d 967, 972 (10th Cir.1995)". *Van Deelen v. Ramirez* 2001 WL 789275, *7 (D. Kan. 2001). Count XII shall be dismissed.

  **e. Counts XV and XVI.** Count XV alleges that Defendants School Board, Knight, Johnson, Stevens, Bird, and Jones violated his right to procedural due process by not providing access to his

personnel file[4], by creating and placing false and fraudulent documents in that file, and by omitting

"exculpatory" documents prepared by Van Deelen from that file. *See* Doc. 37 at ¶ 135.  Count XVI

alleges that Defendants School Board, Johnson, Jones and Jaramillo violated his due-process rights

by *suspending* him from his employment without cause, hearing, or explanation. *See id.* at ¶ 138.

It is undisputed that, although Van Deelen was suspended from his teaching duties, the District did

not terminate his employment contract or stop paying him until the end of the school year when it

decided not to re-employ him for the following year and that it told him that he was being terminated

"on the basis of poor performance reviews." *See* Doc 37 at ¶¶ 48, 77; Doc. 43 at 47.

The Defendants contend that Van Deelen did not have a protected property interest in his

personnel file nor any right to possess documents from it or to have documents placed in it and that

it is undisputed that Van Deelen received notice and an opportunity to object before his contract was

not renewed.

In response, Van Deelen points to no state law giving him a property right in his personnel

file or giving him a right not to be suspended from teaching.  Instead, Van Deelen argues that he had

a liberty interest in his employment that the Defendants breached by not affording him a hearing

before suspending him because of the negative comments from other teachers in his personnel file.

The Court disagrees.  The cases Van Deelen cites are easily distinguishable.

New Mexico law provides:

A.  A local school board or governing authority of a state agency may terminate an
employee with fewer than three years of consecutive service for any reason it deems
sufficient.  Upon request of the employee, the superintendent or administrator shall
provide written reasons for the decision to terminate.  The reasons shall be provided

---

[4] Van Deelen states that he was allowed to see his personnel file after he filed his federal
lawsuit and before the Board decided not to renew his teaching contract. *See* Doc. 37 at ¶ 75.

within ten working days of the request. The reasons shall not be publicly disclosed by the superintendent, administrator, local school board or governing authority. The reasons shall not provide a basis for contesting the decision under the School Personnel Act.

B. Before terminating a non-certified school employee, the local school board or governing authority shall serve the employee with a written notice of termination.

N.M. Stat. Ann. § 22-10A-24. Here, there is no claim that any Defendant publicized anything to persons outside the District and, under state law, Van Deelen was only entitled to receive notice and the reasons before his one-year teaching contract was not renewed. Van Deelen points to nothing that gave him the right to a hearing before or after being suspended, with pay, from his teaching duties and the Due Process Clause does not confer such a right. Count XVI must be dismissed.

**f. Count XIX.** Count XIX alleges denial of substantive-due-process rights by the PED, the Board, Knight, Jaramillo, Jones, Lomax, Dilworth, Guerrero, Johnson, Peachey, Guinn, Medina, and Halbig by "knowingly plac[ing Van Deelen] in an unsafe, hostile teaching environment in which the defendants knew that [Van Deelen] would be harmed and then intentionally fail[ing] to follow District policy after [Van Deelen] was threatened and assaulted by students and [Mrs. B]." Doc. 37 at ¶ 147. The Court notes that, while Van Deelen claimed in his Notice of Claim that AHS officials had acted only negligently in failing to protect him from Mrs. B, *see* Doc. 37 at ¶ 42, he asserts in this Count that their actions in failing to protect him from Mrs. B's "bump" and his students' oral threats was intentional and knowing. Perhaps this is because the federal courts have already fully instructed Van Deelen that, to state a substantive-due-process claim, he must allege and establish that the "Defendants' actions were so outrageous as to shock the conscious" and that he would have to show that those actions were "'truly irrational,' that is "something more than ... arbitrary, capricious, or in violation of state law.'" *Van Deelen v. City of Kansas City, Mo.*, 411 F. Supp. 2d

1105, 1125 (W.D. Mo. 2006) (granting summary judgment in favor of governmental defendants on

Van Deelen's substantive-due-process claim).  The United States Supreme Court has

> made it clear that the due process guarantee does not entail a body of constitutional
> law imposing liability whenever someone cloaked with state authority causes harm.
> In *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-1161, 47 L. Ed. 2d 405
> (1976), for example, we explained that the Fourteenth Amendment is not a "font of
> tort law to be superimposed upon whatever systems may already be administered by
> the States," and in *Daniels v. Williams*, 474 U.S., at 332, 106 S.Ct., at 665, we
> reaffirmed the point that "[o]ur Constitution deals with the large concerns of the
> governors and the governed, but it does not purport to supplant traditional tort law
> in laying down rules of conduct to regulate liability for injuries that attend living
> together in society." We have accordingly rejected the lowest common denominator
> of customary tort liability as any mark of sufficiently shocking conduct, and have
> held that the Constitution does not guarantee due care on the part of state officials;
> liability for negligently inflicted harm is categorically beneath the threshold of
> constitutional due process.  It is, on the contrary, behavior at the other end of the
> culpability spectrum that would most probably support a substantive due process
> claim; conduct intended to injure in some way unjustifiable by any government
> interest is the sort of official action most likely to rise to the conscience-shocking
> level.

*County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998) (citation omitted).  Van Deelen has

alleged no facts indicating that any Defendant associated with the public schools intended to injure

him in some way or cause him to be injured by not using extremely limited school resources to post

a permanent security guard in Van Deelen's classroom.  Regarding actions involving Van Deelen

before Mrs. B bumped Van Deelen with her body, Van Deelen had complained only of J.B. and his

sister calling him an idiot, a fool, and a racist; threatening to have Mrs. B "take care of him;" and

of J.B. threatening once to "kick his ass" after receiving a behavior slip.  *See* Am. Compl. at ¶¶ 24,

29-34.  Mrs. B did not come to Van Deelen's class until over a week after the last complaint.

Further, Van Deelen alleges that Mrs. B did not have permission to be on campus and violated

district policy by coming to his room.  *See id.* at 34.  As a matter of law, Van Deelen has not alleged

facts regarding the Defendants' conduct demonstrating a degree of outrageousness or magnitude of

25

potential or actual harm that could rise to a "conscience-shocking level." Count XIX shall be dismissed.

      **g.  Count XX.**  Count XX alleges conspiracy by all of the Defendants "to commit the tortuous acts . . . as detailed" in the complaint in retaliation for Van Deelen exercising his "rights of petition, equal access to the courts and freedom of speech."  Am. Compl. at ¶ 150.  The Defendants contend that Van Deelen's conspiracy claim fails because he did not allege a constitutional deprivation. *See* Doc 42 at 14.  As discussed in sections "a.," "c.," and "d.", *supra*, Van Deelen did allege a constitutional deprivation and the Defendants have not demonstrated entitlement to dismissal of this claim on this basis.

      But, as the Kansas District Court explained to Van Deelen in 2006,

> [t]he fundamental elements of a § 1983 conspiracy claim are an agreement between the parties and concerted action in furtherance of that agreement.  *See Reed v. Dunham*, 893 F.2d 285, 287 (10th Cir .1990).  To state a valid claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir.1998).  "Mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).

*Van Deelen v. Johnson*, No. 05-4039, 2006 WL 1764381, *11 (D. Kan. June 27, 2006) (granting summary judgment in favor of defendants on conspiracy claims because Van Deelen "failed to allege specific facts showing an agreement and concerted action amongst the defendants"), *aff'd in relevant part & rev'd in part*, 497 F.3d 1151 (10th Cir. 2007).  Defendants allege that Van Deelen has failed to allege specific facts showing an agreement and concerted action amongst the defendants and that his conspiracy claim must therefore be dismissed on this basis.

      As mentioned above, the only constitutional claims that remain against any of the School

Defendants are Counts I-III, VI-VIII, and X-XI which allege retaliation for having filed a lawsuit, for having filed a notice of claim, and for having run as a school board candidate and which also allege denial of Van Deelen's allegedly constitutional right to send e-mails to teachers using the District's e-mail system.   Van Deelen has named only Defendants Board, Jaramillo, Johnson, Knight, Jones, Guinn, Kline, Dilworth, Pacheco, Peachey, and Korwin in these counts.   Van Deelen contends that his allegations that Jaramillo acted under the direction and supervision of Knight, Johnson and Jones; that Jones eavesdropped on a meeting between Jaramillo and Van Deelen; that Bird and Stevens were supervised by Jones and Knight when they made their allegedly false complaints and Jones refused to meet with Van Deelen so that he could rebut the complaints; and that Jaramillo and Jones each omitted from Van Deelen's personnel file Van Deelen's e-mails to them sufficiently provide circumstantial evidence of a conspiracy to elude dismissal of the conspiracy count.   *See* Doc. 43 at 55-57.  He also contends, without pointing to any supporting facts in his amended complaint, that the Board members knew and consented to the other Defendants' actions.  *See id.* at 57.  The Defendants do not reply to Van Deelen's argument.

The Court notes that all constitutional claims against Bird and Stevens have been dismissed and their allegedly bad acts occurred long before Van Deelen filed his notice of claim and lawsuit or ran for public office. Van Deelen alleges facts showing only that Knight and Johnson supervised the other employees and only that the Board members knew about actions taken against Van Deelen. But those allegations do not allege concerted conduct.  Neither the fact that Jones, the District's personnel director,  "eavesdropped" on Jaramillo's meeting with Van Deelen nor the fact that both Jaramillo and Jones failed to place e-mails that Van Deelen sent to them in Van Deelen's personnel file raises a plausible implication that Jaramillo and Jones illegally conspired to violate Van

Deelen's constitutional rights. *Cf. Van Deelen v. Johnson*, 2006 WL 1764381 at *11 (holding that

asking a law-enforcement officer to "sit in on [Van Deelen's] tax-appeal hearing" does not allege

facts showing a conspiracy to violate Van Deelen's constitutional rights); *Bell Atl. Corp.,*, 127 S.

Ct. at 1962 (stating that, because the defendants' parallel business conduct could be consistent either

with an illegal conspiracy or with legal business strategies, because the plaintiffs failed to identify

facts plausibly suggesting, rather than merely raising the possibility of, an illegal agreement, the

conspiracy claim should be dismissed). The Court concludes that the conspiracy count against the

School Defendants must be dismissed.

      **h. Claims against the individual school board members.** Although not raised by the

Defendants as part of their motion to dismiss, as part of its inherent power to manage its docket and

dismiss claims when it is "patently obvious" that the plaintiff could not prevail on the facts alleged

and allowing an opportunity to amend his complaint would be futile, *see McKinney v. Okla. Dep't*

*of Human Serv.*, 925 F.2d 363, 365 (1991), the Court concludes that the School Board members

acting in their official and individual capacities should be dismissed as Defendants. Van Deelen has

before been instructed that "[c]laims against individual defendants in their official capacities are

redundant" and subject to dismissal where Van Deelen has also sued the entity itself. *Van Deelen*

*v. Johnson*, 2006 WL 1764381 at *14 n.12. Van Deelen has sued the School Board. He alleges

absolutely no facts in his amended complaint showing that any school board member did anything

while acting in an individual, as opposed to in a corporate or official, capacity and the Court will not

give Van Deelen yet another opportunity to amend his complaint.

      **II. State-law claims against the Alamogordo School Defendants.**

      **a. State Count I.** Van Deelen allege that Defendants Jaramillo, Knight, Jones, Lomax and

the School Board entered into an oral contract with him[5] on September 20, 2006, in which he

"became employed as a teacher" who would continue to be employed by the District for a minimum

of three years under certain conditions. Am. Compl. at ¶ 8. Van Deelen also alleges that the

Defendants orally contracted with him to make New Mexico's and the District's written laws,

policies, and procedures part of his contract. *See id.* And he alleges that the Defendants orally

contracted with him to provide certain conditions of employment at AHS, including training him,

providing security, and monitoring and controlling discipline problems. *See id.* Van Deelen alleges

that these Defendants breached his oral contract by "wrongfully suspend[ing] and terminat[ing]

him]." *Id.* at ¶ 156.

Defendants contend that oral promises about conditions of future public-school employment

do not constitute an enforceable contract under N.M. Stat. Ann. § 22-10A-21, which governs all

public school teachers' contracts in New Mexico. And Van Deelen himself asserts that the

Defendants were not authorized by law to "enter into" such a "contract." *See* Am. Compl. at ¶ 206.

Section 22-10A-21 provides, in relevant part,

> A. All employment contracts between local school boards and certified school
> personnel . . . shall be in writing on forms approved by the state board. These forms
> shall contain and specify the term of service, the salary to be paid, the method of
> payment, the causes for termination of the contract and other provisions required by
> the regulations of the state board.
>
> B. All employment contracts between local school boards and certified school
> personnel . . . shall be for a period of one school year except:
>
> (1) contracts for less than one school year are permitted to fill personnel vacancies
> which occur during the school year . . . .

---

[5] Van Deelen does not state who he talked to on September 2006 or who specifically
allegedly made oral promises to him.

....

E. Except as provided in Section 22-10-12 NMSA 1978, a person employed by contract pursuant to this section has no legitimate objective expectancy of reemployment, and no contract entered into pursuant to this section shall be construed as an implied promise of continued employment pursuant to a subsequent contract.

"At the end of the school year, if a nontenured teacher is notified of a school board's intent not to reemploy for the coming year, that teacher historically has little legal recourse." *Giangreco v. Murlless*, 943 P.2d 532, 533 (N.M. Ct. App. 1997). The Court concludes that Van Deelen's claim for breach of an oral contract for teaching employment must be dismissed because neither oral public teaching contracts nor oral promises about terms or conditions of public-school employment, are cognizable under New Mexico law.

**b. State Counts II-XII.** State-law counts II-XII allege various state-law tort claims against Defendants Jaramillo, Knight, Jones, Lomax, the School Board, Buhler, Bird, Stevens, Dilworth, and Johnson. The claims include fraudulent misrepresentation and inducement to accept the teaching position at AHS, *see* Am. Compl. at ¶ 159; negligence and gross negligence in failing "to provide a safe and secure teaching environment at AHS," and in failing to follow and enforce state and District laws, policies, procedures, guidelines and regulations, *id.* at ¶ 166; slander and invasion of privacy by "coloring plaintiff in a false light in the public eye," *id.* at ¶¶ 174, 179, 184, 189; libel, *see id.* at ¶ 179; intentional infliction of emotional distress, *see id.* at ¶ 194; negligent infliction of emotional distress, *see id.* at ¶ 199; negligent supervision and training, *see id.* at ¶ 202; negligence in entering into an unauthorized teaching contract, *see id.* at ¶ 206; and wrongful termination, *see id.* at ¶ 209. Defendants contend that all of these state-law claims are barred by the New Mexico Tort Claims Act because immunity for the claims has not been waived and because the Act is "the

exclusive remedy against a government entity or public employee for any tort for which immunity

has  been waived under the Tort Claims Act and no other claim, civil action or proceeding for

damages, by reason of the same occurrence, may be brought against a governmental entity or against

the public employee or his estate whose act or omission gave rise to the suit or claim. " N.M. Stat.

Ann. § 41-4-17(A); *see Daddow v. Carlsbad Mun. Sch. Dist.*, 898 P.2d 1235, 1241 (N.M. 1995)

(noting that a local school board is a "local public body" under section  41-4-3(C) of the New

Mexico Tort Claims Act).

In response, Van Deelen contends that  (i) the Defendants did not raise immunity under the

Tort Claims Act as an affirmative defense; (ii) they have not established that the individual School

Defendants were acting within the scope of their authority such that the Tort Claims Act applies[6];

(iii) his claims for gross negligence and negligent supervision are not encompassed by the Act; and

(iv) the Court should strike the motion to dismiss the state-law claims because it is the Defendants'

second motion to dismiss.  The Court disagrees.

First, the Defendants did raise immunity under the Act as an affirmative defense. *See* Doc.

38 at 47. Second, even though Van Deelen asserts that he is suing all individual school defendants

in both their individual and official capacities, as discussed below, Van Deelen's allegations in his

amended complaint conclusively establish, as a matter of law, that all alleged state-law violations

occurred within the defendants' scope of their employment duties as defined in the Act and as

interpreted by case law.  The Act provides that governmental entities and public employees, while

acting within the scope of their duties, shall be immune from liability for any tort except as waived

---

[6] Van Deelen also erroneously argues, without citing applicable authority, that New
Mexico state-law standards for motions to dismiss apply to his state-law claims, as opposed to
the federal standards applicable to motions to dismiss in federal lawsuits.

by the Act. *See* N.M. Stat. Ann. § 41-4-4; *Bober v. N. M. State Fair*, 808 P.2d 614, 622 (N.M. 1991) (stating that the "legislature granted governmental entities and employees immunity from tort liability except as such immunity is waived by Sections 41-4-5 through 41-4-12"). The Act defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M. Stat. Ann. § 41-4-3(G) (1978). This definition creates "a unique standard," that differs from the common-law concept of "scope of employment" in that it includes even criminal and intentional tortious acts the employee commits while acting as a public employee. *Risk Mgmt. Div. v. McBrayer*, 14 P.3d 43, 47-48 (N.M. Ct. App. 2000). Van Deelen's complaint establishes that every act he complains of occurred within the scope of the Defendants' duties as public employees, as defined by the Act.

Third, the Act provides no waiver of immunity for negligent supervision. *See Pemberton v. Cordova*, 734 P.2d 254, 256 (N.M. Ct. App. 1987) (holding that, because the Act does not specifically allow an injured student to sue a school district on the theory of negligent supervision, sovereign immunity has not been waived under the Act and the claim against the district had to be dismissed); *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1263 (N.M. 2006) (favorably citing *Pemberton* and noting that "a complaint alleging nothing more than negligent supervision is not actionable, because the TCA does not specify a tort waiver for negligent supervision").

While the Act does waive immunity for negligence in maintaining a public building, and such negligence may include failing to provide a safe environment for the general public, the "TCA does not waive immunity for a single, discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public." *Upton*, 141 P.3d at 1262. Here,

32

Van Deelen's amended complaint asserts negligence or gross negligence by the District and its employees failing to remove who **he** considered to be "dangerous students" from his classroom and failing to post a security guard in his classroom after J.B. threatened to "kick his ass" and to have his mother "take care of" him. This type of alleged negligence is a "discrete administrative decision affecting only" Van Deelen, and it therefore does not fall under the waiver of immunity found in the Act. *See id.*

Finally, nothing in the Rules prohibits the filing of a second motion to dismiss that deals with separate counts in a complaint. The Court concludes that all of Van Deelen's state-law tort claims against the school defendants must be dismissed.

### III. Motion to dismiss constitutional claims against Defendants Pacheco and May.

Defendants Pacheco and May, who are employees of the Alamogordo Department of Public Safety, separately move to dismiss Van Deelen's claims against them.

**a. Counts I-III.** Pacheco moves to dismiss these counts solely on the same basis as the School Defendants -- that Van Deelen's right to file a lawsuit is not constitutionally protected because the suit did not touch on a matter of public concern[7]. *See* Doc. 56 at 4. For the reasons stated in the Court's discussion regarding Counts I-III, *supra*, Pacheco's motion on this basis must be denied. Pacheco's argument in his reply brief that the Tenth Circuit's holding in *Van Deelen v. Johnson*, which was issued in August 2007, set "a new standard for First Amendment retaliation claims," and that the law on the matter was not "clearly established" before that time, *see* Doc. 68 at 2, is belied by the Tenth Circuit's opinion itself. The Court noted that, since 1875, the Supreme

---

[7] The Court will not address the alternate basis for dismissal that Pacheco raised only in his reply brief.

Court has held that "[t]he very idea of a government, republican in form, implies a right on the part

of its citizens . . . to petition for a redress of grievances," *Van Deelen*, 497 F.3d at 1155 (internal

quotation marks omitted), and that the public-concern test applies only to free-speech claims (as

opposed to right-to-petition claims) by government employees, *id.* at 1156.

   **b.  Counts XIII, XIV, XVII and XVIII.**  Count XIII  alleges that Defendant May denied

Van Deelen his right to equal protection when he allegedly falsified a police report May prepared

regarding Van Deelen's altercation with J.B. and Mrs. B and when he filed the report under a name

other than Van Deelen's name and closed it instead of forwarding it to the Alamogordo District

Attorney. *See* Am. Compl. at ¶ 129.  Van Deelen alleges in Count XVII that these same acts

violated Van Deelen's procedural-due-process rights. *Id.* at ¶ 141.

   Counts XIV and XVIII contend that Pacheco similarly violated the same rights when he

allegedly falsified information in a March, 2007, police report regarding Van Deelen's allegation

that a student made a bomb threat and when he failed to timely forward the report to the Attorney

General's office. *See id.* at ¶¶ 132, 144.  Officers Pacheco and May contend that Van Deelen has

not stated facts to support a violation of either his right to equal protection or to procedural due

process because (i) he does not belong to a protected class; (ii) he offered no similarly-situated

persons to establish a different treatment against him as an individual; and (iii) he has no

constitutionally protected right to the proper processing of police reports.

   Van Deelen does not dispute that he does not belong to a protected class, but contends that

he need not identify a similarly situated group of persons in order to invoke the Equal Protection

Clause because he suffered discrimination as a "class of one," citing *Bartell v. Aurora Public

Schools*, 263 F.3d 1143, 1148-49 (10th Cir. 2001).  But *Bartell* does not support Van Deelen's

contention. *Bartell* holds that "plaintiffs need not allege they were part of a suspect class or implicate a fundamental right to state a claim under the Equal Protection Clause." *Id.* at 1149. *Bartell* specifically noted that, "[a]s with any equal protection claim, [the plaintiff] must also demonstrate that he was treated differently than another who is similarly situated." *Id.* (internal quotation marks omitted). Because he has alleged no facts indicating that he was treated differently than similarly-situated individuals, Counts XIII and XIV must be dismissed.

Van Deelen argues that he has a property interest in the Defendants making legitimate police reports and in timely filing those reports and that the interest arises from an implied contract with the Defendants when they took his report. He also contends that his property interest arises from N.M. Stat. Ann. § 29-1-1. Section 29-1-1 provides:

> It is hereby declared to be the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware, and it is also declared the duty of every such officer to diligently file a complaint or information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken, and it is also declared his duty to cooperate with and assist the attorney general, district attorney or other prosecutor, if any, in all reasonable ways. Such cooperation shall include the prompt reporting of all arrests for liquor law violations at licensed liquor establishments to the department of alcoholic beverage control. Failure to perform his duty in any material way shall subject such officer to removal from office and payment of all costs of prosecution.

The plain language of section 29-1-1 requires an officer only to investigate allegations of criminal violations and to file a criminal complaint or information only if the circumstances would appear to a "reasonably prudent person" that such a complaint should be filed. It clearly does not give private citizens a property interest in the police report. The case Van Deelen cites is not on point and is irrelevant to the issue at bar. Van Deelen cites no authority for his bald contention that giving information to a police officer results in a "contract" giving rise to a property interest in the report

the officer makes.  Because Van Deelen did not have a protectible property or liberty interest in the police reports that Pacheco and May prepared, his procedural-due-process claims must be dismissed.

      **c.  Count V.**  Pacheco separately moves for summary judgment on the basis of qualified immunity on Count V, which alleges that the Board, Jaramillo, Jones, Johnson and Pacheco retaliated against Van Deelen for exercising his constitutional right to "speak[] out against block scheduling at the public forum."  Am. Compl. at ¶ 105.  For purposes of his motion, Pacheco assumes that Van Deelen engaged in protected speech at the public forum.  *See* Doc. 59 at 4. Because the Court has concluded that Van Deelen's speech at the forum was not constitutionally protected and that Count V should be dismissed, it must also be dismissed against Pacheco. Therefore, the motion for summary judgment will be denied as moot.

      **d.  Count XX**.  Like the school defendants, Pacheco and May contend that Count XX, the conspiracy claim, must be dismissed against them because Van Deelen has alleged no specific facts showing an agreement and concerted action amongst them and the other Defendants. As mentioned, *supra*, the only remaining constitutional claims that involve Pacheco are the claims alleging retaliation for filing the lawsuit in February, and there are no remaining constitutional claims against May.  Van Deelen's amended complaint is devoid of any specific facts showing agreement or concerted action between any of the Defendants and Pacheco regarding Pacheco's investigation and report of the alleged bomb threat.  As noted, *supra*, "[a] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Tonkovich*, 159 F.3d at 533.   Count XX must be dismissed as to Pacheco and May.

      **IV.  Motion to dismiss state-law claims against Pacheco and May.**

Pacheco and May seek dismissal, on the basis of immunity under the New Mexico Tort Claims Act, of Van Deelen's state-law claims alleging negligence and intentional or negligent infliction of emotional distress (State Law Counts III, VIII, and IX). Van Deelen did not name the specific defendants against whom he brings those claims. And neither Pacheco nor May are named defendants in any of Van Deelen's state-law counts. But state-law Count III alleges negligence and gross negligence for failure "to fully investigate any reported assaults, batteries, harassments, threats, or other improper behavior directed by AHS students against plaintiff and to make all incident reports required by state law." Am. Compl. at ¶ 166. The Court liberally construes this count to allege tortious conduct by Pacheco and May.

Pacheco and May contend that there are no waivers of immunity for any of the three torts under the Act. *See* N.M. Stat. Ann. § 41-4-12 ("The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.").

Similar to his response to the School Defendants' motion to dismiss the state-law claims, Van Deelen contends that (i) the Defendants have not proved they were acting within the scope of their duties, and whether they were acting within the scope of their duties is a jury question; (ii) gross negligence is not covered by the Act; and (iii) the motion should be stricken because it is a second motion to dismiss.

The Court concludes that Van Deelen's allegations in his amended complaint, accepted as true, establish as a matter of law that both Pacheco and May were acting within the scope of their duties as police officers when they investigated Van Deelen's complaints and filed their reports, whether or not they performed those duties negligently or wrongly. Van Deelen's complaint alleges no facts to support claims against the officers for negligent or intentional infliction of emotional distress. The officers' immunity for negligent acts has not been waived under section 41-4-12. *See Bober*, 808 P.2d at 624 ("no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section"). All state-law claims against them must be dismissed.

## V. Motion to Dismiss Claim against the PED.

Van Deelen alleged that the PED "unlawfully established and promulgates a policy in which said defendant knowingly and intentionally fails to take action against New Mexico schools and school districts, including Alamogordo High School and the Alamogordo School District, that have demonstrated severe discipline problems." Am. Compl. at ¶ 91. He contends that the PED failed to take action on known violence at AHS and that it "is aware that its inaction causes [AHS] teachers, including the plaintiff to be assaulted, battered and threatened by students . . ." In Count XIX, Van Deelen contends that the PED violated his substantive due process right to be free from threats and violence. *See id.* at ¶ 147.

The PED contends that it is entitled to Eleventh Amendment immunity on this claim. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

38

PED also contends that, insofar as it may be considered as a defendant in other state-law claims in which Van Deelen has sued "all defendants," it is also entitled to immunity under the New Mexico Tort Claims Act.

The Tort Claims Act defines "state" or "state agency" as "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." § 41-4-3(H). The PED is a cabinet-level state agency subject to the direction of the governor, and any judgment against it would be paid for from state funds. *See* N.M. Const. art. XII §§ 2, 4, 6; N.M. Stat. Ann. §§ 41-4-4B, -20, -20A, -23; *Ellenberg v. N. M. Military Inst.*, 478 F.3d 1262, 1270 (10th Cir. 2007) ("NMPED is the 'sole educational agency of the state for the administration or for the supervision of the administration of any state plan established or funds received by the state by virtue of any federal statute relating to aid for education' for the state's general public school system. N.M. Stat. § 22-9-2.'"). As an arm of the state, the PED is, therefore, entitled to Eleventh Amendment immunity from suit in federal court whether a claim is for legal or equitable or declaratory relief, and the Court will dismiss Counts XIX and XX and claims for declaratory, injunctive, and mandamus relief against it. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 70 (1989); *Papasan v. Allain*, 478 U.S. 265, 276 (1986).

The Court further concludes that, insofar as Van Deelen may have alleged any state-law tort claims against the PED, those are also barred by Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, 121 (1984). All claims against the PED shall be dismissed, and the PED shall be dismissed as a defendant in this case.

Finally, the Court takes judicial notice that it has been Van Deelen's practice in other federal cases to file motions for reconsideration after receiving rulings that are not in his favor. As Judge

Belot stated in one of Van Deelen's Kansas cases, "a motion for reconsideration is neither invited nor encouraged. Any such motion shall not exceed 3 double-spaced pages." *Van Deelen v. McAnany*, No. 03-1408, Doc. 11 (D. Kan. Jan. 27, 2004). The response to any motion for reconsideration shall not exceed 3 double-spaced pages, and no reply shall be filed.

**IT IS ORDERED** that the Alamogordo Public School Defendants' Motion to Dismiss [Doc. 42] is GRANTED in part and DENIED in part;

**IT IS FURTHER ORDERED** that the School Defendants' second Motion to Dismiss [Doc. 51] is GRANTED;

**IT IS FURTHER ORDERED** that Defendants Pacheco's and May's Motion to Dismiss [Doc. 56] is GRANTED in part and DENIED in part;

**IT IS FURTHER ORDERED** that Defendants Pacheco's and May's second Motion to Dismiss [Doc. 55] is GRANTED;

**IT IS FURTHER ORDERED** that Defendant Pacheco's Motion for Summary Judgment [Doc. 59] is DENIED as moot;

**IT IS FURTHER ORDERED** that Defendant PED's Motion to Dismiss [Doc. 76] is GRANTED;

**IT IS FURTHER ORDERED** that all enumerated federal and state-law Counts are dismissed except for federal Counts I-III, VI-VIII, and X-XI;

**IT IS FURTHER ORDERED** that Defendants PED, Lomax, Guerrero, Buhler, Bird, Stevens, May, Medina, Halbig, Cross, and Rickman are DISMISSED as Defendants and that the caption of the case shall be amended accordingly;

**IT IS FURTHER ORDERED** that, if Van Deelen files a motion for reconsideration, it shall

be limited to three, double-spaced pages; the response shall be limited to three, double-spaced pages, and no reply shall be filed.


DATED this 12th day of March, 2008.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for the Plaintiff:
    Michael D. Van Deelen, pro se

Attorneys for Alamogordo School Defendants:
    Narvaez Law Firm, P.A.
    H. Nicole Werkmeister
    Bryan C. Garcia

Attorneys for Defendants Pacheco and May:
    Brennan & Sullivan, P.A.
    James P. Sullivan
    Christina L.G. Brennan

Attorneys for Defendant PED
    Montgomery & Andrews, P.A.
    Stephen S. Hamilton

41

# TAB B



Neutral
As of: May 1, 2014 11:41 AM EDT

## Van Deelen v. City of Eudora

United States District Court for the District of Kansas
November 5, 1996, Decided ; November 5, 1996, FILED
No. 96-4040-SAC

**Reporter:** 1996 U.S. Dist. LEXIS 18075; 1996 WL 707016

MICHAEL D. VAN DEELEN, Plaintiff, Vs. CITY OF EUDORA, KANSAS; BILL LONG; GREG DAHLEM; KEN MASSEY; DOUG HUNSINGER; and TEN JOHN and/or JANE DOES; Defendants.

**Disposition:** [*1] Defendants' motion to dismiss designated parts of the plaintiff's first amended complaint (Dk. 24) granted in part and denied in part; the defendants' motion to strike the plaintiff's brief and second affidavit (Dk. 49) granted in part and denied in part; the plaintiff's motion for leave to file second supplemental response (Dk. 56) denied; the plaintiff's motion to strike certain affidavits (Dk. 57) denied; the plaintiff's motion to strike authenticated transcript from a proceeding in State v. Van Deelen, NO. 94-Cr-1068 on February 21 and 22, 1995 in Douglas County District Court (Dk. 71) granted; and the defendants' motion for sanctions (Dk. 98) granted in part and denied in part.

| Core Terms |
| --- |

motion to strike, pro se, qualified immunity, motion to dismiss, constitutional right, pro se litigant, factual allegations, privacy, harassment, tolling, first amended complaint, summary judgment, reply brief, conspiracy, tailgating, punitive, accrue

| Case Summary |
| --- |

### Procedural Posture
Defendants, municipality and police officers, moved to dismiss plaintiff claimant's civil rights action alleging violations of various constitutional rights by the police officers. Defendants also moved to strike the claimant's brief and second affidavit and moved for sanctions. The claimant moved for leave to file a second supplemental response and to strike certain affidavits.

### Overview
A claimant filed suit against defendants, alleging violations of various constitutional rights and sought compensatory and punitive damages and injunctive relief. The claimant contended that the police had repeatedly tailgated him while driving on the streets, claiming that his right of privacy and right of assembly were violated. The court granted in part and denied in part defendants' motion to dismiss the claimant's complaint alleging constitutional violations. The court held that tailgating and the act of following claimant did not constitute a seizure under the *Fourth Amendment* but the court gave the claimant an opportunity to cure this defective allegation. The court held that there was no evidence that defendants violated the claimant's right of privacy or right of assembly. Also, the court found that the claim for malicious prosecution was barred by a one-year statute of limitations. The court granted in part and denied in part defendants' motion to strike the claimant's brief and affidavit and the motion for sanctions. The court found that sanctions were appropriate because claimant knew that certain claims against individuals were barred by the statute of limitation.

### Outcome
The court granted in part and denied in part defendants' motion to dismiss designated parts

1996 U.S. Dist. LEXIS 18075, *1

of the claimant's first amended complaint alleging violations of his constitutional rights. The court granted in part and denied in part defendants' motion to strike the claimant's brief and affidavit and the motion for sanctions and the court denied the claimant's motion for leave to file a second supplemental response.

---

**LexisNexis® Headnotes**

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

Civil Procedure > ... > Summary Judgment > Opposing Materials > General Overview

Civil Procedure > ... > Summary Judgment > Supporting Materials > General Overview

Civil Procedure > ... > Summary Judgment > Supporting Materials > Affidavits

Evidence > Types of Evidence > Documentary Evidence > Affidavits

Evidence > ... > Testimony > Lay Witnesses > Personal Knowledge

*HN1* A party opposing summary judgment need not produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. Thus, a party may not rely on affidavits containing inadmissible hearsay, a description of another witness's expected testimony, conclusory allegations without specific facts showing personal knowledge, or statements where the affiant's competency is not apparent.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN2* A court may dismiss a complaint for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6)*. Dismissal is appropriate only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. The purpose of *rule 12(b)(6)* is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

*HN3* A court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. The court construes the allegations in the light most favorable to the plaintiff. These deferential rules, however, do not allow the court to assume that a plaintiff can prove facts that it has not alleged or that the defendants have violated the laws in ways that have not been alleged.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

*HN4* When the court considers matters outside the pleadings, it then must treat the *Fed. R. Civ. P. 12(b)(6)* motion as one for summary judgment and dispose of it pursuant to *Fed. R. Civ. P. 56*.

Civil Procedure > Parties > Pro Se Litigants > General Overview

Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

*HN5* The United States Supreme Court has said that a pro se plaintiff's complaint must be construed liberally and judged against a less stringent standard than that used for pleadings drafted by counsel.

Civil Procedure > Parties > Pro Se Litigants > General Overview

Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

Governments > Legislation > Statute of Limitations > General Overview

*HN6* Courts must afford pro se litigants a reasonable opportunity to remedy the defects in their pleadings. It remains true that a court must not assume the role of advocate for the pro se litigant. Consequently, the court is not to construct arguments or theories for the plaintiff in the absence of any discussion of those issues. For that matter, the pro se status does not operate to toll the statute of limitations, for pro se litigants remain obligated to follow the rules.

1996 U.S. Dist. LEXIS 18075, *1

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > General Overview

Civil Procedure > ... > Affirmative Defenses > Statute of Limitations > General Overview

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > Pleading & Practice > Pleadings > General Overview

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Relation Back

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Pleadings & Proof

*HN7* Though the statute of limitations is an affirmative defense, it may be raised on a *Fed. R. Civ. P. 12(b)(6)* motion when the critical dates alleged in the complaint plainly show the limitations period to have expired. When the statute of limitations defense is apparent from the face of the complaint, the plaintiff must establish some factual basis for tolling the statute.

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

Governments > Legislation > Statute of Limitations > Tolling

Torts > Procedural Matters > Statute of Limitations > General Overview

*HN8* In a *42 U.S.C.S. § 1983* action, the relevant statute of limitations is the state's statute applicable to personal injury actions. Consequently, the appropriate statute of limitations for federal civil rights claims asserted in the state of Kansas is the two-year period specified in *Kan. Stat. Ann. § 60-513(a)(4)*. State law also governs any accompanying tolling provisions. Under Kansas law, a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute has run, will be precluded from relying on the bar of the statute.

Civil Rights Law > Protection of Rights > Procedural Matters > Claim Accrual

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

Criminal Law & Procedure > Commencement of Criminal Proceedings > Interrogation > General Overview

Criminal Law & Procedure > ... > Interrogation > Miranda Rights > General Overview

Governments > Legislation > Statute of Limitations > General Overview

*HN9* The accrual of a federal civil rights action is controlled by federal law. *42 U.S.C.S. § 1983* claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of the action. Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

Civil Rights Law > ... > Section 1983 Actions > Scope > Government Actions

*HN10* Qualified immunity is an affirmative defense in *42 U.S.C.S. § 1983* actions. Qualified immunity offers protection against subjecting government officials either to the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. Once asserted, the defense of qualified immunity requires the plaintiff to come forth with facts or allegations that demonstrate that the defendant has violated clearly established law.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

*HN11* When the defense of qualified immunity is advanced by a motion to dismiss, the court

1996 U.S. Dist. LEXIS 18075, *1

should permit the plaintiff to come forward with any additional allegations showing that the defendant violated clearly established law. The court must accept all well-pleaded allegations as true and construe them favorably for the plaintiff.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

*HN12* *Fed. R. Civ. P. 8(a)* requires a short and plain statement of the claim showing that the pleader is entitled to relief. The statement need not be factually detailed but it must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. A plaintiff is not required to state precisely each element of the claim. Nonetheless, a plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. In short, *rule 8(a)* relieves a plaintiff from pleading technicalities and from alleging detailed facts that establish her right to judgment. But, it still requires minimal factual allegations on those material elements that must be proved to recover.

Civil Procedure > Parties > General Overview

Civil Procedure > Parties > Pro Se Litigants > General Overview

Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

Civil Procedure > ... > Eligibility for Sanctions > Parties Subject to Sanction > Self Represented Litigants

Civil Procedure > Sanctions > Baseless Filings > General Overview

*HN13* The focus of *Fed. R. Civ. P. 11* is narrow. It relates to the time of signing of a document and imposes an affirmative duty on each attorney and each party, represented or pro se, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed. Pro se litigants must comply with *rule 11* and make a reasonable inquiry as to whether a complaint is well-grounded in fact and

warranted by existing law. In short, to avoid *rule 11* sanctions, a pro se party's actions must be objectively reasonable. The plaintiff's subjective belief and pro se status do not insulate him from the reach of *rule 11*.

**Counsel:** MICHAEL D VANDEELEN, plaintiff, Pro se, Eudora, KS.

For EUDORA, CITY OF KANSAS, defendant: Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS. For BILL LONG, defendant: Donald Patterson, (See above). For GREG DAHLEM, defendant: Donald Patterson, (See above). For KEN MASSEY, defendant: Donald Patterson, (See above). For DOUG HUNSINGER, defendant: Donald Patterson, (See above). For JOHN DOES, 10 John and/or Jane Does, defendant: Donald Patterson, (See above).

For DOUGLAS COUNTY SHERIFF, [*2] Loren Anderson, movant: Theresa M. Nuckolls, Riling, Burkhead & Nitcher, Chtd., Lawrence, KS. For DOUGLAS COUNTY DISTRICT ATTORNEY'S OFFICE, movant: Glenn R. Trapp, Office of the District Attorney, Judicial Law Enforcement Center, Lawrence, KS.

**Judges:** Sam A. Crow, U.S. District Judge

**Opinion by:** Sam A. Crow

**Opinion**

## MEMORANDUM AND ORDER

The case comes before the court on the defendants' motion to dismiss designated parts of the plaintiff's first amended complaint (Dk. 24); the defendants' motion to strike the plaintiff's brief and second affidavit (Dk. 49); the plaintiff's motion for leave to file second supplemental response (Dk. 56); the plaintiff's motion to strike certain affidavits (Dk. 57); the plaintiff's motion to strike authenticated transcript from a proceeding in *State v. Van Deelen*, No. 94-Cr-1068 on February 21 and 22, 1995 in Douglas County District Court (Dk. 71);

1996 U.S. Dist. LEXIS 18075, *2

and the defendants' motion for sanctions (Dk. 98).

The pro se plaintiff brings this civil rights action alleging his various constitutional rights were violated by the individual defendants who were police officers for the City of Eudora during all relevant times. The plaintiff seeks compensatory and punitive [*3] damages and injunctive relief.

Before taking up the different motions, the court wants to offer an observation and suggestion. The record in this civil rights case is littered with excessive filings from both sides. The filings themselves are often retaliatory motions or contain irrelevant asides or personal attacks of character and credibility. Such filings unduly tax this court's patience and resources. The court urges both sides to step back and evaluate whether such contentiousness serves them well. If the pace and nature of these filings continues unabated, the parties should not be surprised if in the next order the court considers measures more serious than an admonition.

## DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S BRIEF AND SECOND AFFIDAVIT (Dk. 49).

Without leave of the court, the plaintiff filed a "Response to Defendants Reply" or a surreply. (Dk. 48). The rules of this court do not provide for the filing of surreplies. D.Kan. Rule 7.1. The courts in this district do not permit a surreply without leave of the court. *Harnett v. Parris, 925 F. Supp. 1496, 1500 (D. Kan. 1996)*; *see, e.g., Edwards v. Esau Investments, Inc., 1994 U.S. Dist. LEXIS 15960*, No. 93-4130- DES, 1994 [*4] WL 606073, at *5 (D. Kan. Oct. 31, 1994); *Dees v. Vendel, 1994 U.S. Dist. LEXIS 570*, No. 91-2482- EEO, 1994 WL 17951, at *1 (D. Kan. Jan. 13, 1994), and reserve leave for rare circumstances as "where a movant improperly raises new arguments in a reply," *E.E.O.C. v. International Paper Co., 1992 U.S. Dist. LEXIS 18895*, No. 91-2017- *L. 1992 WL 370850* (D. Kan. Oct. 28, 1992). Since this rule is not expressly stated in the local rules, the court will

indulge the pro se plaintiff in this one instance. Moreover, the defendants filed a lengthy reply brief that does appear to address certain facts for the first time. The defendants' motion to strike the plaintiff's memorandum (Dk. 48) is denied.

*HN1* A party opposing summary judgment "need not produce evidence 'in a *form* that would be admissible at trial,' . . ., but the content or substance of the evidence must be admissible." *Thomas v. International Business Machines, 48 F.3d 478, 485 (10th Cir. 1995)*. Thus, a party may not rely on affidavits containing inadmissible hearsay, a description of another witness's expected testimony, conclusory allegations without specific facts showing personal knowledge, or statements where the affiant's competency is not apparent. [*5] *Id.* To the extent that it considers any affidavits submitted by the parties in support of the pending matters, the court will apply the above rules as so stated and disregard those portions of the affidavits that offend these rules. For the record, the court will give several examples for the plaintiff. His averment concerning the contents of a "911" tape recording is hearsay. Statements like "the defendants . . . acted individually and in conspiracy . . . to deny me of due process," or "said residents being similarly situated to me," or "I believe that I was subsequently singled out for differential treatment by the defendants . . . in retaliation," are conclusory allegations requiring detailed and specific factual support. Thus, the court strikes those portions of the plaintiff's second affidavit that are the subject of the defendants' motion to strike.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL RESPONSE (Dk. 56).

The plaintiff has had several opportunities, including his response (Dk. 30), his supplemental response (Dk. 39), and his surreply (Dk. 48) to brief the relevant legal issues. The plaintiff offers no cogent grounds for filing yet another [*6] brief. The court denies the plaintiff's motion.

CORY RUSH

## PLAINTIFF'S MOTION TO STRIKE CERTAIN AFFIDAVITS (Dk. 57).

The plaintiff moves to strike the affidavits of Frank Diehl, Glenn R. Trapp, and Greg Dahlem. He argues that the affidavits fail to show the affiants are competent to testify and have personal knowledge about the matters in their affidavits. The plaintiff's motion and memorandum does not identify the objectionable portions in any of the three affidavits or give any examples of what he considers inappropriate in them. The court is simply left to speculate what the plaintiff's specific objections may be. In these circumstances, the court has no choice but to deny the plaintiff's motion summarily.

## PLAINTIFF'S MOTION TO STRIKE AUTHENTICATED TRANSCRIPT FROM A STATE CRIMINAL PROCEEDING (Dk. 71).

On August 8, 1996, the defendants filed an authenticated transcript of the state court's order in *State v. Van Deelen*, No. 94CR 1068 (February 21 and 22, 1995). (Dk. 63). The defendants cited this ruling in their reply brief in support of their motion to strike the plaintiff's memorandum and second affidavit. (Dk. 62 at 4). The court fails to see the relevance [*7] of the state court's order to the defendants' arguments in their reply brief. For that reason, the court grants the plaintiff's motion to strike the transcript.

## MOTION TO DISMISS

### Governing Standards

*HN2* A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed.* *2d 59, 104 S. Ct. 2229 (1984)* (citing *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957))*. "The purpose of *Rule 12(b)(6)* is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)*.

*HN3* A court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987)*. [1] The court construes the allegations [*8] in the light most favorable to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*; *Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991)*. These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 526, 74 L. Ed. 2d 723, 103 S. Ct. 897 (1983)* (footnote omitted). *HN4* When the court considers matters outside the pleadings, it then must treat the *Rule 12(b)(6)* motion as one for summary judgment and dispose of it pursuant to *Rule 56*. *Hall v. Bellmon, 935 F.2d at 1109*.

No less than *HN5* the Supreme Court has said that a pro [*9] se plaintiff's complaint must be construed liberally and judged against a less stringent standard than that used for pleadings drafted by counsel. *Haines v. Kerner, 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)*. The Tenth Circuit has explained this rule, as follows:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it

---

[1] "The court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*.

should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall v. Belmon, 935 F.2d at 1110* (footnote omitted). In addition, *HN6* courts must afford pro se litigants a "reasonable opportunity to remedy the defects in their pleadings." *Hall v. Bellmon, 935 F.2d at 1110 n.3.* It remains true that a court must not "assume the role of advocate for the pro se litigant." *Id. at 1110.* Consequently, the court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins, 927 F.2d 1156, [\*10] 1159 (10th Cir. 1991).* For that matter, the pro se status "does not operate to toll" the statute of limitations, for "pro se litigants remain obligated to follow the rules." *Calia v. Morrison, No. 94-3149, 1995 U.S. App. LEXIS 12293,* at *3-*4 (10th Cir. May 22, 1995) (citation omitted).

Statute of Limitations

*HN7* Though the statute of limitations is an affirmative defense, it may be raised on a 12(b)(6) motion when the critical dates alleged in the complaint plainly show the limitations period to have expired. *Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); see Lee v. Rocky Mt. UFCW Unions & Emplrs. Trust Pension Plan, No. 92-1308, 1993 U.S. App. LEXIS 30478* (10th Cir. Nov. 23, 1993); *Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965); Gardner v. CIA,* No. 95-4048-DES, *1995 U.S. Dist. LEXIS 13131,* at *2-*3 (D. Kan. Aug. 24, 1995). When the statute of limitations defense is apparent from the face of the complaint, the plaintiff must establish some factual basis for tolling the statute. *Aldrich, 627 F.2d at 1041 n.4.*

*HN8* In a *§ 1983* action, the relevant statute of limitations is the state's [\*11] statute applicable

to personal injury actions. *Wilson v. Garcia, 471 U.S. 261, 276-80, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985).* Consequently, the appropriate statute of limitations for federal civil rights claims asserted in the state of Kansas is the two-year period specified in *K.S.A. § 60-513(a)(4). Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993); Hamilton v. City of Overland Park, 730 F.2d 613, 614 (10th Cir. 1984)* (en banc), *cert. denied, 471 U.S. 1052, 85 L. Ed. 2d 476, 105 S. Ct. 2111 (1985).* State law also governs any accompanying tolling provisions. *Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).* "Under Kansas law, 'a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute has run, will be precluded from relying on the bar of the statute.'" *Peoples v. Finney County Board of Commissioners,* 56 F.3d 78, 1995 WL 326131, at *3 (10th Cir. 1995) (Table) (quoting *Ferrell v. Ferrell, 11 Kan. App. 2d 228, 233, 719 P.2d 1, 5 (1986)*

In contrast, *HN9* the accrual of a federal [\*12] civil rights action is controlled by federal law. *Robinson v. Maruffi, 895 F.2d 649, 655 n.8 (10th Cir. 1990); Newcomb v. Ingle, 827 F.2d 675, 678 (10th Cir. 1987).* "*Section 1983* claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir.1991)* (quotations omitted). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Johnson, 925 F.2d at 1301* (citations omitted).

The plaintiff concedes that the applicable one-year statute of limitations bars his state law claim for malicious prosecution alleged in count eight. The court dismisses count eight as barred by the statute of limitations.

The defendants move to dismiss the entirety of PP 12, 18 and 19 and portions of PP 11, 22, 23, 25, 26, 32 and 34 as dealing with matters that accrued more than two years before February 15, 1996, the date on which the plaintiff commenced this action. The plaintiff opposes [*13] dismissal arguing something akin to a continuing violation theory. Specifically, the plaintiff argues the limitations period did not "run out because the actions of which they are a part continued to a point in time which was less than two years before the institution of the present action." (Dk. 48 at 1-2). Moreover, the plaintiff denies knowledge of the conspiracy to deny his constitutional rights until less than two years before February 15, 1996. (Dk. 48 at 2).

The plaintiff cites no case to support his continuing violation theory. Courts have used this theory principally in the Title VII context and have been reluctant to extend it to areas outside of Title VII. *Houck v. City of Prairie Village, 924 F. Supp. 120, 121-22 (D. Kan. 1996)*; *see Oyler v. Finney, 870 F. Supp. 1018, 1023 (D. Kan. 1994), aff'd, 52 F.3d 338* (10th Cir. Apr. 7, 1995) (Table). While the Tenth Circuit has not extended this theory to *§ 1983* actions, it has recognized that a conspiracy claim under *§ 1983* may reach events occurring outside the limitations period. *Hunt v. Bennett, 17 F.3d 1263, 1266* (10th Cir.), *cert. denied, 130 L. Ed. 2d 55, 115 S. Ct. 107 [*14] (1994)*; *Robinson v. Maruffi, 895 F.2d at 654-55*.

The court grants the defendants's motion insofar as the complaint seeks to assert discrete *§ 1983* claims against the individual defendants that occurred more than two years before February 15, 1996. In their original motion, the defendants did not articulate a specific attack on the sufficiency of the plaintiff's conspiracy allegations. Consequently, the court will permit the allegations concerning events prior to February 15, 1994, to remain as part of the plaintiff's conspiracy claim. *See Robinson, 895 F.2d at 654-55*.

Punitive Damages

The plaintiff concedes the dismissal of his punitive damages claim against the City of Eudora and against the other defendants in their official capacity. The defendants' challenge to the timeliness of the plaintiff's claim for punitive damage is denied for lack of legal authority. In addition, the court finds the plaintiff's allegations sufficient to sustain a claim for punitive damages. The court will wait for a timely motion for summary judgment to decide if the plaintiff can come forth with the facts necessary for a reasonable jury to award punitive damages.

No Injury [*15]  in Fact from Denial of Due Process

The defendants argue that the plaintiff fails to allege any injury in fact as a result of due process violations alleged in PP 13, 20, and 38, or as a result of the tailgating alleged in PP 14, 25, and 28. The plaintiff's complaint sufficiently alleges actual injuries under the different counts. The court denies the defendants' motion without deciding whether any of the alleged injuries are recoverable under the law.

QUALIFIED IMMUNITY

HN10 Qualified immunity is an affirmative defense in *§ 1983* actions. *Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995)*. Qualified immunity offers protection against "subjecting government officials 'either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985)* (quoting *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982))*. Once asserted, the defense of qualified immunity requires the plaintiff to come forth with facts or allegations that [*16] demonstrate that the defendant has violated clearly established law. *Sawyer v. County of Creek, 908 F.2d 663, 665 (10th Cir. 1990)*.

HN11 When the defense is advanced by a motion to dismiss, the court "should permit the

CORY RUSH

1996 U.S. Dist. LEXIS 18075, *16

plaintiff to come forward with any additional allegations showing that the defendant violated clearly established law." *Sawyer, 908 F.2d at 665-66* (citation omitted). The court must accept all well-pleaded allegations as true and construe them favorably for the plaintiff. *Liebson v. New Mexico Corrections Dept., 73 F.3d 274, 275 (10th Cir. 1996)* (citation omitted).

The Supreme Court recently clarified the framework for evaluating qualified immunity defenses. *Siegert v. Gilley, 500 U.S. 226, 231-33, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991)*. A court must decide whether the plaintiff "has asserted a violation of a constitutional right at all." *Id. at 232*. If so, then the court assesses whether that constitutional right was clearly established at the time of the defendants' actions. *Id.; see Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995)*.

The court is troubled by several paragraphs of conclusory allegations [*17] in the plaintiff's complaint. *HN12 Rule 8(a)* requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not be factually detailed but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1216 at 154-59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Co., 851 F.2d 513, 515 (1st Cir. 1988)*. In short, *Rule 8(a)* relieves a plaintiff from pleading technicalities and from alleging detailed facts that establish her right to judgment. *Trevino v. Union Pacific R. Co., 916 F.2d 1230, 1234 (7th Cir. 1990)*. But, it still requires minimal factual allegations on those material elements that must be proved to recover. *See Hall v. Bellmon, 935 F.2d at [*18] 1110*. The court will not strike those paragraphs

at this time, but the court does not consider those allegations to assert any additional claims for relief. The court intends to limit the plaintiff's different claims to those events or instances supported by sufficient factual allegations.

Tailgating

In PP 14, 25, and 28, the plaintiff alleges the defendants repeatedly tailgated him while he was driving on the streets of Eudora in a careful manner and not in violation of a municipal or state traffic law. The defendants argue that there is no constitutional right to be free of tailgating and that the mere act of following the defendant does not constitute a seizure under the *Fourth Amendment*. The plaintiff responds that police harassment violates due process as it furthers no valid public purpose and is arbitrary and unreasonable.

The mere act of a police officer following the plaintiff's car as alleged in the complaint and the plaintiff's affidavit does not appear to violate any constitutional right. There is no alleged deprivation of any liberty or property interest for purposes of a due process claim. Nor does the plaintiff allege that tailgating was part of a pattern of harassment [*19] done in retaliation for his exercise of constitutional rights. *See, e.g., Hale v. Townley, 45 F.3d 914, 919-20 (5th Cir. 1995)*. "'Many harms, though caused by a state actor, do not fall within the scope of *section 1983*, for *section 1983* does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws.'" *Reeve v. Oliver, 41 F.3d 381, 383 (8th Cir. 1994)* (quoting *Gregory v. City of Rogers, 974 F.2d 1006, 1009 (8th Cir. 1992)*, *cert. denied, 507 U.S. 913, 122 L. Ed. 2d 661, 113 S. Ct. 1265 (1993)*. The court shall give the plaintiff an opportunity to file an amended complaint to cure this defective allegation concerning harassment and tailgating.

Right of Privacy

The defendants note that the plaintiff scatters this claimed right throughout his allegations. The

defendants offer their critical analysis of this right within the strictures of a liberty interest under the Fourteenth Amendment or a privacy interest under the *Fourth Amendment*. The defendants conclude that the plaintiff has not alleged the disclosure or acquisition of the kind of information required for a [*20] privacy claim. The defendants further contend that a government may intrude on a privacy interest if it uses the least intrusive means and its actions are reasonably related to a legitimate government interest. In short, the defendants maintain that the plaintiff has not alleged sufficient facts to sustain a claim that his right to privacy was violated. The plaintiff does not directly respond to the defendants' substantive attack on his allegations of a right to privacy. The court treats the defendants' argument as uncontested and grants their motion to dismiss any allegations that the plaintiff's right of privacy was violated. [2]

Right of Assembly

The defendants attack what they characterize as another [*21] "throw in" right alleged in the plaintiff's complaint. The defendants argue the plaintiff fails to identify the group with which he was denied the right to associate and also fails to identify the conduct by defendants which allegedly curtailed or prevented his exercise of that right. The plaintiff again does not directly respond to the substantive attacks on his allegations about a right of assembly. The court treats the defendants' argument as uncontested and grants their motion to dismiss any allegations that the plaintiff's right of assembly was violated. [3]

Humiliation, Intimidation, Harassment, Reputation

The defendants cite numerous paragraphs where the plaintiff alleges a constitutionally protected right "to freedom from humiliation and intimidation and harassment." *See* Plaintiff's First Amended Complaint, Dk.16, at PP 12, 13, 14, 19, 20, 22, 24, 25, 27, 28, 32 and 34. The defendants maintain the plaintiff's complaint fails to allege the facts necessary to assert any [*22] such constitutional right. As stated earlier, the court will give the plaintiff an opportunity to amend his complaint in an effort to plead an actionable constitutional claim based on harassment and intimidation. The court does not find that the plaintiff is alleging a constitutional claim based on a liberty interest in his reputation.

**OTHER ARGUMENTS AND ISSUES**

The above order addresses all of the arguments and issues advanced in the defendants' original motion to dismiss. The court decided the motion as brought under *Rule 12(b)(6)* and did not convert the motion into a summary judgment motion. The court looked only to the plaintiff's allegations in the complaint and to those additional allegations which he proffered through his various filings.

The plethora of other issues first advanced in the plaintiff's response, the defendants' reply brief, and the other subsequent filings have not been decided as they were never a part of the defendants' original motion to dismiss. The plaintiff's response raised matters unrelated to the defendants' arguments, and the defendants' reply to the irrelevant arguments does not make them a proper part of the original motion to dismiss. [*23] It is this court's practice not to address issues first raised in reply briefs. Moreover, the court submits that these other arguments appear better suited for a summary judgment motion.

**DEFENDANTS' MOTION FOR SANCTIONS (Dk. 98).**

---

[2] The court "may dismiss sua sponte 'when it is patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Hall*, 935 F.2d at 1110 (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).

[3] *See* n.2.

Case 4:14-cv-00923   Document 82-1   Filed on 07/01/15 in TXSD   Page 56 of 128

Page 11 of 12
1996 U.S. Dist. LEXIS 18075, *23

The defendants seeks *Rule 11* sanctions for the following allegations in the first amended complaint: (1) the time-barred allegations in PP 12, 18, and 19 that were the subject of the defendants' motion to dismiss filed in state court prior to removal; (2) the time-barred allegations in PP 11, 22, 23, 25, 26, 32, and 34; (3) the claim against Massey in his official capacity; (4) all claims against Massey based on events prior to October 8, 1993, because of the executed release between the plaintiff and Massey.

*HN13* "The focus of *Rule 11* is narrow. It relates to the issue of signing of a document and imposes an affirmative duty on each attorney and each party, represented or pro se, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed." *Eisenberg v. University of New Mexico, 936 F.2d 1131, 1134 (10th Cir. 1991)*. It is true that the plaintiff does not have the training and resources of an attorney. **[*24]** Still, pro se litigants must comply with *Rule 11* and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law. *See Fed.R.Civ.P. 11(b)*; *accord Danvers v. Danvers, 959 F.2d 601, 604-05 (6th Cir.1992)*. In short, to avoid *Rule 11* sanctions, a pro se party's actions must be objectively reasonable. *White v. General Motors Corp., 908 F.2d 675, 680 (10th Cir.1990)*, *cert. denied, 498 U.S. 1069, 112 L. Ed. 2d 850, 111 S. Ct. 788 (1991)*. The plaintiff's "subjective belief and pro se status, . . ., do not insulate him from the reach of *Rule 11*." *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1933).

Of the four areas argued by the defendant from the first amended complaint, the court does not find the plaintiff's position on the first three areas to be objectively unreasonable considering his pro se status, the frequent confusion over official capacity actions, and the unsettled law on a continuing violation. The fourth area is in violation of *Rule 11*. The plaintiff signed a release on October 8, 1993, which provides in relevant part that he released Kenneth Massey "from any and all rights, claims,    **[*25]**

demands, and damages of any kind, known or unknown, for any and all claims at any time, of whatever nature, up until the time of this agreement." (Dk. 93, attachment). For the first time in response to this sanctions motion, the plaintiff now asserts that he intends to claim he was fraudulently induced to sign the release. The plaintiff's recent assertion has a hollow ring, as he alleges no measures taken to preserve the equitable remedy of rescission. *See Nordstrom v. Miller, 227 Kan. 59, 605 P.2d 545 (1980)*. The court finds the plaintiff to have violated *Rule 11* by bringing the individual claims against the defendant Massey for events occurring prior to October 8, 1993. In this instance, the court strongly admonishes the plaintiff to act more diligently in reviewing the facts and the relevant law in all future filings. Any further *Rule 11* violations will carry more severe sanctions, including monetary sanctions and the possible dismissal of claims with prejudice.

The defendants also seek sanctions based on the allegations found in the plaintiff's proposed second amended complaint. The court denies the motion for sanctions on this ground without prejudice to the defendants **[*26]** renewing said motion after the magistrate judge has decided the plaintiff's motion for leave to file a second amended complaint.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss designated parts of the plaintiff's first amended complaint (Dk. 24) is granted in part and denied in part;

IT IS FURTHER ORDERED that the defendants' motion to strike the plaintiff's brief and second affidavit (Dk. 49) is granted in part and denied in part;

IT IS FURTHER ORDERED that the plaintiff's motion for leave to file second supplemental response (Dk. 56) is denied;

IT IS FURTHER ORDERED that the plaintiff's motion to strike certain affidavits (Dk. 57) is denied;

1996 U.S. Dist. LEXIS 18075, *26

IT IS FURTHER ORDERED that the plaintiff's motion to strike authenticated transcript from a proceeding in *State v. Van Deelen*, NO. 94-Cr-1068 on February 21 and 22, 1995 in Douglas County District Court (Dk. 71) is granted; and

IT IS FURTHER ORDERED that the defendants' motion for sanctions (Dk. 98) is granted in part and denied in part.

Dated this 5th day of November, 1996, Topeka, Kansas.

Sam A. Crow, U.S. District Judge

# TAB C

Ⓐ Neutral

As of: July 1, 2015 3:02 PM EDT

## *Van Deelen* v. City of Kan. City

United States District Court for the District of Kansas

May 9, 2006, Decided

CIVIL ACTION No. 05-2028

**Reporter**

2006 U.S. Dist. LEXIS 30485; 2006 WL 1301000

MICHAEL D. VAN DEELEN, Plaintiff, v. CITY OF KANSAS CITY, MISSOURI, et al., Defendants.

**Prior History:** Van Deelen v. City of Kan. City, 2005 U.S. Dist. LEXIS 28014 (D. Kan., Nov. 14, 2005)

## Core Terms

motion to dismiss, personal jurisdiction, due process, retaliation, lack of personal jurisdiction, set forth, allegations, employees

**Counsel:** [*1] Michael D Van Deelen, Plaintiff, Pro se, Eudora, KS.

For City of Kansas City, Missouri, Lana Torczon, Galen Beaufort, Wayne Cauthen, Charlotte Reed, Alan Manker, Defendants: Douglas M. McMillan, Office of City Attorney -- KCMO, Kansas City, MO.

For Douglas McMillan, Defendant: Douglas M. McMillan, Office of City Attorney -- KCMO, Kansas City, MO. G. Steven Diegel, Office of City Attorney -- KCMO, Kansas City, MO.

**Judges:** Kathryn H. Vratil, United States District Judge.

**Opinion by:** Kathryn H. Vratil

## Opinion

### MEMORANDUM AND ORDER

Michael D. Van Deelen, pro se, brought suit against the City of Kansas City, Missouri ("KCMO") and several of its employees, alleging claims under *42 U.S.C. § 1983* and state law claims of negligence and fraud. First Amended Petition (Doc. # 8) filed February 9, 2005 at 8-9. On November 14, 2005, the Court sustained in part Defendants' Motion To Dismiss (Doc. # 11). The Court dismissed all claims except plaintiff's *Section 1983* claims against Lana Torczon for deprivation of due process and retaliation. See Doc. # 17. This matter comes before the Court on Defendant Lana Torczon's Motion To Dismiss (Doc. # 20) filed December 19, 2005. For reasons set forth below, the [*2] Court finds that the motion should be overruled.

### Factual Background

Plaintiff's first amended complaint may be summarized as follows:

In December of 2002, plaintiff, a Kansas resident and former employee of KCMO, filed suit in Kansas state court against KCMO and other individuals. Lana Torczon and Galen Beaufort, city attorneys for KCMO, represented KCMO and others in the matter. After Donald Jarrett and Brian Loopey testified before the KCMO Human Resources Board in 2003 that they worked for KCMO, plaintiff filed a motion to amend to add

2006 U.S. Dist. LEXIS 30485, *3

them as defendants. On September 30, 2004, Torczon appeared at a hearing on behalf of KCMO and others to oppose plaintiff's motion and the state court took the matter under advisement.

On the same day, plaintiff filed a second state court action against KCMO, Jarrett and Loopey. Plaintiff informed Torczon that "because of statute of limitation concerns and for other reasons," he was filing a "fresh" suit against them. First Amended Petition (Doc. # 8) at 3. Torczon indicated that she would not allow plaintiff to serve Jarrett and Loopey. The Sheriff's Department of Douglas County, Kansas delivered service intended for Jarrett and [*3] Loopey to Roy Greenway, who allegedly supervised them at KCMO. Greenway informed Torczon that he had received service and gave the documents to Torczon and Beaufort, who returned them to the Douglas County Sheriff. In a cover letter dated October 20, 2004, Torczon stated that Jarrett and Loopey were not and never had been KCMO employees, and that no one at KCMO was authorized to receive service on their behalf. Plaintiff did not receive a copy of the letter and Torczon informed plaintiff that she was not obligated to include him in the correspondence.

In early January of 2005, Charlotte Reed (another city attorney for KCMO) sent a letter to plaintiff's residence in Kansas which requested that plaintiff attend a meeting with Torczon and Reed on February 8, 2005 on a matter unrelated to this action.

On January 19, 2005, plaintiff filed his original Petition (Doc. # 1) in this action. Plaintiff sued KCMO, Torczon, Beaufort and Wayne Cauthen, who supervises Torczon and Beaufort. On January 27, 2005, Douglas McMillan entered his appearance as counsel for defendants.

In early February of 2005, plaintiff spoke with Reed over the telephone on a matter unrelated to

this action. Reed [*4] acknowledged that plaintiff had filed this action against KCMO and its employees. On February 8, 2005, plaintiff met with Reed and Torczon at KCMO City Hall on a matter unrelated to this action. Reed was openly hostile toward plaintiff. At the end of the meeting, Reed and Torczon ordered McMillan and Alan Manker, manager of KCMO security, to detain plaintiff. Reed, Torczon and McMillan told him that he could not be at City Hall unless security was present. McMillan and Manker transported plaintiff to the City Hall security office and continuously intimidated him both verbally and physically. Manker told plaintiff that the detention resulted from his lawsuits against KCMO and its employees. Later, as he escorted plaintiff from the building, Manker said that because of plaintiff's suits against KCMO, plaintiff could not enter a KCMO public building unless accompanied by a security guard.

On February 9, 2005, plaintiff filed his First Amended Petition (Doc. # 8) in this case. In addition to the original defendants, plaintiff joined Reed, McMillan and Manker. Plaintiff claimed that by interfering with service of process in a state court action and treating him harshly at City Hall, [*5] KCMO, Torczon, Beaufort, Reed, McMillan and Manker denied his constitutional rights of free speech, free assembly, free association, due process, equal protection and equal access to the courts, and retaliated against him for exercising those rights. Plaintiff further asserted state law claims that defendants had committed fraud and negligence by "prevent[ing] plaintiff from serving his lawsuit on Mr. Jarrett and Mr. Loopey."

On March 16, 2005, defendants filed a motion to dismiss all claims, asserting that (1) the Court lacked subject matter jurisdiction; (2) the Court lacked personal jurisdiction as to actions which occurred exclusively in Missouri; and (3) plaintiff's complaint failed to state a claim upon which relief can be granted. See Doc. # 11. The

Court sustained defendants' motion except as to plaintiff's *Section 1983* claims against Torczon for (1) deprivation of procedural due process arising out of conduct at KCMO City Hall and (2) retaliation. Torczon now asks the Court to dismiss the remaining claims against her, asserting that the Court lacks personal jurisdiction over her and, alternatively, that plaintiff has not set forth sufficient facts to state a claim under [*6] *Section 1983*.

## Rule 12(b)(2) Motion to Dismiss Standard

The standard which governs a motion to dismiss based on lack of personal jurisdiction under *Rule 12(b)(2), Fed. R. Civ. P.*, is well established. Plaintiff bears the burden of establishing personal jurisdiction over defendant. Before trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by defendants' affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in plaintiff's favor, and plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. *Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984)*, cert. denied, *471 U.S. 1010, 105 S. Ct. 1879, 85 L. Ed. 2d 171 (1985)*; see also *Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1130-31 (10th Cir. 1991)*; *Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988)*.

## Rule [*7] 12(b)(6) Motion to Dismiss Standard

A *Rule 12(b)(6), Fed. R. Civ. P.*, motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). The

Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See *Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987)*. In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. See *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*. Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*.

The Court affords a pro se plaintiff [*8] some leniency and must liberally construe the complaint. *Oltremari v. Kansas Soc. & Rehab. Servs., 871 F. Supp. 1331, 1333 (D. Kan. 1994)*. While pro se complaints are held to less stringent standards than pleadings drafted by lawyers, pro se litigants must follow the same procedural rules as other litigants. *Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980)*; *Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992)*. The Court may not assume the role of advocate for a pro se litigant. *Hall, 935 F.2d at 1110*.

## Analysis

### I. Personal Jurisdiction

Torczon argues that the Court lacks personal jurisdiction over plaintiff's claims that she violated his procedural due process rights and retaliated against him. Specifically, Torczon asserts that plaintiff complains of acts which took place at City Hall in Kansas City, Missouri, and thus there is no basis for jurisdiction over her in Kansas.

Because *Section 1983* does not authorize nationwide service of process, *McNeal v. Zobrist, 365 F. Supp.2d 1166, 1168-69 (D. Kan. 2005)*, personal jurisdiction must be established under the Kansas long-arm statute. *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C., 186 F.*

*Supp.2d 1158, 1161 (D. Kan. 2002)* [*9] (citations omitted). The Kansas long-arm statute provides in relevant part that a person submits to jurisdiction in Kansas as to any cause of action arising out of (1) "transaction of any business within this state" or (2) "commission of a tortious act within this state." *K.S.A. § 60-308(b)*.

In Kansas, courts analyze motions to dismiss for lack of personal jurisdiction with a two-step inquiry. First, the Court must determine if defendants' conduct falls within one of the provisions of the Kansas long-arm statute. *McNeal, 365 F. Supp. 2d at 1169*; see also *K.S.A. § 60-308(b)*. Second, the Court examines whether defendants had sufficient minimum contacts with the State of Kansas to satisfy the constitutional guarantee of due process. See *Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990)*. "These inquiries are for all intents and purposes the same because the Kansas long-arm statute . . . has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the *due process clause*." *Flannagan v. Bader, 905 F. Supp. 933, 936 (D. Kan. 1995)* [*10] (citing *Thompson v. Chambers, 804 F. Supp. 188, 195 (D. Kan. 1992)*). Thus, the Court proceeds directly to the constitutional issue. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Corp., 17 F.3d 1302, 1304 (10th Cir. 1994)*.

Due process requires "minimum contacts" between the nonresident defendant and the forum state. *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*. [1] These contacts must be such that defendant has purposefully availed himself of the privilege of conducting activities within the state. *Hanson v. Denckla, 357 U.S. 235, 251, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)*. Defendant must be able to

reasonably anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*. Jurisdiction in the particular case must also be reasonable so as not to offend traditional notions of fair play and substantial justice. *Heating & Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc., 935 F. Supp. 1167, 1171 (D. Kan. 1996)*; *Pehr v. Sunbeam Plastics Corp., 874 F. Supp. 317, 320 (D. Kan. 1995)*.

[*11] This Court addressed the issue of personal jurisdiction over Torczon in its earlier ruling, stating as follows:

> Plaintiff's amended complaint alleges that Torczon and Beaufort represented KCMO and its employees in a state action which plaintiff filed in Douglas County, Kansas. During that representation, Torczon allegedly telephoned plaintiff and sent letters to plaintiff, who resides in Kansas. Torczon and Beaufort also appeared in the District Court of Douglas County, Kansas, and filed pleadings with that court. Torczon and Beaufort intervened when the Douglas County Sheriff attempted to serve Jarrett and Loopey. To the extent plaintiff's claims arise out of the alleged interference with service of process in Kansas, his allegations are sufficient to make a prima facie showing that personal jurisdiction is proper over KCMO, Torczon and Beaufort. *Furthermore, KCMO and Torczon have submitted themselves to jurisdiction in Kansas as to plaintiff's Section 1983 claims regarding*

---

[1] Because subject matter jurisdiction in this case is predicated on a federal question, rather than diversity of the parties, the Court focuses its due process analysis on the *Fifth Amendment* instead of the *Fourteenth*. McNeal, 365 F. Supp.2d at 1169 n.2 (citing *Peay v. Bellsouth Med. Assistance Plan, 205 F.3d 1206, 1210 (10th Cir. 2000)*). The inquiry is the same, however, regardless of which amendment underlies the due process "minimum contacts" analysis and cases on each are interchangeable. Rainy Day Books, 186 F. Supp.2d at 1161; Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp.2d 1074, 1077 (D. Kan. 1998).

*events at KCMO City Hall, which allegedly arose out of plaintiff's Kansas suits.* [2]

Doc. # 17 at 10 (emphasis added). The Court concluded that "plaintiff has set forth a prima facie showing [*12] that personal jurisdiction is proper over KCMO, Torczon and Beaufort." Id. at 11.

In her motion to dismiss, Torczon simply states as follows:

> the acts plaintiff complains of against Torczon for procedural due process and retaliation took place at City Hall in Kansas City, Missouri. There is no basis for jurisdiction over Ms. Torczon in United States District Court in Kansas. Plaintiff's pleading fails to set forth any grounds for which this Honorable Court would have jurisdiction over events that allegedly occurred in Missouri. As such, plaintiff's pleading fails to comply with *Fed. R. Civ. P. 8(a)(1)* mandate that the pleading contain a "'short and plain statement of the ground upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it.'"

Torczon's [*13] argument ignores the Court's prior ruling that she has submitted to jurisdiction as to plaintiff's *Section 1983* claims regarding events at KCMO City Hall, which allegedly arose out of plaintiff's Kansas suits. This Court has personal jurisdiction over defendant Torczon.

## II. Motion To Dismiss For Failure To State A Claim, Rule 12(b)(6)

Torczon next argues that plaintiff has not alleged facts which support his claims that she prevented him from exercising procedural due process rights or that she retaliated against him. Torczon asserts that even if plaintiff has set forth such facts, judicial immunity bars those claims.

In ruling on the previous motion to dismiss, the Court stated that it could not find as a matter of law that Torczon's alleged conduct in "ordering the physical restraint or detention of an adverse civil litigant is within the normal role of a city defense attorney." Doc. # 17 at 16. Thus, the Court rejected Torczon's claim that she is entitled to absolute immunity in her individual capacity for claims based on conduct at KMCO City Hall. Torczon's motion to dismiss raises no new legal issues, and it therefore must be overruled.

**IT IS THEREFORE ORDERED [*14]** that Defendant Lana Torczon's Motion To Dismiss (Doc. # 20) filed December 19, 2005 be and hereby is **OVERRULED.**

Plaintiff's claims against Torczon for deprivation of procedural due process and retaliation remain for trial.

Dated this 9th day of May, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil

United States District Judge

---

[2]  Plaintiff's complaint does not allege that Beaufort participated in any way with the detention at KCMO City Hall.

# TAB D

⚠ **Caution**
As of: July 1, 2015 3:00 PM EDT

## _Van Deelen_ v. City of Kansas City

United States District Court for the Western District of Missouri, Western Division

July 24, 2006, Decided

Case No. 04-989-CV-W-GAF

**Reporter**
2006 U.S. Dist. LEXIS 50734; 2006 WL 2077640

MICHAEL D. VAN DEELEN, Plaintiff, v. CITY OF KANSAS CITY, MISSOURI, et. al., Defendants.

**Subsequent History:** Affirmed in part and modified in part by Van Deelen v. City of Kansas City, 2007 U.S. App. LEXIS 24565 (8th Cir. Mo., Oct. 19, 2007)

**Prior History:** Van Deelen v. City of Kan. City, 411 F. Supp. 2d 1105, 2006 U.S. Dist. LEXIS 6003 (W.D. Mo., 2006)

## Core Terms

district court, employees, lawsuits, termination, residency, sanctions, monetary sanction, pro se, ordinance, court finds, City's, abuses, bad faith, enjoining, witnesses, judicial process, attorney's fees, proceeded, inherent power, harassing, inherent authority, questions, imposition of sanctions, interrupted, fabricating evidence, exhibits, deter, memo, appearance, stipulate

**Counsel:** [*1]  For Michael D. Van Deelen, Plaintiff, Pro se, Eudora, KS.

For City of Kansas City, Missouri, Wayne Cauthen, John Franklin, John Thigpen, Gail Roper, Richard Razniak, Beth Lacey, Rick Brisbin, Roy Greenway, Patrick Reisenbichler, Defendants: Lana Kay Torczon, City Attorney's Office, Kansas City, MO.

For City of Kansas City, Missouri, Human Resources Board, Joseph Moreland, Defendants: Charlotte Ferns Reed, City Attorney's Office, Kansas City, MO.

**Judges:** Gary A. Fenner, JUDGE.

**Opinion by:** Gary A. Fenner

## Opinion

### ORDER

Presently pending before the Court is the imposition of sanctions, sua sponte, against the Plaintiff, Michael D. Van Deelen ("Van Deelen"). On March 2, 2006, Van Deelen was ordered to show cause as to why he should not be sanctioned for his egregious conduct throughout the course of this litigation. (Doc. # 134). On March 8, 2006, Van Deelen filed a response to the Court's order to show cause. (Doc. # 136). Having thoroughly reviewed the transcript in this case, the Court finds that pursuant to the Court's inherent authority, sanctions are warranted against Van Deelen to deter him from future abuses of the judicial process.

### I. Facts

The above-captioned [*2] case was tried from February 21, 2006 through February 28, 2006 before the Honorable Gary A. Fenner, United States District Court Judge. The question before the Court was whether the City of Kansas City's residency policy was unconstitutionally vague

and ambiguous. On March 2, 2006, this Court found that Van Deelen, who appeared before the Court pro se, had failed to prove his claim. (Doc. #134).The Court found that the City's residency policy was "clear and unambiguous'' and was "consistently applied'' throughout Van Deelen's employment with the City. Id. The Court further found that the Defendants were shielded from liability under the doctrine of official immunity because their conduct did not violate "clearly established constitutional rights of which a reasonable person would have known." Id.

Although proceeding pro se, Van Deelen demonstrated his knowledge of the Federal Rules of Civil Procedure and Evidence and the Rules of this Court. However, Van Deelen failed to comply with general rules governing proper courtroom decorum and respect for the Court and the judicial proceedings which he had initiated. Throughout the trial Van Deelen repeatedly interrupted and argued [*3] with the Judge, counsel for the City and numerous witnesses. Van Deelen presented a voluminous amount of cumulative and irrelevant evidence wasting valuable judicial resources. His flippant and disrespectful remarks impeded the efficient resolution of his constitutional claims. Additionally, and perhaps most offensive, Van Deelen fabricated evidence to support his claims.

Van Deelen began by calling Linda Wales, a former employee in the City's Information Technology Department ("ITD"), to testify. (Trial Tr. 9:8-9). Van Deelen proceed to argue with Ms. Wales about the definition of "domicile." (Trial Tr. 23:21-25:4). After Ms. Wales told Van Deelen that it "doesn't take a genius to figure out" the definition of "domicile," Van Deelen stated that they "don't need to be arguing" and he was "not trying to be argumentative" by repeatedly asking her to define "domicile." Id. Van Deelen again argued with Ms. Wales about the use of the word "move" in a document given to Van Deelen when he was hired informing him that he had to "move" within the City limits within the next nine months. (Trial Tr. 28:16-30:20).

Van Deelen then called Mary Miller, a current ITD employee, to the stand and [*4] questioned her about the critical nature of his job. (Trial Tr. 57:4-5). When Torczon challenged the relevancy of evidence that Van Deelen had a "critical job," the Court told Van Deelen that no one was disputing his assertion that he had an "important job" and that he didn't need to present any further evidence on this point. (Trial Tr. 79:23-81:25). Van Deelen proceeded to argue with the Court asserting that he was not trying to establish the importance of his position, but rather that Ms. Miller had waived the residency policy with respect to him. Id. The Court reminded Van Deelen that Ms. Miller had not testified that she had waived the residency policy with respect to him and reminded him that no one disputed that he had an important job. Id. Van Deelen responded, "I understand that, Judge. I didn't realize we were going to argue. It's just a simple document and that's fine." Id. The Court sustained the relevancy objection and Van Deelen concluded his examination of Ms. Miller. Id.

John Thigpen, the City's Human Resources Director during Van Deelen's employment, was then called to testify. (Trial Tr. 84:11-12). Counsel for the City interrupted Van Deelen's examination [*5] of Mr. Thigpen to request an exhibit number and told him to "speed it up." (Trial Tr. 93:3-11). Van Deelen asked the Court to instruct Torczon to address him through the Court rather than "helping [him] with [his] case." Id. The Court instructed Van Deelen to "present [his] case." Id. Counsel for the City again attempted to assist Van Deelen in his examination of Mr. Thigpen by informing him of the location of an exhibit he was searching for. (Trial Tr. 94:2-10). When Van Deelen complained to the Court, the Court responded, "It seems to me that's the document you are looking for." Id. To which Van Deelen retorted, "[s]he did not help me." Id.

Van Deelen proceeded to question Mr. Thigpen about City Ordinance § 2-972. Counsel for the

City offered that the City was willing to stipulate that City Ordinance § 2-972 had been codified. (Trial Tr. 140:22-143:1). The following exchange ensued:

Torczon: We will stipulate to that.

Van Deelen: Would you please address the court.

The Court: Mr. Van Deelen, I have been patient with you and I am going to try to be patient but you are doing a lot of things you really don't need to do that aren't really moving your [*6] case forward . . . If she is willing to stipulate to a particular document I would ask you do that so we don't use more time than is necessary.

Van Deelen: The problem is, Judge, you know I am not a lawyer and I would rather take pains taking time to get it right.

The Court: If I need to I will give you a time limit and I will tell you how much time you have to complete something. If you want to waste your time in the process of doing that I will let you do it, but if you want to know what I believe is important to be heard and what I think may be determinative, in this case you better listen to what I have to say. Van Deelen: I am more than happy to do that.

The Court: Apparently not. You move ahead. And we will see what it goes.

Van Deelen: I am not trying to make the court upset but at the same time to me this is highly relevant because the problem is --

The Court: It may be highly relevant to you. If I say it's not relevant, then you are not going to be able to admit it. Now if you believe I am wrong you have the right to appeal and you have the right to ask my determination of what is relevant and what is not relevant in your case be reviewed by someone else.

Van Deelen: [*7] I hope we don't get that far, Judge. Are you saying you don't think it's relevant?

The Court: I am saying if she is willing to stipulate to it, accept her stipulation and move on.

Van Deelen: What was the stipulation.

Torczon: This is codified as an ordinance.

Van Deelen: I am not talking about that. I am talking about the fact I was terminated for violating 981023. That ordinance does not contain the language.

The Court: I understand that. I totally understand that.

Van Deelen: Should we move on. Okay, sorry, Judge. I am not trying to make you mad. The last person I want to make mad is you in this courtroom today. I guess since they have agreed to stipulate to its existence I move to admit Plaintiff's 8.

Torczon: No objection.

The Court: Received.

(Trial Tr. 140:22-143:1). Exchanges like this illustrate Van Deelen's refusal to cooperate with the good faith efforts of opposing counsel and the Court to expedite the proceedings. In an effort to further prolong the proceedings and waste judicial resources, Van Deelen offered vast amounts of cumulative and irrelevant evidence. (*See* Trial Tr. 151:9-11, 152:14-20, 154:1-3; 156:2-158:11). The Court, frustrated with the [*8] pace of the proceedings, warned Van Deelen prior to taking a recess:

> You know, Mr. Van Deelen, I don't have four days to sit here for you to flounder around trying to present your case and I am telling you what I want to hear. If you don't want to give it to me then you don't want to give it to me. But I am telling you what is important in my thought process in deciding your case.

(Trial Tr. 158:12-18).

When the Court reconvened, the Judge attempted to determine under which version of the residency

policy Van Deelen was terminated. The City amended its residency policy following Van Deelen's termination, but prior to his appeal of his termination to the Human Resources Board. [1] In hearing the party's arguments on this issue, the Court observed: "I guess to some extent it would be a pretty hollow victory if you were to prevail and had a ordinance no longer in effect under the issue of damages." (Trial Tr. 161:2-4). To which Van Deelen responded, "I will take it." (Trial Tr. 161:5).

[*9]  Following this discussion with the Court, Van Deelen resumed questioning Mr. Thigpen. Rather than eliciting facts to support his arguments, Van Deelen would offer speculative arguments in support of his position as this exchange illustrates:

> Van Deelen: How would an employee know in, how would, does the human resources department ensure that all employees across the city are treated equally as far as the residency requirement if there is no documentation and if you are doing things like leaving it up to them to decide, if they even know there is a GIS department, to call them and see where they live. What kind of mechanism does the human resources have in place to make sure everybody is treated equally?
>
> Thigpen: I don't understand the question. People are treated equally because the residency applies to all employees.
>
> Van Deelen: People are treated equally when the ordinance is applied equally.
>
> The Court: Mr. Van Deelen, I know you don't like to be interrupted. Unfortunately, you are in a situation [where] my opinions about this are going to be determinative and you can't just speculate that people were treated disparately. You can't just speculate there was disparate [*10] treatment because you want to

argue people didn't understand what being a resident of Kansas City was. That's not sufficient to establish your burden here.

> Van Deelen: I am asking him how the human resources Department guaranteed they were being treated equally.
>
> The Court: He has already said as far as he is concerned the term residence was clearly understood by the employees of the city. Nobody ever had a problem with it. Nobody ever questioned him about it. I don't have to go out and conduct some survey or interview everybody and make certain that they do know and they do understand that and they are in compliance. Now if there is some evidence of some wide-spread problem or some confusion among employees and they don't take steps to correct that, that's a different story but you want to just speculate nobody knew what residence meant and Mr. Thigpen says that wasn't the case.
>
> Van Deelen: He's guessing, sir.
>
> The Court: He's speaking from what his experience was. Now you have the opportunity to prove what he says is wrong which you are not going to prove through him because he's telling you what his testimony is. You can argue with him for a long time if you want but you have [*11] already been arguing with him for a good part of the day and I haven't seen his position change.

(Trial Tr. 175:25-177:19).

Throughout the trial Van Deelen was uncooperative with the Court and opposing counsel with respect to calling witnesses. At the end of the first day of trial, Van Deelen refused to cooperate with Counsel for the City to ensure the appearance of Margaret Evans:

---

[1]  The City's residency policy was codified in City Ordinance § 2-972. The prior version of the ordinance was referred to as 981023 throughout the trial. The amended version of the ordinance was referred to as 021200.

Torczon: Margaret Evans was under subpoena and we just want to know if she needs to come back.

The Court: Are you going to need Margaret Evans tomorrow, Mr. Van Deelen?

Van Deelen: She has agreed to call me tonight. Absent the fact I have her number she has my number. If we can't get in touch she needs to be back.

Torczon: She has not agreed to call through me. If he needs her it appears to me -

Van Deelen: I am trying to answer you but I am constantly interrupted. I spoke to Mrs. Evans before she left.

The Court: Don't keep doing that. Don't put her down. Just answer my questions, okay. Answer my questions. Don't keep denigrating opposing counsel or counsel for the City, not opposing counsel but counsel for the City.

Van Deelen: I am not attempting to do that she interrupted.

The [*12] Court: You are and I am telling you don't denigrate Ms. Torczon in the responses you make.

Van Deelen: I am saying I appreciate not being interrupted.

The Court: Do you want to argue. It's late in the day and if you want to get in an argument we will do that. Otherwise you accept what I tell you and you move on. You got it. That's what I want you to do. You understand that?

Van Deelen: I understand it.

The Court: All right, you accept what I tell you and you move on. Now what is the situation with Mrs. Evans.

Van Deelen: Do we have any rules about interrupting. I just want to know if there is. I don't want to interrupt her and I don't want to interrupt you.

The Court: Yes, there is a rule[:] do not interrupt me. What is the situation with Mrs. Evans?

Van Deelen: The situation is I spoke to her and she has agreed to call me tonight.

The Court: Apparently Ms. Torczon has spoken with her and she's not inclined to call Mr. Van Deelen.

Ms. Reed: Earlier in the case before Ms. Evans was dismissed I had represented her. So I have been the city's contact person with Margaret Evans in getting her in response to the subpoena. I had several conversations with her Friday and today.  [*13]

The Court: Do we have to take half an hour.

Ms. Reed: She doesn't want to call Mr. Van Deelen.

The Court: She doesn't want --.

Ms. Reed: That is right

The Court: She doesn't want to call you. Do you need her here tomorrow or not?

Van Deelen: Yes.

The Court: Tomorrow morning, tomorrow afternoon, what?

Van Deelen: Judge I guess I would like to respond to something that is not the truth that has been told you. And if you don't want me to, fine.

The Court: I don't want you to.

Van Deelen: I need her here. I would need here [sic]. I don't know how long it is going to take. I am through with Mr. Thigpen. He's the longest witness I have.

The Court: So we say ten thirty tomorrow morning.

Van Deelen: No, I would say tomorrow afternoon because if she would call I would save that trouble if she would call.

The Court: I am not going to make her call you. They say she doesn't want to.

Van Deelen: She can call Ms. Torczon. In the absent [sic] of making it easier on herself show up tomorrow afternoon.

The Court: Have her here at one o'clock tomorrow. All right. Thank you. You are excused.

(Trial Tr. 205:11 -208:7). This exchange not only illustrates Van Deelen's unwillingness [*14] to cooperate with Counsel for the City and the Court, but also his lack of candor. Van Deelen repeatedly argued with the Judge over the most mundane issues insisting that the trial be conducted pursuant to his own personal preferences rather than the Court's orders.

Van Deelen appeared for the second day of trial with a renewed interest in arguing with the Judge over the appearance of his witnesses prompting the following exchange:

The Court: Thank you. You can all be seated. Ms. Torczon, are you ready for your cross-examination?

Van Deelen: I have one matter. I had subpoenaed Brian Loopey and he came yesterday morning and I told him to return this morning. He is not here. I have to take necessary steps --

The Court: Do you know if he is coming?

Torczon: He called me twice last night and after discussions about Margaret Evans I told him I would call him this afternoon.

Van Deelen: He's my witness and I asked him to be here this morning to be used as a witness.

The Court: He will be here if we have to wait for him we will wait for him but don't you have other witnesses you can proceed with, Mr. Van Deelen.

Van Deelen: I guess, Your Honor. The problem I have is that he's [*15] under my subpoena.

The Court: All right, do not argue with me about this. I made a decision. Do not argue with me.

Van Deelen: I am not arguing.

The Court: You are. Do not argue with me. I am not here to babysit with you. I am not here for you to nit-pick over every little detail. You will proceed in the fashion that I tell you to proceed. All right, if you have a problem you address it to me. I will decide it. Now what is the next issue?

Van Deelen: I move to have Ms. Torczon cited for contempt of court for tampering with my witness.

The Court: Your motion is denied.

(Trial Tr. 210:1-211:5). Mr. Thigpen then took the stand for his cross-examination. (Trial Tr. 211:4-7).

Following Mr. Thigpen's cross-examination, Van Deelen called Gail Roper, the Chief Information Officer/Director of ITD during Van Deelen's employment, as his next witness. (Trial Tr. 227:20). Van Deelen continued to argue with the Judge throughout his examination of Ms. Roper. (Trial Tr. 235:17-236:14; 237:17-23; 335:8-336:22). Van Deelen unduly delayed the proceedings by misplacing exhibits and then arguing with Counsel for the City about the location of the exhibits (Trial Tr. 238:12-239:18), focusing [*16] on irrelevant evidence and details (Trial Tr. 235:17-236:14; 335:8-336:22), and offering cumulative evidence (Trial Tr. 241:11-24). Additionally, Van Deelen argued with Ms. Roper (Trial Tr. 276:2-3) and misstated and misconstrued her testimony in an effort to prove his case (Trial Tr. 244:3-245:23, 257:23-258:21).

Van Deelen questioned Ms. Roper about an inter-departmental memo she purportedly signed waiving the City's residency requirement with

respect to Van Deelen. (Trial Tr. 252:14–257:9). Ms. Roper testified that her signature had been transposed to a document that she did not write. (Trial Tr. 253:10-12). Ms. Roper testified that she knows she did not write the memo because she generally does not write memos to staff members, she usually signs documents using her middle initial, the format of the memo is inconsistent with the format used in her office, and she generally uses the salutation "regards" rather than "sincerely." (Trial Tr. 254:15-255:10).

This memo was allegedly sent to Gary O'Bannon and Mary Miller. Mr. O'Bannon testified that he had not seen the memo prior to the filing of this lawsuit. (Trial Tr. 868:16-24). Ms. Miller also testified that she had not seen the [*17] memo prior to the present litigation. (Trial Tr. 870:1-871:5).

Van Deelen also questioned Ms. Roper about a letter which he authored and allegedly sent to her following his termination. (Trial Tr. 257:10-262:1). Ms. Roper testified that she did not remember receiving the letter. (Trial Tr. 257:23-260:4). The letter purportedly verifies the alleged waiver of the residency requirement with respect to Van Deelen. (Trial Tr. 261:15-20).

By the conclusion of the trial, the Court was convinced that Van Deelen had fabricated the memo Ms. Roper allegedly drafted waiving Van Deelen's compliance with the City's residency policy. The Court was also persuaded that the letter that Van Deelen drafted and allegedly sent to Ms. Roper had never been received by Ms. Roper. Accordingly, the Court concluded that the alleged waiver of the City's residency policy with respect to Van Deelen had been fabricated by Van Deelen.

Following Van Deelen's examination of Ms. Roper, Margaret Evans, a member of the Human Resources Board which reviewed Van Deelen's termination, was called to testify. (Trial Tr. 322:10). The Court repeatedly tried to get Van

Deelen to focus on the constitutional question before it [*18] rather than presenting evidence to establish that he was wrongfully terminated. This is best illustrated by two exchanges. The first occurred when Van Deelen was questioning Ms. Evans on re-direct about the ordinance that was presented to the Human Resources Board (021200) which was different from the ordinance which the parties agreed Van Deelen was fired for violating (981023):

> The Court: Mr. Van Deelen, you agreed yesterday that you were challenging 981023.
>
> Van Deelen: Yes, I did.
>
> The Court: So what relevance does this have?
>
> Van Deelen: The relevance is the defendants terminated me for violating one ordinance, they weren't even aware of it.
>
> The Court: You are not challenging, this is not a wrongful termination hearing here. You are challenging the constitutionality of 981023. That was discussed yesterday. You agreed to that. That's what we are talking about.
>
> Van Deelen: Your Honor, I think we have a difference of things and that's why I want to bring you a case or two as we go but I am challenging the policy not the order [sic] ordinance.
>
> The Court: Just because they got it wrong doesn't mean it's unconstitutional.
>
> Van Deelen: There is a difference and I will make [*19] plenty of argument as we proceed, difference of finding a policy unconstitutional.
>
> The Court: I understand the ordinance the HR Board had before them at the time they terminated you was 021200. I understand that.
>
> Van Deelen: Okay. But the only thing I was trying to do now, Mrs. Torczon introduced testimony that appeared I was agreeing to check and see if that ordinance was the proper one and that is not in fact the testimony that

was given. If she will stipulate to that I would be happy to sit down.

The Court: I don't think she will stipulate.

Torczon: She re-read the testimony so it's in the record what was said.

Van Deelen: Do you stipulate to the fact I did not say --

Torczon: No.

(Trial Tr. 335:18-21).

Despite the Court's warning regarding the introduction of irrelevant evidence, Van Deelen called Brian Loopey to the stand and began questioning him about the surveillance he performed on Van Deelen. Again, the Court instructed Van Deelen to refrain from proceeding to elicit irrelevant testimony:

The Court: Once again if they got it wrong that's a different question. I mean if you did not live in Kansas and you in fact lived in Missouri as your permanent residence [*20] and Kansas City made a mistake in terminating you that's your wrongful termination proceeding. We are here talking about the constitutionality of this ordinance and how it was applied to you. Now what they did in the course of their investigation, they concluded you were a resident of Kansas. And so that's what we are dealing with here. I do not have before me whether that question or that decision was made rightly or wrongly. That's not before me.

Van Deelen: I understand, Judge. What I am trying to show simply they have a list, they have a checklist of things to check.

The Court: It sounds like you are getting into the detail of everything this man did in the course of investigating you. If you want to talk about the policies and you want to continue your effort to show that the policies were unable to be interpreted and applied

inconsistently [sic] in relation to you, you can do that but we are not here to reconsider whether you were wrongfully terminated. And you know what, I am not going to tell you, I am just going to start telling you to move on. You better understand, okay.

Van Deelen: I do understand. I don't think you understand what I am trying to do and I am trying [*21] to do exactly what you just said.

The Court: I understand what you are trying to do.

Van Deelen: A checklist they have -- let me continue.

The Court: Move on.

(Trial Tr. 342:18-344:1).

At the conclusion of Mr. Loopey's direct testimony, Counsel for the City indicated that she did not have any questions for Mr. Loopey and the Court proceeded to excuse Mr. Loopey. (Trial Tr. 349:14-23). Van Deelen contested the Court's excusal of Mr. Loopey:

Van Deelen: I reserve the right to recall him as rebuttal.

The Court: You didn't get anything out of him just now. You tell me what you want to recall him for.

Van Deelen: I want to recall as rebuttal.

The Court: For what purpose?

Van Deelen: I won't know.

The Court: You are excused, Mr. Loopey. You are free to go and you will not be recalled.

Van Deelen: I can't recall him?

The Court: That's what I said. You won't tell me why you want to recall him.

Van Deelen: I want to recall him to rebut testimony.

The Court: I said no.

Van Deelen: Okay, as long as it's on the record.

The Court: As long as you understand what no means.

Van Deelen: I certainly do.

The Court: Good.

(Trial Tr. 349:24-350:19).

Van Deelen [*22] proceeded to call Beth Lacey as a witness. (Trial Tr. 350:22-23). During his examination of Ms. Lacey, Van Deelen continued to focus on irrelevant matters and offered cumulative evidence. (Trial Tr. 357:25-359:9; 366:25-367:2; 378:9-23). When the Court was attempting to discern the relevance of certain testimony, Van Deelen interrupted the Judge and indicated that he would not comply with the Judge's rulings:

> The Court: . . . What are you trying to establish here, about the ordinance? That's a question or no question.
>
> Van Deelen: I am trying to establish what the terms were that she applied to the residency policy while I was employed.
>
> The Court: She said her --
>
> Van Deelen: Judge, if you would let me continue. I have deposition testimony.
>
> The Court: You know what, I have been letting you continue for two days and you are making very little progress, Mr. Van Deelen.
>
> Van Deelen: Well, sorry.

(Trial Tr. 358:22-359:9). Van Deelen proceeded to argue with the Judge about the law governing his constitutional claim and the relevancy of the evidence he was offering in support of his claim. (Trial Tr. 360:13-361).

Although each witness Van Deelen had called had testified [*23] that residence means where a

person lives (Trial Tr. 360:19-23), Van Deelen attempted to misconstrue the testimony of these witnesses to convince the Court that no one understood the meaning of "residence" in the City's residency policy. (Trial Tr. 360:13-361:22). The following exchange between Van Deelen and the Judge ensued:

> Van Deelen: I am just trying to show every person in the world, Judge, applied terminology to what the residence -
>
> The Court: I bet you probably are trying to tell me how every person in the world interprets it.
>
> Van Deelen: I just have a few more witnesses. I am not sure if I am going to ask anybody else this question but to me it's highly relevant.
>
> The Court: I hope not because you have already asked it of too many people and you have gotten the same answer every time.
>
> Van Deelen: Let me ask, is that something you don't think is relevant?
>
> The Court: I don't think that the fact that people had an understanding of the legal terminology of residence is any indication that it was vague. I believe that the evidence to this point shows that there was a consistent definition of residence accepted by the city employees and HR and ITD and that they applied [*24] that definition in a consistent fashion. And definition of residence was where a person lives and there were a variety of things they looked at in making those determinations. But those people in ITD did not make that ultimate determination and it was up to the HR Board to determine if a person was in compliance or not. And if there was a general understanding of what residence meant, then it's not inconsistently applied.
>
> Van Deelen: It is certainly inconsistently applied.
>
> The Court: You argue it is. The difficulty with you, Mr. Van Deelen, is you do not accept

reason or reality. And you want to argue everything to the extreme. And that is not going to accomplish what you are seeking to accomplish in this action. And it is to some extent not productive for me to discuss these things with you because you do not accept them. And so we will proceed and you can go ahead and put your case on and continue with whatever cause it is that you are taking up in the course of this case.

Van Deelen: Part of the problem, I was not given a chance to do an opening statement and I was quite prepared to.

The Court: Okay, I am done talking to you. Go on asking the witness your questions.

Van Deelen: [*25] Thank you. I might as well just quit because my whole thing I am going to show that there is not one person, Kansas City employee, planet earth that had any idea what these words were that were being applied to their residency.

The Court: You are trying to establish that and they all say it means where a person lives and their understanding where a person lives where their home -

Van Deelen: Nobody ever told anybody that. Judge, I am not trying to make you mad. I am sorry. I already have, but I don't think I need to show that I was treated differently. I need to show -

The Court: That's up to you. We are not here arguing your case right now. If you want to continue your evidence, proceed.

Van Deelen: Thank you, Judge.

(Trial Tr. 360:23-364:7).

After Van Deelen wasted the Court's time by fishing around for relevant evidence from Ms. Lacey (Trial Tr. 368:8-369:16) and offering to quit entirely (Trial Tr. 370:3-14), a recess was taken and Roy Greenway was subsequently called

to testify (Trial Tr. 395:19). Van Deelen proceeded to solicit irrelevant testimony from Mr. Greenway (Trial Tr. 421:13-19; 428:4-5; 428:12-17; 431:21-432:8) and misconstrue his testimony (Trial Tr. 433: [*26] 13-19). At the conclusion of this portion of Mr. Greenway's testimony, Van Deelen asserted his intention to call Wayne Cauthen, City Manager for the City of Kansas City, as a witness. (Trial Tr. 449:8-458:7).

Aware of Mr. Cauthen's schedule and numerous civic responsibilities, the Court asked Van Deelen what evidence he excepted to elicit from Mr. Cauthen. Id. Van Deelen was unable to provide the Court with a coherent response, and the Court threatened Van Deelen with sanctions in the event Mr. Cauthen appeared and Van Deelen failed to elicit any relevant testimony from him. M. An aggravated exchange ensued between the Court and Van Deelen during which Van Deelen argued with the Court, accused the Court of violating his "constitutional right to call a witness," accused the Judge of "screaming" at him and becoming "red in the face," and made an oral motion for recusal. Id. During this exchange, Van Deelen baldly and absurdly asserted that Mr. Cauthen would admit that the City's residency policy was unconstitutional. Id. Van Deelen then withdrew, but subsequently reasserted, his intention to call Mr. Cauthen, recognizing that he would be subject to sanctions if he continued [*27] to waste the time of the Court and the witnesses. Id.

When the Court reconvened the following morning for the third day of trial, the Judge denied Van Deelen's written motion to recuse stating that the allegations contained therein were false. (Trial Tr. 460:1-5). The Court notified Van Deelen that his examination of Mr. Cauthen would be limited to thirty minutes and if Van Deelen had used this time productively and additional time was necessary, the Court would consider granting Van Deelen additional time to question Mr. Cauthen. (Trial Tr. 461:7-12). The Court also limited Van Deelen's direct examination of all additional

witnesses to one hour and no more time for redirect examination than was taken on cross examination because Van Deelen had consistently asked repetitive questions of many of the witnesses in an effort to establish facts that were already in evidence. (Trial Tr. 461:13-20). Not surprisingly, Van Deelen argued with the Judge about this time limitation asserting that the Judge had "changed the rules." (Trial Tr. 461:24-462:22).

Van Deelen then called Mr. Cauthen to the stand to question him about the residency policy in effect at the time of Van Deelen's termination. [*28] Mr. Cauthen testified that he did not become City Manager until after Van Deelen was terminated and his administrative review of Van Deelen's termination was conducted by one of his staff members. (Trial Tr. 463:12-465:7). Mr. Cauthen further testified that he was not involved in interpreting and applying the City's residency policy as he had delegated this duty to the City's Human Resources Manager. (Trial Tr. 466:16-25). Mr. Cauthen asserted that he was not familiar with the City's residency policy during Van Deelen's employment with the City as Mr. Cauthen was not employed by the City at that time. (Trial Tr. 467:18-468:10). Mr. Cauthen stated that he didn't know what ordinance Van Deelen was terminated for violating. (Trial Tr. 468:19-25). Ultimately, Van Deelen failed to elicit any probative testimony from Mr. Cauthen.

Following the third day of trial, Van Deelen filed a civil complaint against Judge Fenner alleging various violations of his constitutional rights. *See* Van Deelen v. Fenner, Case No. 4:06-CV-162-HFS. The next day, Van Deelen dismissed his claims against Judge Fenner. Id.

In the remaining days of the trial Van Deelen continued to mischaracterize the [*29] testimony of witnesses (Trial Tr. 516:10-18; 517:1-11; 629:16-630:6; 632:18-22), disrespect witnesses (Trial Tr. 656:4-15), and call witnesses by the wrong name (Trial Tr. 474:25-475:6; 475:25-476:2; 479:10-17). Van Deelen was

unprepared to call scheduled witnesses (Trial Tr. 482:15-483:4) and was unprepared to testify himself (Trial Tr. 791:8-20). Van Deelen continued to offer irrelevant and cumulative evidence (Trial Tr. 507:9-15; 561:1-4; 591:15-24; 592:23-593:3; 730:5-18, 731:11-25, 743:5-8), reject the authority of the Court (Trial Tr. 630:18-631:5) and argue with opposing counsel (Trial Tr. 478:4-9; 515:6-9; 634:17-23; 715:5-13). Although Van Deelen had fewer opportunities to argue with the Court as the Judge came to recognize the futility in instructing Van Deelen on the law and the evidence necessary to prove his claims, Van Deelen managed to be uncooperative when given the opportunity. (Trial Tr. 615:9-617:6; 711:16-713:16; 733:9-19).

Unfortunately, the transcript does not reflect the amount of time that was wasted while Van Deelen searched for exhibits or formulated his next question. On the final day of trial, the following exchange occurred wherein the Court censured Van [*30] Deelen for wasting its time:

> The Court: Mr. Van Deelen, if you are not ready to proceed, I am going to excuse Mr. Greenway.
>
> Van Deelen: I beg your indulgence, these exhibits constantly get shuffled.
>
> The Court: I sit and wait constantly for you to find your exhibits.
>
> Van Deelen: And the defense as well, Judge. Here is the exhibit.
>
> The Court: You have to have a response to everything, don't you, sir?
>
> Van Deelen: I can't hear you.
>
> The Court: You have to have a condescending response to everything.
>
> Van Deelen: Judge I would like to make another oral motion you recuse yourself. You are obviously bias[ed] against me in this case? [sic]
>
> The Court: Your motion is denied.

2006 U.S. Dist. LEXIS 50734, *30

Van Deelen: I will re-file. I am sorry I intimidate you. It's working both ways, believe me.

The Court: All right, if you are not ready to proceed --

Van Deelen: Mr. Greenway, would you please find a thumbnail sketch . . .

(Trial Tr. 789:4-25).

Following closing arguments, Van Deelen asked the Court for permission to make a statement unrelated to his case. (Trial Tr. 889:18-24). Van Deelen, recognizing that his conduct throughout the trial could be characterized as disrespectful and harassing, [*31] gave the following statement:

I just wanted to state, Judge, that during these proceedings you and I have been butting heads and I want to let you know none of that was meant to be disrespectful of the court. I wanted you to know that, Judge, nothing was meant to be done other than to protect my rights pursuant to this litigation. Thank you.

(Trial Tr. 889:25-890:5). Regardless of this statement to the contrary at the close of his case, the Court finds that the facts detailed above reveal that Van Deelen frequently made unnecessary, irrelevant, argumentative and condescending comments thereby demonstrating a complete lack of respect and decorum towards the Court, Counsel for the City and his own witnesses. Van Deelen exhibited a proclivity to abuse the legal process by his conduct throughout this litigation and sanctions are warranted to deter future abuses of the judicial process.

## II. Sanction

The Court finds that its inherent authority, recognized by the Supreme Court in *Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*, empowers it to impose sanctions on Van Deelen to deter him from future abuses of the judicial process. The Court finds that [*32] Van Deelen filed this lawsuit in bad faith, with the intention of harassing the City and its employees. Van Deelen's fabrication of evidence together with his disrespectful and argumentative conduct throughout the course of the trial impeded the efficient resolution of his constitutional claims. Any of such conduct, standing alone, is sufficient to warrant sanctions.

To prevent Van Deelen from engaging in such conduct in the future, the Court HEREBY IMPOSES a monetary sanction on Van Deelen in the form of attorney's fees to be paid to the City in the amount of $ 6,000. Furthermore, Van Deelen is HEREBY ENJOINED from filing future pro se litigation against the City, its agents and employees. On all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen is HEREBY ORDERED to secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action. Imposition of these sanctions is supported by Supreme Court precedent and the law of the [*33] Eighth Circuit, as set forth below.

## III. Legal Authority and Analysis

### A. Inherent Authority of the Court to Impose Sanctions for Conduct Which Abuses the Judicial Process

It is well-settled in the Eighth Circuit that a "district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power." *See Bass v. GMC, 150 F.3d 842, 851 (8th Cir. 1998); Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993)*. "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own

2006 U.S. Dist. LEXIS 50734, *33

affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers, 501 U.S. at 43 quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962).* "Because of the potency of inherent powers, '[a] court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction.'" *Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 802 (8th Cir. 2005)* [*34] *quoting Harlan v. Lewis, 982 F.2d 1255, 1262 (8th Cir. 1993) citing Chambers, 501 U.S. at 44-45.* "Over the years, the Supreme Court has found inherent power to include the ability to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate 'for conduct which abuses the judicial process.'" *Harlan, 982 F.2d at 1259 quoting Chambers, 501 U.S. at 43-45.* "[W]hereas each of the other mechanisms [outlined in the Federal Rules of Civil Procedure] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices." *Chambers, 501 U.S. at 46.*

**B. Imposition of Monetary Sanctions in the form of Attorney's Fees Pursuant to the Court's Inherent Authority**

In *Chambers,* the controlling authority on the imposition of sanctions pursuant to the inherent powers of the Court, the Supreme Court found that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" [*35] *Chambers, 501 U.S. at 45-46 quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).* "If a court

finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party . . . as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.' [2]" *See Chambers, 501 U.S. at 46* (internal citations omitted). The Supreme Court concluded:

> The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'

*Chambers, 501 U.S. at 46 quoting Hutto v. Finney, 437 U.S. 678, 689, n. 14, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978).*

 [*36]  In *Harlan v. Lewis, 982 F.2d 1255 (8th Cir. 1993),* the Eighth Circuit affirmed a district court's [3] application of its inherent powers to impose a $ 5,000 monetary sanction against an attorney who engaged in two unauthorized ex parte communications with nonparty treating physicians. The Eighth Circuit recognized that "the Supreme Court has found inherent power to include the ability to . . . assess attorneys' fees, and impose monetary or other sanctions appropriate 'for conduct which abuses the judicial process.'" *Harlan, 982 F.2d at 1259 citing Chambers, 501 U.S. at 43-45.* The Eighth Circuit rejected the attorney's argument that an explicit finding of bad faith is required prior to the imposition of any

---

[2]   The Supreme Court noted that "the bad-faith exception [to the American Rule prohibiting fee-shifting] resembles the third prong of *Rule 11*'s certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper is 'not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.'" *Chambers, 501 U.S. at 46, fn 10.* Later in this Order, the Court will discuss how the monetary sanctions imposed against Van Deelen could alternatively be imposed pursuant to *Fed. R. Civ. P. 11.*

[3]   United States District Court for the Eastern District of Arkansas, Judge Henry Woods presiding.

monetary sanction. _Harlan, 982 F.2d at 1260._ The Eighth Circuit distinguished the imposition of monetary sanctions from the assessment of attorney's fees noting that the Supreme Court stated in _Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1979)_ "that a finding of bad faith 'would have to precede any sanction under the court's inherent powers'" but that this statement was limited to the assessment [*37] of attorney's fees. _Harlan, 982 F.2d at 1260._ In _Harlan,_ the Eighth Circuit apparently limited the bad faith requirement to the assessment of attorney's fees as a sanction imposed pursuant to the court's inherent authority. [4] _Id._

In _Nielson v. Trans World Airlines, Inc., 95 F.3d 701, 702 (8th Cir. 1996),_ the Eighth Circuit affirmed a district court's [5] assessment of attorney's fees against four plaintiffs as a sanction imposed pursuant to the court's inherent power. The district court found that "the plaintiffs pursued this lawsuit in bad faith [*38] and for no purpose other than to harass and badger TWA." _Nielson, 95 F.3d at 702._ The Eighth Circuit found that a district court has the authority to assess attorney fees under its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." _Nielson, 95 F.3d at 702 quoting Dillon, 986 F.2d at 266._ The Eighth Circuit further found that the district court did not abuse its discretion "in assessing $ 20,000 in attorney fees against plaintiffs, after finding they acted in bad faith and for an improper purpose." _Nielson, 95 F.3d at 702._

This Court has the inherent authority, according to the Supreme Court's holding in _Chambers,_ to assess attorney's fees against Van Deelen in the present case. There is ample evidence in the transcript revealing Van Deelen's bad faith in filing and pursuing his constitutional claims against [*39] the City and its employees. As detailed above, Van Deelen abused the judicial process by fabricating evidence to create a genuine issue of material fact for trial. He wasted the time and efforts of numerous City employees, including the City Manager, by calling them to testify and then soliciting irrelevant and cumulative evidence from them. Furthermore, Van Deelen's propensity for arguing with the Court and counsel for the City impeded the expeditious resolution of his claims. Accordingly, the City is entitled to be compensated for a portion of the expenses it incurred as result of Van Deelen's obstinacy. As the transcript reveals Van Deelen's vexatious, wanton and oppressive conduct throughout the course of the trial, the Court will impose monetary sanctions against him in the form of attorney's fees pursuant to the Court's inherent power to police itself.

## C. Enjoining Future Pro Se Litigation Against the City and its Employees Pursuant to the Court's Inherent Authority

It is well-settled that this Court has the discretion to craft and impose sanctions to deter litigants from engaging in "conduct which abuses the judicial process." _Chambers, 501 U.S. at 43-45._ [*40] As identified above, courts have imposed a wide range of sanctions to discourage conduct which impedes the orderly and expeditious disposition of cases. As Van Deelen has demonstrated a desire to harass the City and its employees by filing frivolous lawsuits supported by fabricated evidence, the Court finds that its inherent authority to impose sanctions to deter litigants from engaging in "conduct which abuses the judicial process," includes enjoining Van Deelen from filing future pro se litigation against the City and its employees.

---

[4]   The Court further held that the "bad faith" requirement cannot be construed to extend "to every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of the inherent power." _Harlan, 982 F.2d at 1260._

[5]   United States District Court for the Western District of Missouri, Judge Dean Whipple presiding.

With respect to limiting "vexatious, frivolous or oppressive litigation" by enjoining a litigant from filing future lawsuits, one legal treatise has noted:

> Although litigiousness alone will not support an injunction restricting a plaintiff's filing activities, the courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process, regardless of whether the threatened litigation is legal or equitable in character, or whether the vexatious litigation results from the prosecution of many suits by the same individual, or from many suits by different individuals. The courts may take creative actions to discourage hyperactive [*41] litigators so long as some access to courts is allowed, such as by limiting the amount of filings a litigant may make, and prescribing conditions precedent to those filings so as to determine the propriety of a suit on a case by case basis.

*42 Am. Jur. 2d Injunctions § 191* (2005).

The Eighth Circuit Court of Appeals has held that "[o]ne may not be enjoined from protecting and enforcing his rights by lawful means, unless his acts to that effect are done or threatened unnecessarily, not really for the purpose of protecting his rights, but maliciously to vex, annoy, and injure another." *Kryptok Co. v. Stead Lens Co., 190 F. 767, 767, 771 (8th Cir. 1911)*. Nearly 80 years later, the Eighth Circuit found that litigants who have abused the judicial system may be enjoined from filing future litigation. In *In re Tyler, 839 F.2d 1290, 1292 (8th Cir. 1988)*, the Eighth Circuit recognized that there is "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious."

"Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy [*42] of the judiciary away from processing good faith claims." *Tyler, 839 F.2d at 1292*. [6] Excessive litigation imposes unnecessary burdens on, and the useless consumption of, court resources thereby increasing the public dissatisfaction and frustration with the courts. Id. Furthermore, "abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims." Id. According to the Eighth Circuit, "[d]efendants have a right to be free from harassing, abusive and meritless litigation" and the "federal courts have a clear obligation to exercise their authority to protect litigants from such behavior." Id. (internal citations omitted). The Eighth Circuit concluded that: "The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits." Id. citing *Phillips v. Carey, 638 F.2d 207, 209 (10th Cir. 1981)*. [*43] The Eighth Circuit in *Tyler* proceeded to affirm the district court's [7] sua sponte determination that the plaintiff should be limited to filing one new lawsuit per month pursuant to certain conditions precedent as a sanction for the litigant's repeated abuse of the judicial process. *Tyler, 839 F.2d at 1291*.

[*44] The Court finds that Van Deelen has filed this lawsuit against the City and its employees not for the purpose of protecting his constitutional rights, but rather maliciously to vex and annoy the City. This is best demonstrated by Van Deelen's

---

[6]  The Court relies primarily upon its inherent authority, as recognized in Chambers, in enjoining Van Deelen from filing future pro se lawsuits against the City and its employees as a sanction for his abuse of the judicial system. Tyler was decided before Chambers. Therefore, the Eighth Circuit in deciding Tyler did not rely upon the inherent authority of the district courts as outlined in Chambers. However, in Tyler the Eighth Circuit recognized the authority of a district court "to control and manage matters pending before it" and the mandate of Fed. R. Civ. P. 1 in affirming the district court's order enjoining Tyler from filing future litigation.

[7]  United States District Court for the District of Nebraska, C. Arlen Beam, Chief Judge, presiding.

remark that he would "take" a "hollow victory." (*See* Trial Tr. 161:2-6). Based on this comment it is apparent that Van Deelen was not seeking to change the City's residency policy or even to recover damages, but simply to obtain a verdict against the City. To prevent further harassment of the City and its employees by the filing of harassing, abusive and meritless litigation, the Court finds it necessary to enjoin Van Deelen from filing future pro se lawsuits against the City and its employees.

The litigation of Van Deelen's claims consumed a great deal of judicial resources as the Court considered cross-motions for summary judgment and presided over six days of trial. The trial was particularly time-consuming as the parties grossly underestimated the amount of time the trial would take, requiring the Court to re-schedule other criminal and civil matters in order to hear evidence in this case. Preventing Van Deelen from filing future pro [*45] se lawsuits against the City is necessary to preserve limited judicial resources for the processing of good faith claims.

In *L.G. Ruderer v. United States, 462 F.2d 897 (8th Cir. 1972)*, the Eighth Circuit affirmed a limitation on future litigation similar to the limitation this Court imposes on Van Deelen. The plaintiff in Ruderer had been discharged by his employer for making false, irresponsible and malicious charges against fellow employees. *Ruderer, 462 F.2d at 898*. Following a formal hearing and administrative review of the hearing transcript, the plaintiff's termination was affirmed. Id. The plaintiff filed a pro se lawsuit against his former employer, the United States Army Aviation Material Command, to recover damages for the allegedly tortious and criminal acts of certain military personnel and administrators. Id. Additionally, the plaintiff filed twenty-one actions against his fellow employees who he alleges defamed him and conspired against him to effect

his discharge. Id. The district court [8] dismissed the plaintiff's action against his employer and most of the actions against the plaintiff's fellow employees. Id. [*46] Additionally, the district court issued an injunction which barred the plaintiff from bringing further suits in the United States District Court for the Eastern District of Missouri on the plaintiff's claim that he was wrongfully discharged. Id. The Eighth Circuit affirmed the district court's order enjoining the plaintiff from filing lawsuits related to his allegedly wrongful termination and provided the following reasoning in support of its decision:

> In our view, appellant's affinity for litigation, standing alone, would not prove a sufficient reason for issuing such an injunction. We believe, however, that the district court acted properly in this case. The district court found that appellant filed the present suit in bad faith and in furtherance of a personal vendetta against the United States. The district court also found that appellant had been afforded a full opportunity to present his claims and that further suits on these claims would uselessly consume the court's time. We have thoroughly reviewed the record, and we agree with these findings. Given these findings, the district court acted properly in issuing the injunction.

*Ruderer, 462 F.2d at 899.* [*47]

In the present case, Van Deelen filed this lawsuit asserting claims arising out of his allegedly wrongful discharge against the City, its Human Resources Board and twelve City employees and agents. Like the district court in *Ruderer*, this Court finds that the pro se plaintiff in the present case, Van Deelen, filed this action in bad faith and in furtherance of a personal vendetta against the City and its employees and agents. As Van Deelen's claims proceeded to the dispositive motion and trial stage, this Court finds that Van Deelen has had a full and fair opportunity to present his claims against the City and its

---

[8] United States District Court for the Eastern District of Missouri, Judge William H. Webster presiding.

employees and that further suits would uselessly consume the Court's time. Accordingly, this Court finds it necessary to enjoin Van Deelen from filing future pro se lawsuits against the City and its employees.

The Eighth Circuit has repeatedly affirmed district court orders enjoining the filing [*48] of future litigation as a sanction for abuse of the judicial process. *See Sassower v. Carlson, 930 F.2d 583 (8th Cir. 1991)*; *Peck v. Hoff, 660 F.2d 371 (8th Cir. 1981)*; and *Green v. White*, 616 F.2d 1054 (8th Cir. 1980). More recently, in *Jackson v. Armontrout, 26 F.3d 126 (Table)* (8th Cir. 1994) (unpublished), the Eighth Circuit affirmed a district court order dismissing the plaintiff's lawsuit and limiting future in forma pauperis filings. The plaintiff in Jackson was an inmate who had filed twelve in forma pauperis lawsuits. Id. The court held that filing "multitudes of frivolous suits" is not a prerequisite to the imposition of limits on a plaintiff's right to proceed in forma pauperis. Id. Rather, a litigant's "regular refusal to obey the court's rules and orders disrupts the legal system, increases the burden on limited court resources, and justifies limiting his ability to proceed in forma pauperis." Id.

Similarly, this Order enjoining Van Deelen from filing future pro se lawsuits against the City and its employees or proceeding pro se in those currently pending, is not premised on the number [*49] of lawsuits Van Deelen has filed against the City and its employees nor is it based upon Van Deelen's history of filing pro se lawsuits. [9] Rather, the sanction is imposed in response to Van Deelen's fabrication of evidence coupled with his

abuse of the judicial process herein and his disrespectful and argumentative conduct throughout the course of the trial. Accordingly, to deter Van Deelen from litigation which is not aimed at protecting his own rights but rather aimed at maliciously vexing and annoying the City and its employees, the Court hereby enjoins Van Deelen from filing future pro se litigation against the City and its employees. Furthermore, on all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen must secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action.

## [*50] D. Monetary Sanctions pursuant to Rule 11

Additionally, the Court finds that it has the authority to impose monetary sanctions on Van Deelen pursuant to *Fed. R. Civ. P. 11* ("*Rule 11*"). *Rule 11* requires that by making a representation to the Court in the form of a "pleading, written motion, or other paper," an unrepresented party is certifying that such representation "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Fed. R. Civ. P.11(b)(1)*. *Rule 11* further provides that "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or

---

[9]  Van Deelen has a history of filing pro se litigation. Van Deelen, et al., v. Martin, Case No. 2:97-CV-2358-GTV-GLR (D. Kan.) (dismissed without prejudice); Van Deelen v. Arnold-Burger et al., Case No. 6:03-CV-1322-MLB-DWB (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 41(a)(1); Van Deelen v. McAnany, 6:03-CV-1408-MLB-KMH (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 12(b)(1); Van Deelen v. Shawnee Mission Un., et al., Case No. 2:03-CV-2018-CM (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 12(b)(6)); Van Deelen v. Fairchild, et al., Case No. 2:05-CV-2017-KHV-DJW (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 12(b)(1)); Van Deelen v. City of Kansas City, Missouri, et al., Case No. 2:05-CV-2028-KHV-JPO (D. Kan.); Van Deelen v. Johnson, et al., Case No. 2:05-CV-2052-CM-DJW (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 41(a)(1)); Van Deelen v. Johnson, et al., Case No. 5:05-CV-4039-SAC (D. Kan.); Van Deelen v. Fenner, Case No. 4:06-CV-162-HFS (W.D. Mo.) (dismissed pursuant to Fed. R. Civ. P. 41(a)(1)); Van Deelen v. City of Kansas City, Missouri, et al., Case No. 04-CV-206594 (Jackson Co., Missouri).

2006 U.S. Dist. LEXIS 50734, *50

discovery." *Fed. R. Civ. P. 11(b)(3)*. The imposition of Rule 11 sanctions rests squarely within the sound discretion of the district court. *MHC Investment Co. v. Racom Corp., 323 F.3d 620, 624 (8th Cir. 2003)*.

Van Deelen contends that sanctions are not appropriate pursuant to *Rule 11* because the infractions identified [*51] by the Court in its show cause order do not come within the ambit of *Rule 11* because *Rule 11* only reaches filed, signed papers. [10] The Court rejects Van Deelen's argument as inconsistent with the spirit of *Rule 11*. The documents which this Court finds Van Deelen fabricated, i.e., the memo containing the purported waiver of the City's residency policy allegedly signed by Gail Roper and the letter which Van Deelen authored and allegedly sent to Gail Roper following his termination, were not individually signed by Van Deelen and filed with the Court. However, these documents were attached as exhibits to Van Deelen's cross-motion for summary judgment which he signed and submitted to the Court. These exhibits were relied upon by the Court in its finding that genuine issues of material fact precluded summary judgment on the question of whether the City's residency policy was unconstitutionally vague and ambiguous. Accordingly, the Court finds that it also has the authority to impose monetary sanctions for Van Deelen's fabrication of evidence pursuant to *Rule 11*. The following Eighth Circuit cases demonstrate the propriety of the imposition of sanctions pursuant to *Rule 11* for the fabrication [*52] of evidence.

In *Pope v. Federal Express Corp., 974 F.2d 982 (8th Cir. 1992)*, the Eighth Circuit considered a monetary sanction imposed by the United States District Court for the Western District of Missouri, Judge Dean Whipple, presiding. Judge Whipple imposed Rule 11 sanctions on the plaintiff and her attorney for fabricating evidence. *Pope, 974 F.2d*

*at 983*. Expert testimony and demonstrative evidence revealed that the plaintiff had added a handwritten note with sexual overtones to a computer generated report by using a cut and paste composite of other documents. *Id.* The plaintiff's attorney had knowingly produced this manufactured document in support of her client's Title VII sexual harassment case and continued to refer to and rely on it in subsequent pleadings. [*53] *Id.* The district court imposed Rule 11 sanctions against both the plaintiff and her attorney finding that the attorney's reliance on a demonstrably false document violated *Rule 11*'s requirement that a signer make a reasonable inquiry into the validity of pleadings. *Id. at 983-84*. Consequently, Judge Whipple dismissed the plaintiff's Title VII action with prejudice and imposed attorney's fees of $ 30,000 jointly and severally upon the plaintiff and her attorney. *Id. at 984*. The district court also held the plaintiff liable for an additional $ 8,882.50 of legal fees, $ 5,000 of which constituted the cost of having a handwriting expert examine the fabricated document. *Id.*

On appeal, the Eighth Circuit began its analysis by finding that the fact specific determination of whether a document was manufactured was for the Court in connection with the potential imposition of Rule 11 sanctions. *Id.* The Eighth Circuit proceeded to find that the district court had the inherent authority to dismiss the lawsuit as a remedy for fabricating evidence. *Id.* Although the Eighth Circuit found that the district court did not abuse its discretion in awarding [*54] monetary sanctions against the plaintiff and her attorney, it remanded to the district court for reconsideration of the amount of monetary sanctions in light of recent developments in the underlying case law upon which the district court relied. *Id.*

In determining the amount of monetary sanctions, Judge Whipple had relied upon *White v. General*

---

[10]   Van Deelen makes no argument about the imposition of sanctions pursuant to the Court's inherent authority which was clearly identified as a basis for sanctions in the Court's show cause order. (*See* Doc. #134).

_Motors Corp., Inc._, 699 F.Supp. 1485 (D. Kan. 1988) in which a Kansas district court had imposed an attorney's fee award of $ 172,382.19 against the plaintiff and plaintiff's counsel pursuant to _Rule 11_. _Pope, 974 F.2d at 984_. Judge Whipple noted that _White_ had been remanded to the Kansas district court by the Tenth Circuit Court of Appeals when he issued his order imposing sanctions in _Pope_; however, no ruling had been reached on remand. _Id._ Following Judge Whipple's order and prior to Pope's appeal to the Eighth Circuit, the Kansas district court issued a ruling in _White._ On remand, the Kansas district court revised its initial award downwards to $ 50,000, and imposed liability for this award solely upon the plaintiff's attorney. _Id. at 984-85_.

The Eighth Circuit directed [*55] Judge Whipple to reconsider the amount of monetary sanctions imposed in light of the remand decision in White. _Id. at 985_. The Eighth Circuit further instructed Judge Whipple to consider "whether such a substantial monetary penalty constitutes the least severe sanction that will adequately deter the undesirable conduct." _Id._ citing _Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3rd Cir. 1988)_.

On remand, Judge Whipple noted that the $ 50,000 sanction imposed against the plaintiff's attorney in _White_ had been imposed with the Kansas district court's knowledge of the $ 30,000 sanction in _Pope_. _Pope v. Federal Express Corporation, 49 F.3d 1327, 1328 (8th Cir. 1995)_. Judge Whipple further "found that [the plaintiff's attorney] has earned and has the capacity to earn a substantial income by practicing law." _Id._ The district court concluded that the purposes of _Rule 11_ and the plaintiff's attorney's conduct warranted a $ 25,000 sanction against the attorney, individually. _Id._ The court further determined that the plaintiff had the ability to pay $ 8,882.50 in

costs and fees and retained that [*56] individual sanction against her. _Id._

On appeal, the Eighth Circuit affirmed this modification of the monetary sanction assessed against the plaintiff and her attorney. _Id._ The Eighth Circuit further identified the following factors in determining the appropriate sanction: (1) the wrongdoer's history, experience and ability; (2) the severity of the violation; (3) the degree to which malice or bad faith contributed to the violation; and (4) other factors. _Id._ citing _White v. General Motors Corp., 908 F.2d 675, 685 (10th Cir. 1990)_, cert. denied, _498 U.S. 1069, 111 S. Ct. 788, 112 L. Ed. 2d 850 (1991)_. The Eighth Circuit ultimately concluded that the district court did not abuse its discretion in assessing a $ 25,000 sanction against the plaintiff's attorney and a $ 8,882.50 sanction against the plaintiff. _Pope, 49 F.3d at 1328_.

The Court finds that this $ 6,000 monetary sanction imposed against Van Deelen is the least severe sanction that will adequately deter Van Deelen's undesirable conduct. This monetary sanction pales in comparison to the $ 50,000 sanction imposed in _White_ and is consistent with the $ 8,882.50 sanction imposed against the plaintiff [*57] in _Pope_ for substantially similar conduct. Although Van Deelen represents to the Court that he is currently unemployed, Van Deelen has the capacity, given his education and prior job experience [11], to earn an income sufficient to satisfy this monetary sanction. The Court believes that such a sanction may encourage Van Deelen to return to the workplace, rather than focusing his time and attention on filing lawsuits in bad faith with the intention of harassing the City and its employees.

Van Deelen has a history of filing pro se lawsuits and appears to be well versed in the basic tenets of

---

[11]  At trial, Van Deelen testified that he graduated from Stanford with a B.A. in economics and from Massachusetts Institute of Technology with a M.S. in management and that he had significant employment experience in the information technology field. (Trial Tr. 842:12-844:17).

the Federal Rules of Civil Procedure. His experience filing lawsuits in and appearing before the United States District Court, coupled with common [*58] sense, should have made Van Deelen aware that fabricating evidence to support his claims constitutes a grievous offense. As previously noted above, the Court finds that Van Deelen filed this lawsuit and presented the corresponding fabricated evidence in bad faith with the intention of harassing the City and its employees. Accordingly, the Court finds that it also has the authority, pursuant to *Rule 11*, to impose monetary sanctions against Van Deelen as a remedy for his fabrication of evidence.

## CONCLUSION

Throughout the course of this lawsuit, both prior to and during trial, Van Deelen exhibited a familiarity with the Federal Rules of Civil Procedure and Evidence, this Court's Rules of Trial and a knowledge of pertinent case law. In spite of the fact that Van Deelen showed an understanding of the law and the process far beyond a typical pro se litigant, he elected to use his knowledge of the system to be abusive and disruptive to the Court, witnesses at trial and opposing counsel. The record and transcript of this proceeding is insufficient to convey the delay caused by Van Deelen, and his condescending, argumentative and contemptuous attitude towards witnesses, opposing [*59] counsel and the Court.

It is apparent to the Court that while Van Deelen sought to prevail, his main objective herein was to harass and punish, by means of this litigation, those he felt had anything to do with his termination. Van Deelen's actions herein constituted an egregious abuse of process.

Accordingly, to deter future abuses of the judicial process, the Court HEREBY IMPOSES a monetary sanction on Van Deelen in the form of attorney's fees to be paid to the City in the amount of $ 6,000. Furthermore, Van Deelen is HEREBY ENJOINED from filing future pro se litigation against the City, its agents and employees. On all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen is HEREBY ORDERED to secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner, JUDGE

United States District Court

DATED: July 24, 2006

# TAB E

262 Fed. Appx. 723, *; 2007 U.S. App. LEXIS 24565, **



1 of 3 DOCUMENTS

**Michael D. Van Deelen, Appellant, v. City of Kansas City, Missouri; Wayne Cauthen; John Franklin; John Thigpen; Gail Roper; Richard Razniak, Beth Lacey; Rick Brisbin; Roy Greenway; Patrick Reisenbichler; City of Kansas City, Missouri Human Resources Board; Joseph Moreland; Margaret Evans; Lawrence Franklin; John Doe, (1-10); Jane Doe, (1-10), Appellees.**

Nos. 06-1896, 06-3058

**UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT**

*262 Fed. Appx. 723; 2007 U.S. App. LEXIS 24565*

October 5, 2007, Submitted
October 19, 2007, Filed

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by *Van Deelen v. Kan. City, 128 S. Ct. 1884, 170 L. Ed. 2d 747, 2008 U.S. LEXIS 3281 (U.S., Apr. 14, 2008)*

**PRIOR HISTORY:** [**1]
Appeals from the United States District Court for the Western District of Missouri.
*Van Deelen v. City of Kansas City, 2006 U.S. Dist. LEXIS 50734 (W.D. Mo., July 24, 2006)*
*Van Deelen v. City of Kan. City, 411 F. Supp. 2d 1105, 2006 U.S. Dist. LEXIS 6003 (W.D. Mo., 2006)*

**COUNSEL:** Michael D. Van Deelen, Plaintiff - Appellant, Pro se, Eudora, KS.

For City of Kansas City, Missouri, Wayne Cauthen, John Franklin, John Thigpen, Gail Roper, Richard Razniak, Beth Lacey, Rick Brisbin, Roy Greenway, Patrick Reisenbichler, Defendants - Appellees: Lana Kay Torczon, CITY ATTORNEY'S OFFICE, Kansas City, MO.

For City of Kansas City, Missouri Human Resources Board, Joseph Moreland, Margaret Evans, Lawrence Franklin, Defendants - Appellees: Charlotte Ferns Reed, CITY ATTORNEY'S OFFICE, Kansas City, MO.

**JUDGES:** Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

**OPINION**

[*723] PER CURIAM.

In these consolidated appeals, Michael Van Deelen appeals the district court's [1] adverse judgment in his action brought under *42 U.S.C. β 1983* for alleged constitutional violations with regard to the termination of his employment with the City of Kansas City, Missouri, for violation of its residency requirement. Following careful review, we affirm the district court's grant of judgment for defendants on all of Van Deelen's claims based on the court's well-reasoned opinions. *See 8th Cir. R. 47B.*

    1  The Honorable Gary A. Fenner, United States [**2] District Judge for the Western District of Missouri.

Van Deelen also appeals the district court's order imposing sanctions for his conduct during trial of the matter. We affirm, but we modify the sanctions order. We find that the district court did not abuse its discretion in imposing the monetary sanction of $ 6,000. *See Bass v. Gen. Motors Corp., 150 F.3d 842, 851 (8th Cir. 1998)* (standard of review of court's sanctions under inherent authority); *MHC Investment Co. v. Racom Corp., 323 F.3d 620, 624 (8th Cir. 2003)* (standard of review for sanctions under *Fed. R. Civ. P. 11*). After finding that Van Deelen had filed the lawsuit maliciously to vex and annoy the City, the court also enjoined Van Deelen [*724] from filing any future pro se litigation against the

262 Fed. Appx. 723, *; 2007 U.S. App. LEXIS 24565, **

City, or its agents and employees, and ordered him to obtain counsel within 30 days in any pending litigation against the City or its agents and employees arising out of his termination or any related matter, or to dismiss the matter. While we agree with the district court that some filing restrictions were appropriate, *see Ruderer v. United States, 462 F.2d 897, 899 (8th Cir. 1972)* (per curi-

am), we modify the injunction to apply only **[**3]** to actions filed in federal district courts within this circuit. *See Sieverding v. Colorado Bar Ass'n, 469 F.3d 1340, 1344-45 (10th Cir. 2006)* (district court erred in placing filing restrictions on federal district courts outside Tenth Circuit, state courts, and courts of appeals).

# TAB F

**ⓘ** Cited

As of: July 1, 2015 3:10 PM EDT

## _Van Deelan v. Eudora Amateur Baseball Ass'n_

United States District Court for the District of Kansas

September 22, 1993, Decided ; September 22, 1993, Filed

CIVIL ACTION No. 93-2319-EEO

**Reporter**

1993 U.S. Dist. LEXIS 13919; 1993 WL 390376

MICHAEL VAN DEELAN, Plaintiff, v. EUDORA AMATEUR BASEBALL ASSOCIATION, Defendant.

## Core Terms

Baseball, summary judgment, little league, coaching, Sanctions, nonmoving, genuine, unincorporated association, material fact, volunteers, Amateur

**Counsel:** [*1] For plaintiff: Michael Van Deelen, PRO SE, Eudora, KS.

For EUDORA AMATEUR BASEBALL ASSOCIATION, defendant: Roger W. Warren, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS.

**Judges:** O'CONNOR

**Opinion by:** EARL E. O'CONNOR

## Opinion

### MEMORANDUM AND ORDER

This matter is before the court on defendant Eudora Amateur Baseball Association's Motion to Dismiss and for Sanctions (Doc. # 5). For the reasons set forth below, the motion to dismiss will be granted and the motion for sanctions will be denied.

### Factual Background

This case arises from events surrounding plaintiff's termination as coach of a little league team in the Eudora Amateur Baseball League, on June 16, 1993. The Eudora Amateur Baseball League is conducted by the Eudora Amateur Baseball Association (the "Baseball Association"), a group of volunteers who provide coaching and other administrative functions necessary to administer a league of amateur baseball teams. The little league games were held at baseball diamonds in parks owned and maintained by the City of Eudora, Kansas. The City did not charge the little league for the use of the ball fields.

Plaintiff Michael Van Deelan was the coach of the "Eudora 3," a nine and ten-year-old [*2] boys' little league team. Defendant contends that plaintiff had a history of using profanity and of behaving irrationally while coaching. On June 15, 1993, a Eudora police officer escorted plaintiff off the little league playing field. Plaintiff was suspended from coaching the following day, June 16, 1993, by Mark Chrislip, a member of the Baseball Association Board. The President of the Board, Richard Moreno, as well the rest of the board members, affirmed the decision to suspend plaintiff from coaching.

Richard Moreno filed a sworn affidavit stating that the Baseball Association is a volunteer, non-profit association which helps provide youth baseball each summer. The Baseball Association raises money for uniforms, equipment, and umpires. Moreno declared that none of the volunteers are paid for raising money, coaching,

or running the concession stand. The Baseball Association does not file a tax return.

Defendant also submitted a "Constitution for the Eudora Little League Baseball" which was revised in 1989. Plaintiff submitted the "1993 Big 4 League Baseball Playing Rules." Neither of these documents discuss factual matters relevant to the legal status of the Baseball Association, [*3] i.e., whether the Baseball Association was incorporated, whether the members of the Baseball Association were volunteers or were paid for their involvement, whether the Association operated for a profit or as a non-profit organization.

## Discussion

### Motion to Dismiss

Dismissal of a complaint pursuant to *Rule 12(b)* is a dismissal on the pleadings unless "'matters outside the complaint are presented to and not excluded by the court . . .' in which case 'the motion shall be treated as one for summary judgment and disposed of as provided in *Rule 56* . . . .'" *Seattle-First Nat'l Bank v. Carlstedt, 800 F.2d 1008, 1011 (19th Cir. 1986)* (quoting *Fed. R. Civ. P. 12(b)*). Both the plaintiff and the defendant in the instant case have presented numerous matters outside the pleadings. Accordingly, defendant's motion will be treated as one for summary judgment.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there [*4] is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Clemmons v. Bohannon, 956 F.2d 1523, 1525 (10th Cir. 1992)* (quoting *Fed. R. Civ. P. 56(c)*).

The moving party has the burden of showing the absence of a genuine issue of material fact. An issue is "material" only when the controversy is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. This burden may also be discharged "by 'showing' -- that is, establishing for the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

Under *Rule 56(a)*, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. To withstand a motion for summary judgment, the nonmoving party is required to "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. [*5] The nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Id. at 587* (quoting *Rule 56(e)*). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson, 477 U.S. at 248*. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading." *Id., at 256*. Thus, the mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

Where the nonmoving party makes a showing of contested facts, the court must consider factual inferences tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984)*, cert. denied, *469 U.S. 1214, 84 L. Ed. 2d 334, 105 S. Ct. 1187 (1985)*.

Defendant has filed the instant motion seeking summary judgment for: 1) lack of personal jurisdiction (*Fed. R. Civ. P. 12(b)(2)*); 2)

insufficiency of service [*6] of process (*Fed. R. Civ. P. 12(b)(5)*); and 3) failure to state a claim upon which relief can be granted (*Fed. R. Civ. P. 12(b)(6)*). At the heart of all three grounds for defendant's motion is the assertion that the Baseball Association was an unincorporated, not-for-profit, and informal group of volunteers organized solely for the purpose of providing little league baseball for the children of Eudora, Kansas. In support of this contention, defendant submitted the affidavit of Richard Moreno, the President of the Baseball Association.

Plaintiff maintains that because defendant did not come forward with evidence in the form of tax filings, articles, or by-laws to prove the legal status of the Baseball Association, a genuine issue of material fact precludes summary judgment. To the contrary, Richard Moreno's affidavit was sufficient to establish that the defendant was an unincorporated association. Plaintiff cannot use the absence of evidence as a basis for controverting defendant's factual assertion that the Baseball Association was an unincorporated association. Rather, it is incumbent upon the plaintiff to present such documentation, if any exists, or other admissible evidence to [*7] withstand summary judgment. At a minimum, an affidavit controverting Moreno's factual assertions on the issue is required. Plaintiff's bare allegations that the Baseball Association was a partnership and that a factual dispute exists are insufficient.

Defendant is entitled to judgment as a matter of law because "an unincorporated association is not a legal entity and can neither sue nor be sued in the name of the association." *Frey, Inc. v. City of Wichita, 11 Kan. App. 2d 116, 117, 715 P.2d 417, 418 (1986)*; see also *Kansas Private Club Ass'n v. Londerholm, 196 Kan. 1, 3, 408 P.2d 891, 893 (1965)*. As in *Frey*, there is no statutory authority for permitting an unincorporated association to sue or be sued in the instant case. Accordingly, the court lacks personal jurisdiction over defendant,

service of process was insufficient, and plaintiff fails to state a claim upon which relief can be granted.

Having held that it is uncontroverted that the Baseball Association was an unincorporated association, the court need not reach the question of whether any action was performed under color of state [*8] law in violation of *42 U.S.C. § 1983*. Accordingly, we need not examine the legal relationship between the Baseball Association and the City of Eudora.

*Motion for Sanctions*

Defendant also requests sanctions pursuant to *Federal Rule of Civil Procedure 11*. The court finds that *Rule 11* sanctions are not appropriate in the instant case. Although defendant prevailed on its motion for summary judgment, the court believes that plaintiff made a reasonable inquiry into the law and finds that plaintiff's arguments were, to the best of plaintiff's knowledge, grounded in fact and warranted by good faith legal arguments. Defendant has failed to present evidentiary support for its assertion that plaintiff's actions were "clearly not in good faith" and were filed for the improper purposes of harassing defendant and increasing defendant's legal costs. Plaintiff's state court case presents different claims from plaintiff's *section 1983* claim in the instant case.

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss (Doc. #5) is granted.

IT IS FURTHER ORDERED that defendant's Motion for Sanctions (Doc. #5) is denied.

Dated this 22nd day of September, 1993, [*9] at Kansas City, Kansas.

EARL E. O'CONNOR, United States District Judge

# TAB G

**A** Neutral

As of: July 1, 2015 3:09 PM EDT

# *Van Deelen v. Fairchild*

United States Court of Appeals for the Tenth Circuit

August 31, 2006, Filed

No. 05-3468

**Reporter**

2006 U.S. App. LEXIS 22537; 2006 WL 2507599

MICHAEL D. VAN DEELEN, Plaintiff-Appellant, v. ROBERT FAIRCHILD; ALLEN ADRIAN; STEVEN SIX, District Judges, Douglas County, Kansas; SHERRY BERNHARDT, Defendants-Appellees.

**Notice:** [*1] RULES OF THE TENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**Prior History:** (D.C. No. 05-CV-2017-KHV). (D. Kan.).

Van Deelen v. Fairchild, 2005 U.S. Dist. LEXIS 30503 (D. Kan., Dec. 1, 2005)

**Disposition:** AFFIRMED.

## Core Terms

district court, judicial immunity, judicial act, immunity, declaratory relief, damages, lawsuit, recusal, rights, cases, declaratory

## Case Summary

### Procedural Posture

Plaintiff filed a pro se action against defendants, three district judges and an administrative assistant, alleging violations of *42 U.S.C.S. § 1983* as well as negligent supervision and defamation. The United States District Court for the District of Kansas dismissed the federal-law claims, refused to consider plaintiff's requests for declaratory relief, and declined supplemental jurisdiction over the state-law claims. Plaintiff appealed.

### Overview

Plaintiff alleged multiple violations of his constitutional rights. Reviewing de novo the dismissal based on judicial immunity, the court affirmed the district court's judgment. The judges' alleged conduct satisfied the factors for judicial immunity, both as to the nature of the acts themselves and the fact that the acts were undertaken by judges in their judicial capacity. Thus, judicial immunity foreclosed the claims, which included one judge's alleged failure to hold a hearing on the scheduled date, the recusal of another judge, and the third judge's order to a court clerk not to issue summonses on behalf of plaintiff until further order. The administrative assistant was entitled to derivative immunity because her interactions with plaintiff were as an official aide or agent of a judge and in connection with the discharge of the judge's judicial duty to assign cases. The court ruled that declaratory relief would profoundly encroach on the power of the state court to control the litigation conduct of plaintiff. Moreover, it appeared that plaintiff had effective, probably superior, remedies available in state court.

### Outcome

The court affirmed the judgment of the district court.

2006 U.S. App. LEXIS 22537, *1

## LexisNexis® Headnotes

Civil Rights Law > Protection of Rights > Immunity From Liability > Judicial & Quasi-Judicial Functions

Governments > Courts > Judges > Judicial Immunity

*HN1* Generally, a judge is immune from a suit for money damages. The immunity applies to judicial acts, but not to acts that simply happen to have been done by judges. The factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.

Civil Rights Law > Protection of Rights > Immunity From Liability > Judicial & Quasi-Judicial Functions

Governments > Courts > Judges > Judicial Immunity

*HN2* Letters written by a judge to prosecuting authorities in response to litigant's threatening reaction to judicial actions are judicial acts for purposes of judicial immunity.

Civil Rights Law > Protection of Rights > Immunity From Liability > Judicial & Quasi-Judicial Functions

Governments > Courts > Judges > Judicial Immunity

*HN3* There is little controversy in applying judicial immunity to the paradigmatic judicial acts involved in resolving disputes between parties.

Civil Rights Law > Protection of Rights > Immunity From Liability > Judicial & Quasi-Judicial Functions

Governments > Courts > Judges > Judicial Immunity

*HN4* Immunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved. This immunity includes actions by a judge's

clerks, servants, and agents when assisting in the discharge of judicial duties.

Civil Procedure > Judgments > Declaratory Judgments > General Overview

Civil Rights Law > Protection of Rights > Immunity From Liability > Judicial & Quasi-Judicial Functions

Governments > Courts > Judges > Judicial Immunity

*HN5* Judicial immunity generally does not bar declaratory relief. Nevertheless, there may be other proper grounds for denying such relief.

Civil Procedure > ... > Federal Declaratory Judgments > Discretionary Jurisdiction > Factors

*HN6* A district court should consider a number of factors when deciding whether to entertain a request for declaratory relief: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

**Counsel:** For MICHAEL D. VAN DEELEN, Plaintiff-Appellant: Michael D. Van Deelen, Eudora, KS.

For ROBERT FAIRCHILD, ALLEN ADRIAN, STEVEN SIX, District Judges, Douglas County, Kansas, SHERRY BERNHARDT, Defendants-Appellees: Stephen O. Phillips, Office of the Attorney General, State of Kansas, Topeka, KS.

**Judges:** Before HARTZ, ANDERSON, and TYMKOVICH, Circuit Judges.

**Opinion by:** Harris L Hartz

2006 U.S. App. LEXIS 22537, *1

# Opinion

## ORDER AND JUDGMENT *

[*2] Plaintiff Michael Van Deelen filed this pro se action against defendants Robert Fairchild, Adrian Allen, and Steven Six, district judges in Douglas County, Kansas, and Sherry Bernhardt, an administrative assistant to Judges Fairchild and Allen. Mr. Van Deelen brought a claim under _42 U.S.C. § 1983_ as well as state-law claims for negligent supervision and defamation. The district court granted the defendants' motion to dismiss the federal-law claims and declined supplemental jurisdiction over the state-law claims. Mr. Van Deelen appealed. We have jurisdiction under _28 U.S.C. § 1291_ and affirm.

## BACKGROUND

In 1997 Mr. Van Deelen filed a federal lawsuit claiming that Paula Martin, a Douglas County district judge who is not a party to this action, violated his civil rights while presiding over a case in which he was a plaintiff. After the parties settled the federal lawsuit, Mr. Van Deelen became a party to other lawsuits in Douglas County. His primary contention here is that in retaliation for his lawsuit against Judge Martin and this lawsuit, the defendants have engaged in conduct in connection with those other Douglas County cases [*3] designed to deprive him of his constitutional rights.

Mr. Van Deelen makes the following allegations in his Amended and Supplemental Petition (the Amended Complaint), filed on June 15, 2005. First, Judge Fairchild cancelled a case-management conference in Case No. 02C680 without cause or explanation.

Second, Mr. Van Deelen was denied his constitutional rights through a series of actions taken in Case No. 04C566. Judge Jack Murphy, who is not a party, recused himself three months after the case was filed and one week before a scheduled hearing on Mr. Van Deelen's motion for default judgment. Mr. Van Deelen was notified of the recusal only by telephone and was provided with no reason for it. After Judge Murphy recused himself, Judge Fairchild, who is the administrative judge for Douglas County, reassigned the case to Judge Six, who was newly appointed and not yet sworn in. After being informed that Judge Fairchild had said that there was no timetable for swearing in Judge Six, Mr. Van Deelen spoke with Judge Fairchild's assistant, Ms. Bernhardt, in person on January 10, 2005. She refused to give him any information about Judge Six and denied him access to the court administrator. [*4] During that conversation Judge Six happened to arrive for a meeting with Judge Fairchild. Mr. Van Deelen announced his intention to wait for Judge Six to leave and ask about his availability. Ms. Bernhardt informed him that unless he left she would call court security to arrest him or escort him from the property, and she refused to take a message for Judge Fairchild.

When Mr. Van Deelen called Ms. Bernhardt the next day, he was informed that Judges Fairchild and Six had determined not to give him any information regarding Judge Six's availability. Mr. Van Deelen then indicated that he was considering a civil-rights action against her and Judge Fairchild, and he asked Ms. Bernhardt to tell Judge Fairchild about it. The next day Judge Fairchild sent a letter to Mr. Van Deelen, saying: "Due to the conversation that took place today between you and my administrative assistant, all communication between you and the court

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See _Fed. R. App. P. 34(a)(2)_; _10th Cir. R. 34.1(G)_. The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of _10th Cir. R. 36.3_.

personnel in the Douglas County District Court should be in writing." R., Doc. 19, Ex. B.

Third, Mr. Van Deelen was denied his constitutional rights in Douglas County Case No. 05LM475. Shortly after Judge Six was sworn in on February 4, 2005, Mr. Van Deelen was named [*5] as a defendant in that case, which was assigned to Judge Six. Mr. Van Deelen filed an answer and counterclaim, but the clerk, at the direction of Judges Fairchild and Six, refused to serve the counterclaim. Judge Six then recused himself, and the case was reassigned to Judge Allen, who issued an order that the clerk "shall not issue summons [sic] at the request of Michael D. Van Deelen pending the further [order] of this court," *id.*, Doc. 19, Ex. D.

The Amended Complaint alleges that by delaying Mr. Van Deelen's lawsuits and impeding his access to the court, the defendants' conduct violated his constitutional rights of freedom of assembly, freedom of association, freedom of speech, due process, equal protection of the law, and equal access to the courts. Mr. Van Deelen also claims that Ms. Bernhardt defamed him by falsely telling Judge Fairchild that he had threatened the two of them with a civil-rights action and that Judge Fairchild was negligent in his supervision of Ms. Bernhardt. In his prayer for relief Mr. Van Deelen asks for $ 200,000 in compensatory damages, $ 500,000 in punitive damages, and declarations that the defendants' conduct violated his constitutional rights [*6] and unlawfully retaliated against him for the exercise of those rights. He does not seek injunctive relief.

The defendants filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim on which relief can be granted. They also filed a motion to stay the case pending resolution of the motion to dismiss. After the court granted the motion to stay, Mr. Van Deelen moved to file a supplemental complaint. A magistrate judge denied the motion to supplement because of the stay order. Mr. Van Deelen did not

file any objections to the magistrate judge's order. This motion is not part of the record on appeal. The district court then granted the defendants' motion to dismiss the *§ 1983* claim on *Eleventh Amendment* and judicial-immunity grounds, refused to consider Mr. Van Deelen's requests for declaratory relief, and declined supplemental jurisdiction over the state-law claims. This appeal followed.

## DISCUSSION

We need not address the district court's ruling that the defendants are state actors entitled to *Eleventh Amendment* immunity to the extent that Mr. Van Deelen seeks damages against them in their official capacities. Even construing his pro se [*7] pleadings and other papers liberally, as we must, *see Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*; *Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991)*, we are unable to find a challenge to this ruling on appeal. Accordingly, Mr. Van Deelen has waived this issue. *See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994)* (failure to raise an issue in an opening appellate brief results in waiver of that issue).

Judicial immunity requires more discussion. The district court ruled that the defendants are entitled to judicial immunity to the extent that Mr. Van Deelen seeks damages against them in their individual capacities. We review de novo the district court's dismissal on the ground of judicial immunity. *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994). HN1 "[G]enerally, a judge is immune from a suit for money damages." *Mireles v. Waco, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)* (per curiam). The immunity applies to judicial acts, but not to "acts that simply happen to have been done by judges." *Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).* [*8] "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a

function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).* "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority. . . ." *Id. at 356*.

The alleged conduct by the defendant judges satisfies both factors. In each instance, Mr. Van Deelen was dealing with the judges in their judicial capacities. As for the specific actions, "scheduling a case for hearing is part of the routine procedure in any litigated matter." *Thompson v. Duke, 882 F.2d 1180, 1184 (7th Cir. 1989)*. Thus, judicial immunity forecloses Mr. Van Deelen's claim based on Judge Fairchild's alleged failure to hold a hearing on the scheduled date. *See id. at 1184-85*. Similarly, the recusal by Judge Six was a customary judicial act and entitled to immunity, *see Barrett v. Harrington, 130 F.3d 246, 258 (6th Cir. 1997)* [*9] ("recusal is undoubtedly an act that concerns judicial decision-making"), as was Judge Fairchild's reassignment of one of Mr. Van Deelen's cases to Judge Six, *see Martinez v. Winner, 771 F.2d 424, 434 (10th Cir. 1985)* ("the assignment of cases is . . . a judicial function in the sense that it directly concerns the case-deciding process"), *judgment vacated as moot, 800 F.2d 230 (10th Cir. 1986)*. Immunity also extends to Judge Fairchild's letter admonishing Mr. Van Deelen to contact court personnel only in writing because it arose as part of a chain of events set in motion by the case reassignment and culminating in what Judge Fairchild apparently considered to be Mr. Van Deelen's threatening or inappropriate contact with Ms. Bernhardt. Efforts "to protect the integrity of the judicial decision-making process" are judicial acts. *Barrett, 130 F.3d at 259* (*HN2* letters written by judge to prosecuting authorities in response to litigant's threatening reaction to judicial actions are judicial acts). Finally, Judge Allen's order to the clerk of the Douglas County District Court not

to issue summonses on behalf of Mr. Van Deelen until further order [*10] of the court undoubtedly is a judicial act. *See Forrester, 484 U.S. at 227* (*HN3* there is little controversy in applying judicial immunity to the "paradigmatic judicial acts involved in resolving disputes between parties").

As for Ms. Bernhardt, *HN4* "[i]mmunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved," *Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir. 1981)*. This immunity includes actions by a judge's clerks, servants, and agents when assisting in the discharge of judicial duties. *See Wiggins v. N.M. State Sup. Ct. Clerk, 664 F.2d 812, 815 (10th Cir. 1981)*. Ms. Bernhardt's interactions with Mr. Van Deelen were as an official aide or agent of Judge Fairchild and in connection with the discharge of his judicial duty to assign cases. Accordingly, she is entitled to derivative judicial immunity from claims for damages against her in her individual capacity.

Mr. Van Deelen argues that "[a] judge is not entitled to immunity when he retaliates against a litigant for engaging in protected conduct." Aplt. Opening Br. [*11] at 21. He relies for support on *Barrett*. But the relevant aspect of that case concerned a judge's defamatory statements to the media, which were considered nonjudicial actions and thus not protected by judicial immunity. *See 130 F.3d at 260-61*. In contrast, a judicial act is protected even if it "was in error, was done maliciously, or was in excess of [the judge's] authority." *Stump, 435 U.S. at 356*.

Mr. Van Deelen also attempts to distinguish the case authority relied on by the district court. We need not respond, however, because we have relied on other cases.

Next, we address Mr. Van Deelen's claim for declaratory relief. *HN5* Judicial immunity generally does not bar declaratory relief. *See Schepp v. Fremont County, Wyo., 900 F.2d 1448,*

*1452 (10th Cir. 1990)*. Nevertheless, there may be other proper grounds for denying such relief. The district court exercised its discretion to refuse to consider Mr. Van Deelen's request for a declaratory judgment. See *Mhoon, 31 F.3d at 982-83* (discussing discretionary power). Our review is for abuse of discretion. *See id. at 983*.

*HN6* A district court should consider [*12] a number of factors when deciding whether to entertain a request for declaratory relief:

[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (internal quotation marks omitted). The district court concluded that because Mr. Van Deelen seeks only retrospective declaratory relief, such relief would not affect the present or future legal relations of the parties. The court also explained its decision as based on a reluctance "to intrude into the basic operations of the Douglas County Court," observing that a declaratory judgment would "undoubtedly risk creating friction between [the two courts] by scrutinizing basal day-to-day court operations," R., Doc. 41 at 13-14.

Although the [*13] declaratory relief sought by Mr. Van Deelen may not be purely retrospective, as there remains a possibility that Judge Fairchild's letter and Judge Allen's order may have some effect on Mr. Van Deelen's future ability to litigate in Douglas County District Court, we find no abuse of discretion in the district court's

decision. Declaratory relief in this action would profoundly encroach on the power of the Douglas County District Court to control the litigation conduct of Mr. Van Deelen. Moreover, it appears that Mr. Van Deelen has effective, probably superior, remedies available, such as moving in state court for relief from any limitation he perceives in Judge Fairchild's letter or Judge Allen's order, appealing to the Kansas court of appeals, or seeking a writ of mandamus from the Kansas Supreme Court, *see Alpha Med. Clinic v. Anderson, 280 Kan. 903, 128 P.3d 364, 375 (Kan. 2006)* (recognizing mandamus as possible procedural mechanism to challenge an order of a district judge if it "threatens to deny a litigant a right or privilege that exists as a matter of law and there would be no remedy by appeal").

The district court also stated that its disposition would be [*14] unchanged even if it considered Mr. Van Deelen's tendered supplemental complaint, which is not part of the record but which, according to his appellate briefs, alleged that Judge Allen had pronounced that hearings in cases in which Mr. Van Deelen is or might be a plaintiff would not be on the record. We agree. Accordingly, we need not address Mr. Van Deelen's argument that the district court erred in denying his motion to file a supplemental complaint.

Finally, Mr. Van Deelen has not challenged the district court's decision to decline supplemental jurisdiction over his state-law claims. Therefore, we do not address that decision.

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Harris L Hartz

Circuit Judge

# TAB H

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MICHAEL D. VAN DEELEN,  )
                        )
            Plaintiff,  )     **CIVIL ACTION**
                        )
v.                      )     No.  03-1408-MLB
                        )
PATRICK MCANANY,        )
                        )
            Defendant.  )
————————————————————————)

## MEMORANDUM AND ORDER

### I.  INTRODUCTION

Michael D. Van Deelen filed a complaint pursuant to 42 U.S.C. § 1983 against Patrick McAnany, who was at the time a judge in the District Court of Johnson County, Kansas, alleging that defendant violated plaintiff's "constitutional rights of equal access to the courts, due process and equal protection of the laws." (Doc. 2 at 1.)  At the time plaintiff filed his complaint, he allegedly had five cases in the Johnson County District Court, all before Judge McAnany.[1]  Plaintiff seeks a permanent injunction against defendant enjoining him from violating plaintiff's constitutional rights and from retaliating against plaintiff for the exercise of those rights.  Plaintiff also seeks a declaratory judgment that defendant violated plaintiff's constitutional rights, that defendant engaged in various acts of retaliation against plaintiff and that defendant

———————————————————

[1]  The subject matter of the cases is not described in the pleadings.  Based on the number of cases, plaintiff's pro se status and the arguments plaintiff has made in pleadings in this court, it is reasonable to infer that the cases lack merit.  Many of Judge McAnany's rulings and actions about which plaintiff complains are common and necessary in such cases.

discriminates against pro se litigants who appear before him.

Defendant responds that the court lacks subject matter jurisdiction "based upon judicial immunity for his actions as a state court judge presiding over a state court proceeding, the Rooker-Feldman doctrine, Younger abstention, and Eleventh Amendment immunity." (Doc. 4 at 4.) The case is currently before the court upon defendant's motion to dismiss (Doc. 3). For the reasons stated, defendant's motion is GRANTED.

## II.  ANALYSIS

Pursuant to 42 U.S.C. § 1983, any person who "under color of . . . [state law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." The statute was enacted to provide protections to those persons wronged by the misuse of power. While § 1983 itself creates no substantive civil rights, it does provide an avenue in federal court through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). But federal courts are courts of limited jurisdiction, available to exercise their power only when specifically authorized to do so, see Sellens v. Telephone Credit Union, 189 F.R.D. 461, 465 (D. Kan. 1999), and the court rules here that it does not have jurisdiction over plaintiff's claims.

Plaintiff's claims for prospective injunctive relief can be dismissed easily pursuant to the judicial immunity doctrine. The Supreme Court, in Pulliam v. Allen, 466 U.S. 522 (1984), concluded that "judicial immunity is not a bar to prospective injunctive

-2-

relief against a judicial officer acting in her judicial capacity."
Id. at 541-42.  But in 1996, Congress amended 42 U.S.C. § 1983 as
part of the Federal Courts Improvement Act to read:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory
> or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress, except that in any action
> brought against a judicial officer for an act or omission
> taken in such officer's judicial capacity, injunctive
> relief shall not be granted unless a declaratory decree
> was violated or declaratory relief was unavailable. For
> the purposes of this section, any Act of Congress
> applicable exclusively to the District of Columbia shall
> be considered to be a statute of the District of
> Columbia.

42 U.S.C. § 1983 (emphasis added).

Congress thus effectively overruled Pulliam, at least with
respect to whether prospective injunctive relief can be had against
a state judicial officer.  See S. Rep. No. 104-336, at 36 (1996),
reprinted in 1996 U.S.C.C.A.N. 4202, 4216 (stating that the
amendment "restores the doctrine of judicial immunity to the status
it occupied prior to the Supreme Court's decision in Pulliam").
Defendant is therefore immune from plaintiff's claims seeking
prospective injunctive relief if defendant had jurisdiction over
the subject matter before him when taking the challenged actions.
See Stump v. Sparkman, 435 U.S. 349, 356 (1978) ("A judge will not
be deprived of immunity because the action he took was in error,
was done maliciously, or was in excess of his authority; rather,
he will be subject to liability only when he has acted in the
'clear absence of all jurisdiction.'").

-3-

The scope of the judge's jurisdiction must be construed broadly. <u>Id.</u> "The 'judicial acts' for which judges enjoy immunity include all functions normally performed by a judge when the parties deal with the judge in [his] judicial capacity." <u>Bradley v. Gray</u>, 78 Fed. Appx. 84, 85 (10th Cir. 2003). The court has considered each of plaintiff's allegations and determines that they generally describe conduct normally performed in defendant's judicial capacity. In the alternative, however, and with respect to plaintiff's claims for declaratory relief, the court determines that each of plaintiff's claims is now moot.

Defendant presumably has withdrawn from all cases filed by plaintiff as of January 15, 2004, due to his appointment to the Kansas Court of Appeals.

> "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." <u>McClendon v. City of Albuquerque</u>, 100 F.3d 863, 867 (10th Cir. 1996). This requirement must exist at all stages of appellate review, and it is "not enough that the dispute was alive when the suit was filed." <u>Id.</u> Federal courts have no authority to give an opinion upon a question that is moot as a result of events that occur during the pendency of the action. <u>Church of Scientology v. United States</u>, 506 U.S. 9, 12 (1992).

<u>Suarez-Tejeda v. United States</u>, 2004 WL 68758, at *3 (10th Cir. 2004). At this point, any entry of a declaratory judgment in plaintiff's favor "would amount to nothing more than a declaration that he was wronged, and would have no effect on . . . defendant's behavior towards him." <u>Green v. Branson</u>, 108 F.3d 1296, 1300 (10th Cir. 1997). Without a live case or controversy, the court has no jurisdiction over plaintiff's claims. Defendant's motion is thus granted.

-4-

## III. CONCLUSION

Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED (Doc. 3).  In ruling, the court expresses no opinion on the applicability of the Rooker-Feldman doctrine, Younger abstention, or Eleventh Amendment immunity as bars to jurisdiction.

A motion for reconsideration is neither invited nor encouraged.  Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (D. Kan. 1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this  26th  day of January 2004, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-5-

# TAB I



Cited
As of: May 1, 2014 11:32 AM EDT

## Van Deelen v. Ramirez

United States District Court for the District of Kansas
May 1, 2001, Decided
No. 00-4067-SAC

**Reporter:** 2001 U.S. Dist. LEXIS 9925; 2001 WL 789275

MICHAEL D. VAN DEELEN, Plaintiff, Vs. ANDREW RAMIREZ and STEVENS & BRAND, L.L.P., and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOUGLAS, KANSAS, Defendants.

**Disposition:** **[*1]** Defendants' motion to dismiss (Dk. 4) granted, but the request for sanctions and for permanent injunction denied; Defendant's motion to strike the plaintiff's reply to the defendant's reply (Dk. 31); the plaintiff's motion to strike the defendant's additional reply (Dk. 35); and the plaintiff's motion to strike defendant's additional suggestions (Dk. 37) denied. Plaintiff's motion for default judgment (Dk. 38) denied; Defendant's motion for leave to file supplemental pleading (Dk. 40) granted.

---
**Core Terms**
---

amended complaint, default, color of state law, reply, law firm, constitutional right, motion to strike, state actor, telephone, similarly situated, retaliate, brake, factual allegations, pending litigation, motion to dismiss, good cause, permanent, equal protection claim, motion for default, culpable conduct, private attorney, set of facts, correspondence, conversation, contentious, conclusory, frivolous, appoint

---
**Case Summary**
---

### Procedural Posture

Plaintiff, pro se citizen, sued defendants, a lawyer who was acting as county counselor and his law firm, under *42 U.S.C.S. § 1983* for prohibiting county employees from speaking with plaintiff in violation of his *First Amendment* rights. Defendants, inter alia, moved to dismiss, for sanctions, and for a permanent injunction.

### Overview

Defendants, who served as general counsel to the county counselor, wrote to plaintiff that due to the contentious nature of their telephone communication that any further communication should be in writing. Plaintiff claimed that this prohibition on speaking with "county employees" violated his constitutional rights. Defendants contended that they were not acting under color of state law. While defendants did not hold a public office, they were performing a role expressly given to and carried out by a public official but delegated to them, and they had a relationship with a state actor that went beyond representation in just one case. Thus, the court was not persuaded that plaintiff could prove no set of facts that defendants acted under color of state law. However, plaintiff failed to allege a causal connection for making a claim of retaliation or to identify a group of similarly situated persons who were treated differently to support an equal protection claim. Finally, defendants' choice to only communicate in writing caused no loss of plaintiff's *First Amendment* rights. Sanctions were not deserved because the complaint was not patently frivolous.

### Outcome

The court granted defendants' motion to dismiss but denied their request for sanctions and a permanent injunction.

2001 U.S. Dist. LEXIS 9925, *1

| LexisNexis® Headnotes |
|---|

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

*HN1* Defendants are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN2* A court may dismiss a complaint for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6)*. Dismissal should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The purpose of *Rule 12(b)(6)* is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. All well-pleaded factual allegations in the complaint must be accepted as true, and viewed in the light most favorable to the nonmoving party. These deferential rules, however, do not allow the court to assume that a plaintiff can prove facts that it has not alleged or that the defendants have violated the laws in ways that have not been alleged. Nor is the court to accept mere conclusions characterizing pleaded facts or unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them.

Civil Procedure > Parties > Pro Se Litigants > General Overview

Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

*HN3* A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant. It is also not the court's duty to supply additional factual allegations to round out a plaintiff's complaint.

Civil Rights Law > ... > Elements > Color of State Law > General Overview

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

*HN4* To prevail in federal court under *42 U.S.C.S. § 1983*, plaintiff must show the deprivation of a federally protected right by an individual acting under color of state law. A private actor cannot be held liable under *§ 1983* unless it is shown that the private person jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State.

Civil Rights Law > ... > Elements > Color of State Law > General Overview

*HN5* Public defenders, private attorneys, and court-appointed attorneys are not state actors for *42 U.S.C.S. § 1983* purposes. Moreover, a private attorney, even if appointed and paid for by the state, is not acting under color of state law when performing his functions as defense counsel. Lawyers do not act under color of state law solely by engaging in private litigation on behalf of their clients.

Civil Rights Law > ... > Elements > Color of State Law > General Overview

*HN6* The United States Supreme Court takes a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case.

Civil Rights Law > ... > Elements > Color of State Law > General Overview

*HN7* An attorney who gives legal advice to a state actor can be sued under *42 U.S.C.S. § 1983* under the joint action test.

Civil Rights Law > General Overview

CORY RUSH

2001 U.S. Dist. LEXIS 9925, *1

Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview

*HN8* To establish a retaliation claim for the exercise of *First Amendment* rights, a plaintiff must prove (1) that he was engaged in a constitutionally protected activity; (2) that the defendants took adverse action that caused the plaintiff an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the plaintiff's protected activity.

Civil Rights Law > General Overview

Criminal Law & Procedure > ... > Probation > Revocation > General Overview

Governments > Local Governments > Employees & Officials

*HN9* Access to the courts of the United States is a constitutional right that cannot be infringed upon or burdened. A plaintiff need not successfully be prevented from filing his suit to state a claim, for such a rule would protect only those individuals who remain out of court. Nonetheless, a plaintiff must allege he suffered some prejudice. For that matter, there is no constitutional or other right of access to the courts to prosecute an action that is frivolous, malicious, or which seeks to harass.

Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

*HN10* A constitutional tort--like any tort--requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the *First Amendment*.

Constitutional Law > Equal Protection > General Overview

Constitutional Law > Equal Protection > Nature & Scope of Protection

*HN11* The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike. In order to assert a viable equal protection claim, plaintiffs must first make

a threshold showing that they were treated differently from others who were similarly situated to them. Purposeful discrimination is an essential element of an equal protection violation. Discriminatory purpose implies that a decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.

Civil Procedure > Parties > Pro Se Litigants > General Overview

Constitutional Law > Equal Protection > Nature & Scope of Protection

*HN12* Even pro se litigants must do more than make mere conclusory statements regarding constitutional claims.

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Association

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

*HN13* The *First Amendment* rights to speak, associate, and petition do not impose any affirmative obligation on the government to listen.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > ... > Relief From Judgments > Excusable Mistakes & Neglect > General Overview

Civil Procedure > ... > Relief From Judgments > Excusable Mistakes & Neglect > Excusable Neglect

*HN14* The good cause required by *Fed. R. Civ. P. 55(c)* poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under *Fed. R. Civ. P. 60(b)*.

Civil Procedure > Judgments > Pretrial Judgments > General Overview

2001 U.S. Dist. LEXIS 9925, *1

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

**HN15** The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default resulted from culpable conduct by defendant, (2) whether plaintiff would be prejudiced if the default should be set aside, and (3) whether defendant has presented a meritorious defense. These three factors do not have a "talismanic" quality that requires individual consideration of each or that precludes consideration of other factors. A court weighs these factors in light of the policy that prefers disposition of any case upon its merits and not by default judgment.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

**HN16** A good faith mistaken belief regarding procedural questions generally is not culpable conduct.

**Counsel:** MICHAEL D VANDEELEN, plaintiff, Pro se, Eudora, KS.

For ANDREW RAMIREZ, STEVENS & BRAND LLP, DOUGLAS COUNTY BOARD OF COUNTY COMMISSIONERS, defendants: Scott J. Bloch, Stevens & Brand, L.L.P., Lawrence, KS.

**Judges:** Sam A. Crow, U.S. District Senior Judge.

**Opinion by:** Sam A. Crow

| Opinion |
|---|

## MEMORANDUM AND ORDER

The case comes before the court on the defendants' motion to dismiss, for sanctions and for permanent injunction (Dk. 4); the defendants' motion to strike the plaintiff's reply to the defendants' reply (Dk. 31); the plaintiff's motion to strike the defendants' additional reply (Dk. 35); the plaintiff's motion to strike defendants' additional suggestions (Dk. 37); the

plaintiff's motion for default judgment (Dk. 38); and the defendants' motion for leave to file supplemental pleading (Dk. 40). After the filing of the defendants' motion to dismiss, the magistrate judge, acting on the defendants' motion, stayed **[\*2]** all discovery and the deadlines set out in the initial order. (Dk. 22). Less than a week later, the plaintiff filed an amended complaint. (Dk. 24). The defendants moved to strike the amended complaint but implicitly withdrew their motion and the magistrate judge later formally denied it. (Dk. 33).

## MOTION TO DISMISS (Dk. 4).

**HN1** Defendants are "not . . . required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1476 p. 558 (1990); *see, e.g. Riebe v. E-Z Serve Convenience Stores, Inc., 2000 U.S. Dist. LEXIS 15373, 2000 WL 1566516, at \*2 (S.D. Ala. Sept. 29, 2000); Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999); Tensor Group, Inc. v. Global Web Systems, Inc., 1999 U.S. Dist. LEXIS 12721, 1999 WL 617818, at \*1 (N.D. Ill. Aug. 11, 1999); Keith v. U.S. Airways, Inc., 994 F. Supp. 692, 693-94 n.1 (M.D.N.C. 1998); Holmes v. National Football League, 939 F. Supp. 517, 522 n.7 (N.D. Tex. 1996).* **[\*3]** The court will treat the pending motion to dismiss as addressed to the plaintiff's amended complaint, because it contains the same deficiencies as the original complaint.

## *RULE 12(b)(6)* STANDARDS

**HN2** A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6).* Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts

2001 U.S. Dist. LEXIS 9925, *3

in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*). "The purpose of *Rule 12(b)(6)* is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)*; *see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc., 944 F.2d 752, 753 (10th Cir. 1991)* ("Dismissal of a case pursuant to *Fed. R. Civ. P. 12(b)(6)* requires the legal determination that the plaintiff can [*4] prove no set of facts in support of his claim to entitle him to relief.") (citations omitted)). All well-pleaded factual allegations in the complaint must be accepted as true, *see Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir. 1992)*, and viewed in the light most favorable to the nonmoving party. *Thatcher Enterprises v. Cache County Corp., 902 F.2d 1472 (10th Cir. 1990)* ("Under *Rule 12(b)(6)*, dismissal is inappropriate unless plaintiff can prove no set of facts in support of his claim to entitle him to relief."). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 526, 74 L. Ed. 2d 723, 103 S. Ct. 897 (1983)* (footnote omitted). Nor is the court to "accept mere conclusions characterizing pleaded facts or 'unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them.'" *Jensen v. Reeves, 246 F.3d 681, 2001 WL 113829, [*5] at *4 (10th Cir. 2001)* (Table) (quoting *Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990)* (quotations omitted)).

In analyzing the plaintiff's complaint, the court has taken into consideration the fact that he appears pro se. "HN3 A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*. "At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.; see Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991)* ("Despite liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."). It is also not the court's duty to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997)*.

## FACTS

In his amended complaint, the plaintiff alleges that the defendants while acting [*6] under color of state law "permanently prohibited all Douglas County employees and agents from ever speaking with the plaintiff on any matter, including matters of Douglas County business that said Douglas County employees and agents routinely speak with other Douglas County residents about." (Dk. 24, P 9). He further alleges that the defendants Andrew Ramirez and Stevens & Brand, L.L.P. with the knowledge and consent of the defendant Douglas County "permanently prohibited all employees of defendant Stevens & Brand from ever accepting telephone calls from the plaintiff on any matter, including matters of Douglas County business." (Dk. 24, P 10). The plaintiff asserts these actions violate his rights to freedom of speech and equal protection of the laws and are in retaliation for exercising his right of equal access to the courts.

Attached to the plaintiff's original complaint and referenced by date in the plaintiff's amended complaint is a letter addressed to the plaintiff and written by the defendant Andrew Ramirez, as attorney for the County and the law firm of Stevens & Brand, that appears to have

CORY RUSH

precipitated this federal lawsuit. [1] The letter states in pertinent part:

[*7]   I received on today's date the First Amended Petition that you filed against the law firm of Stevens & Brand and myself. Clearly you and I disagree about the content of our various telephone conversations. Further, you have made certain representations in this legal document which I believe to be false. In light of the foregoing, and given the contentious nature of our previous telephone conversations, I believe it would be in both parties best interests to terminate any further telephone communication. Therefore, if you have anything that you wish to communicate to this office with regard to your pending litigation or any other matters, you should do so in writing. I will likewise correspond in writing to you. While this is a more cumbersome method of communication, it does, I believe, provide a complete and accurate record that no one can subsequently argue about.

In that regard, you have recently alleged that you have some correspondence that you mailed to me regarding telephonic communications. I have reviewed my file and I have never received such a letter from you. Would you kindly provide me with such document if you retained the same.

This letter is being sent [*8]   regular and certified mail to simply confirm your receipt of the same. Please note that I have directed my staff and other individuals here not to accept any further telephone calls from you.

(Dk. 1, Ex. A). The amended complaint includes an additional paragraph in which the plaintiff alleges that after filing this suit he had conversations with the Douglas County Administrator and the defendant Ramirez during which he complained about this prohibition. The amended complaint also includes the following conclusory allegation: "That the actions of the defendants described herein have excluded plaintiff from the services and protections offered to other residents of Douglas County." (Dk. 24, P 13).

## ARGUMENTS AND ANALYSIS UNDER 42 U.S.C. § 1983

### Under Color of State Law

The defendants, Andrew Ramirez and Stevens & Brand, L.L.P., contend the plaintiff is unable to allege they were acting under color of state law when they limited all of their communications with the plaintiff to written correspondence. The plaintiff responds that the Board of County Commissioners officially appointed the defendant law firm as general counsel for Douglas County,   [*9]   Kansas, and that a "county counselor" or a "county attorney" are state actors. The plaintiff alternatively argues that courts have held private attorneys to be state actors and cites in support *Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3rd Cir. 1994)*.

*HN4* To prevail in federal court under *§ 1983*, plaintiff must show the deprivation of a federally protected right by an individual acting under color of state law. *Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982)*; see *Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1237 (10th Cir. 1999)*. Private conduct, "no matter how discriminatory or wrongful," may not be redressed by a *§ 1983* claim. *American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 143 L. Ed. 2d 130, 119 S. Ct. 977 (1999)*. A private actor cannot be held liable under *§ 1983* unless it is shown that the private person "jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." *Pino v. Higgs, 75 F.3d 1461, 1465 (10th Cir. 1996)*   [*10]   (quoting *Lee v. Town of Estes Park, Colo., 820 F.2d 1112, 1114 (10th Cir. 1987)*).

*HN5* Public defenders, private attorneys, and court-appointed attorneys are not state actors for

---

[1]   The plaintiff attaches the same letter to his response opposing the motion to dismiss.

§ 1983 purposes. See generally Polk County v. Dodson, 454 U.S. 312, 319-24, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981). Moreover, a private attorney, even if appointed and paid for by the state, is not acting under color of state law when performing his functions as defense counsel. Id. "Lawyers do not act under color of state law solely by engaging in private litigation on behalf of their clients." Brown v. Chaffee, 612 F.2d 497, 501 (10th Cir. 1979); Shaffer v. Cook, 634 F.2d 1259, 1260 (10th Cir. 1980), cert. denied,451 U.S. 984, 68 L. Ed. 2d 840, 101 S. Ct. 2316 (1981); see Barnard v. Young, 720 F.2d 1188, 1189 (10th Cir. 1983).

The plaintiff asserts the defendant Ramirez and the defendant law firm hold a county office by reason of the Douglas County Commissioners having appointed them as general counsel for Douglas County, Kansas, on October 19, 1998. The plaintiff cites Attorney General opinion [*11] number 86-174 for the proposition that "county counselor should be considered a county office." The defendants reply that the County Commissioners on October 19, 1998, appointed Winton Winter, Jr. as the Douglas County Counselor and designated the defendant law firm as the general counsel. The defendants further note that the same Attorney General opinion cited by the plaintiff observes that the county counselor must be a "natural person" and that "a partnership is ineligible to hold public office." In light of these uncontested facts, the plaintiff is unable to claim or prove that either or both the defendant Andrew Ramirez and the defendant Stevens & Brand, L.L.P. hold the public office of county counselor or county attorney. The analysis for "state action" does not end here.

This case differs from the cases cited above and those cited in the defendants' memoranda. The material differences are that the defendant attorney and law firm here represent a state actor, perform a role expressly given to and typically carried out by a public official but here delegated to them, and have a relationship with the state actor that extends beyond representing it in the one state case. HN6 The [*12] Supreme "Court has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). The defendants do not address these different tests or make any effort to apply the tests to the facts here. HN7 Courts have held that an attorney who gives legal advice to a state actor can be sued under § 1983 under the joint action test. Bray By Bray v. Hobart City School Corp., 818 F. Supp. 1226, 1237 (N.D. Ind. 1993) (citing see Donovan v. Reinbold, 433 F.2d 738, 743-44 (9th Cir. 1970); Smith v. Montgomery County, 573 F. Supp. 604, 609 (D. Md. 1983); Gilbert v. School District, 485 F. Supp. 505, 509 (D. Colo. 1980)); see Cordova v. Vaughn Mun. School Dist. Bd. of Educ., 3 F. Supp. 2d 1216, 1221 (D.N.M. 1998) ("His actions as retained counsel are actions that can fairly be attributed to the school board, and therefore constitute state action."); Berridge v. Heiser, 993 F. Supp. 1136, 1143 (S.D. Ohio 1997) (Actions taken by "Special Counsel for the Attorney General" [*13] are under color of state law); cf. West v. Atkins, 487 U.S. 42, 52, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988) (A physician acts under color of state law in treating an inmate when the physician is under contract with the State to provide medical services to inmates, and "defendants are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment."). Considering these authorities and the plaintiff's allegations, the court is not persuaded beyond doubt that the plaintiff can prove no set of facts in support of his allegation that the defendants Ramirez and Stevens & Brand L.L.P. acted under color of state law.

Deprivation of a Constitutional Right

The plaintiff asserts the defendants' restriction to written communications violated his constitutional rights to freedom of speech, equal protection, and equal access to the courts. The defendants argue the plaintiff has not been denied any constitutional right. No one has curtailed his right to speech, as his right does not

2001 U.S. Dist. LEXIS 9925, *13

require others to speak to him. As far as equal protection, the plaintiff "has been treated no differently from [*14] any other person who files frivolous law suits against the county and their attorneys." (Dk. 5, p. 9). The defendants further contend:

Michael Van Deelen is not just some member of the public seeking access to the County. He is a professional litigant, suing the county and the attorneys representing them to try to cow them into submission. He gives up his so called "rights" to communicate like a normal person when he brings these frivolous law suits.

(Dk. 5, p. 10). Finally, the defendants argue the plaintiff is unable to allege any facts that the County actually imposed any restriction on the plaintiff's communication with its staff. The plaintiff's allegations refer only to Ramirez's letter and to the plaintiff's interaction with Ramirez's law firm and fail to specify that the County or its employees actually denied the plaintiff any services or procedures.

The plaintiff responds that he has a constitutional right of equal access to courts and to be free from retaliation for exercising that right. The plaintiff asserts he "has essentially been cut off from all Douglas County services and procedures available to all other residents of Douglas County." (Dk. 13, P 4).  [*15] The plaintiff argues the defendants have deprived him of equal access to courts by not allowing him to speak with the attorneys representing the County. Finally, the plaintiff argues the loss of free speech rights because he "has been prohibited from speaking to any and all Douglas County employees on any issue at any time." (Dk. 13, P 5).

*First Amendment* Retaliation

*HN8* To establish a retaliation claim for the exercise of *First Amendment* rights, a plaintiff must prove (1) that he was engaged in a constitutionally protected activity; (2) that the defendants took adverse action that caused the plaintiff "an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to" the plaintiff's protected activity. *See Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998).*

"*HN9* Access to the courts of the United States is a constitutional right" that "cannot be infringed upon or burdened." *Silver v. Cormier, 529 F.2d 161, 163 (10th Cir. 1976)* (a public official's threat "to withhold monies due and owing," though not actually effective, "burdens  [*16]  or chills" a citizen's constitutional right of access to the courts); *see, e.g., McKay v. Hammock, 730 F.2d 1367, 1375 (10th Cir. 1984)* (law enforcement officers threatened to have plaintiff's probation revoked if he filed a civil rights action); *Shaw v. Neece, 727 F.2d 947* (10th Cir.) (city employees' failure to sign statements prepared by the plaintiff's investigator did not impede the plaintiff in bringing his product liability action), *cert. denied, 466 U.S. 976, 80 L. Ed. 2d 830, 104 S. Ct. 2358 (1984)*. ""[A] plaintiff need not successfully be prevented from filing his suit to state a claim," for such a rule would protect "'only those individuals who remain out of court.'" *McKay, 730 F.2d at 1375* (citations omitted). Nonetheless, a plaintiff must allege he suffered some prejudice. *Sterling v. Wood, 68 F.3d 1124, 1126 (8th Cir. 1995).* For that matter, there is "no constitutional or other right of access to the courts to prosecute an action that is frivolous, malicious, or which seeks to harass." *Phillips v. Carey, 638 F.2d 207, 209* (10th Cir.), *cert. denied, 450 U.S. 985, 67 L. Ed. 2d 821, 101 S. Ct. 1524 (1981)*; [*17] *see Sterling v. Wood, 68 F.3d at 1126.*

The plaintiff has not alleged an actionable claim of retaliation. Other than the letter written by the attorney Ramirez, the plaintiff does not allege any "specific facts showing retaliation because of" his exercise of constitutional rights. *See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).* The complaint is devoid of any facts to support the conclusory allegations that all Douglas County employees were "permanently

2001 U.S. Dist. LEXIS 9925, *17

prohibited" from speaking with him on even routine matters of County business and that he has been excluded "from the services and protections offered to other residents of Douglas County." There is no specific allegation that a particular person associated with or employed by Douglas County has refused to speak with the plaintiff about routine County business or that he has been denied any particular service or protection otherwise afforded County residents as a result of this exercise of his *First Amendment* rights.

The letter written by the defendant Ramirez does not threaten a permanent prohibition on speaking about routine matters with County employees. Nor does it threaten [*18] any effort to exclude the plaintiff from the services and protections offered by the County. The letter is plainly written in regards to specific litigation, to contentious telephone conversations conducted as part of that litigation, and to the plaintiff's recent lawsuits against the attorney and law firm that he filed as a result of those very conversations and the correspondence written about them. "In light of" these prior contentious communications, the letter proposes only the termination of "telephone communications" between the "parties" in those pending cases. The letter directs the plaintiff to put in writing any further communications with the law firm's "office" as to "pending litigation or any other matters." The letter further explains that the attorney also will correspond and that "while this is a more cumbersome method of communication, it does, I believe, provide a complete and accurate record that no one can subsequently argue about." Simply put, the letter plainly focuses on the contentious communications that have occurred between counsel and the plaintiff and on establishing a means of communication that would reduce the chances for future contentiousness and [*19] lawsuits. No matter how expansively or creatively the plaintiff chooses to read this letter, a person of ordinary firmness would not be chilled from filing or pursuing litigation as a result of this letter. For that matter, "HN10 a

constitutional tort--like any tort--requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the *First Amendment.*" *Mattox v. City of Forest Park, 183 F.3d 515, 521 (6th Cir. 1999)* (citation omitted).

Equal Protection

"HN11 The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike . . . . In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Campbell v. Buckley, 203 F.3d 738, 747* (10th Cir.) (footnotes, quotations, and ellipses omitted), *cert. denied, 121 S. Ct. 68 (2000).* "Purposeful discrimination is an essential element of an equal protection violation." *Lewis v. City of Fort Collins, 903 F.2d 752, 755 n. 1 (10th Cir. 1990).* "'Discriminatory purpose'" implies [*20] that a decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279, 60 L. Ed. 2d 870, 99 S. Ct. 2282 (1979).*

The plaintiff has not alleged an actionable equal protection claim. The plaintiff compares himself to any other resident of Douglas County, and he makes no effort to otherwise identify that group of citizens similarly situated to him. The plaintiff does not assert that he has been treated differently from others similarly situated, *i.e.*, those who file subsequent lawsuits against the attorneys representing the County in pending litigation as a result of communications made during the pending litigation. "The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action; there, Plaintiff's equal protection claim . . . [is] properly dismissed." *Hennigh v. City of Shawnee, 155 F.3d 1249, 1257 (10th Cir. 1998)* (citations omitted). The plaintiff's "HN12 allegations are merely

conclusory in that **[\*21]** they do not allege the factual basis for an equal protection claim, and even pro se litigants must do more than make mere conclusory statements regarding constitutional claims." *Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995)*.

Freedom of Speech

The plaintiff's complaint fails to allege how his speech or expressive conduct has been restricted. That the defendant attorney and the defendant law firm choose to communicate with the plaintiff about pending litigation only in writing causes him no loss of *First Amendment* speech rights. In effect, the defendants have chosen not to listen to the plaintiff when he chooses to talk about pending litigation. *HN13* The *First Amendment* rights to speak, associate and petition do "not impose any affirmative obligation on the government to listen." *Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465, 60 L. Ed. 2d 360, 99 S. Ct. 1826 (1979)*; see *Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285, 79 L. Ed. 2d 299, 104 S. Ct. 1058 (1984)*. The plaintiff's complaint does not state a *First Amendment* claim.

*SANCTIONS AND INJUNCTION*

Though the plaintiff's **[\*22]** amended complaint fails to state a claim upon which relief can be granted, it is not patently frivolous and deserving of sanctions. The court denies the defendants' request for these sanctions without prejudice to the renewal of this request in the event that additional pleadings are filed in this action.

**DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S REPLY TO THE DEFENDANTS' REPLY (Dk. 31); THE PLAINTIFF'S MOTION TO STRIKE THE DEFENDANTS' ADDITIONAL REPLY (Dk. 35); AND PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ADDITIONAL SUGGESTIONS (Dk. 37).**

The court denies these motions. The first motion seeks to strike a document that was never filed.

The latter two motions seek to strike documents that properly address subsequent developments in related litigation and subsequent conduct by the plaintiff, both of which are relevant to the defendants' request for sanctions.

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Dk. 38).**

The plaintiff asks for default judgment based on the defendants' failure to respond to his first amended complaint. The record reflects that the defendants did not file a new motion to dismiss or otherwise respond to the plaintiff's amended complaint. **[\*23]** Rather, as the defendants have explained, they relied on their pending motion to dismiss and on the magistrate judge's order staying the case. Because the plaintiff's first amended complaint added only factual allegations and no claims, the defendants believed that their pending motion to dismiss addressed all of the claims and that the plaintiff's new factual allegations changed nothing. In reliance on the stay order, the defendants did not make any response to the first amended complaint.

The plaintiff's motion for default judgment does not comply with the procedure outlined in *Fed. R. Civ. P. 55*. If the plaintiff had first obtained a clerk's entry of default, the court would be addressing whether the defendants have shown good cause for setting aside the entry of default. *HN14* The good cause required by *Rule 55(c)* poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under *Rule 60(b)*. See *Dennis Garber & Associates, Inc. v. Pack-Tech Intern. Corp., 115 F.3d 767, 775 n. 6 (10th Cir.1997)*. "*HN15* The principal factors in determining whether a defendant has met the good cause standard are (1) whether the **[\*24]** default resulted from culpable conduct by defendant, (2) whether plaintiff would be prejudiced if the default should be set aside, and (3) whether defendant has presented a meritorious defense. *Fink v. Swisshelm, 185 F.R.D. 353, 355 (D. Kan. 1999)* (citing *Hunt v.*

2001 U.S. Dist. LEXIS 9925, *24

*Ford Motor Co., 65 F.3d 178, 1995 WL 523646,* at *3 (10th Cir.1995) (Table); *Matter of Dierschke, 975 F.2d 181, 183 (5th Cir. 1992).* These three factors do not have a "talismanic" quality that requires individual consideration of each or that precludes consideration of other factors. *Id.* A court weighs these factors in light of the policy that prefers disposition of any case upon its merits and not by default judgment. *Urban v. Beamers Garage Restaurant and Lounge Co., Inc., 1995 U.S. Dist. LEXIS 12950,* No. 95-2030- *JWL, 1995 WL 522899,* at *1 (D. Kan. Aug. 4, 1995).

*HN16* A good faith mistaken belief regarding procedural questions generally is not culpable conduct. *See Fink v. Swisshelm, 185 F.R.D. at 357.* The defendants' erroneous reliance on their pending motion to dismiss and the magistrate judge's order staying the case is not culpable conduct. There is no prejudice **[*25]** to the plaintiff from the defendants' delay in responding to his amended complaint. The plaintiff waited well over six months before making any formal attempt to obtain default judgment. Both sides appear to have assumed that the case had been fully submitted to the court on the defendants' motion to dismiss and that all further activity had been stayed pending the court's ruling on this motion. That the court intends to grant the defendants' motion to dismiss shows a meritorious defense. The court finds "good cause" to exist here for setting aside

any default that could have been entered upon a proper motion from the plaintiff. The court denies the plaintiff's motion for default judgment.

## DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING (Dk. 40).

The court grants this motion.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Dk. 4) is granted, but the request for sanctions and for permanent injunction is denied;

IT IS FURTHER ORDERED that the defendant's motion to strike the plaintiff's reply to the defendant's reply (Dk. 31); the plaintiff's motion to strike the defendant's additional reply (Dk. 35); and the plaintiff's motion to strike **[*26]** defendant's additional suggestions (Dk. 37) are denied.

IT IS FURTHER ORDERED that the plaintiff's motion for default judgment (Dk. 38) is denied;

IT IS FURTHER ORDERED that the defendant's motion for leave to file supplemental pleading (Dk. 40) is granted.

Dated this 1st day of May, 2001, Topeka, Kansas.

Sam A. Crow, U.S. District Senior Judge

# TAB J



Positive
As of: May 1, 2014 12:14 PM EDT

## Van Deelen v. Shawnee Mission Unified Sch. Dist. #512

United States District Court for the District of Kansas
February 18, 2004, Decided
CIVIL ACTION No. 03-2018-CM

**Reporter:** 316 F. Supp. 2d 1052; 2004 U.S. Dist. LEXIS 7863

MICHAEL D. VAN DEELEN, Plaintiff, v. SHAWNEE MISSION UNIFIED SCHOOL DISTRICT # 512, KARL KRAWITZ, and KEITH BURGAT, Defendants.

**Subsequent History:** Motion granted by, Motion denied by *Van Deelen v. Shawnee Mission Unified Sch. Dist. # 512, 2004 U.S. Dist. LEXIS 20244 (D. Kan., June 16, 2004)*

**Prior History:** *Van Deelen v. Shawnee Mission Sch. Dist. # 512, 2003 U.S. Dist. LEXIS 21528 (D. Kan., Nov. 24, 2003)*

**Disposition:** [**1] Defendants' Motions to Dismiss granted. Plaintiff's Motion for Continuance, Motion to Strike, and Motion to Amend Complaint denied. Parties' Motions to Review and Objections to Magistrate Judge's Order denied. State law claims dismissed without prejudice.

---

**Core Terms**

---

qualified immunity, school district, lawsuit, motion to dismiss, right of petition, matter of public concern, constitutional violation, constitutional right, constitutionally protected, individual defendant, amended complaint, school property, retaliate, plaintiff's claim, wrestling, mission, failure to state a claim, public employment, motion to strike, public concern, grievance, municipal, suspend, defame

---

**Case Summary**

---

**Procedural Posture**

Plaintiff father sued defendant school principal, associate principal, and school district, alleging violations of the *First* and Fourteenth Amendments after his son was suspended from school and he was banned from school property. The principal, associate principal, and school district moved to dismiss the complaint. The father moved for a continuance and to strike a portion of the dismissal motions. The parties objected to a magistrate's order.

**Overview**

The claims related to the son's suspension and removal from the wrestling team were dismissed as the son was not a named plaintiff. Thus, the case turned on whether the father suffered any deprivation of a constitutional right possessed by him individually. The father's banishment from school property was insufficient to state a claim as he had no constitutional right to enter school property. The allegation that the father was defamed and colored in a false light was also insufficient as he failed to identify any constitutional liberty or property interest of which he was deprived as a result of the alleged conduct. As to the claim that the father was retaliated against for filing other lawsuits against the school officials and district, the father failed to show that he was engaged in a constitutionally protected activity under the Petition Clause as his lawsuits did not touch upon a matter of public concern. Rather, the substance of the lawsuits was aimed at achieving only redress for his private grievances. Thus, the principal and associate principal were entitled to qualified immunity. The school district was not liable as there had been no constitutional violation.

316 F. Supp. 2d 1052, *1052; 2004 U.S. Dist. LEXIS 7863, **1

## Outcome

The motion and amended motion to dismiss the complaint were granted. The motions for a continuance, to strike, and for review of the magistrate's order were denied.

---

**LexisNexis® Headnotes**

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to State Claims

***HN1*** The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief or when an issue of law is dispositive. The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations and all reasonable inferences from those facts are viewed in favor of the plaintiff. The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

***HN2*** Under certain circumstances, the affirmative defense of qualified immunity shields public officials from individual liability in actions brought under *42 U.S.C.S. § 1983*. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

***HN3*** Once a defendant asserts a qualified immunity defense, the court employs a two-part test. Under the first of the two-part qualified immunity test, the court must determine whether the facts alleged by the plaintiff, taken in the light most favorable to him, show that the conduct of the individual defendants violated a constitutional right. If the plaintiff fails to meet the threshold burden of demonstrating a constitutional violation, there is no necessity for further inquiries concerning qualified immunity. If, on the other hand, the plaintiff's factual allegations amount to a violation of a constitutional right, the next, sequential step is to ask whether the right was clearly established at the time of the defendants' unlawful conduct such that a reasonable person in the defendants' position would have known that the alleged conduct violated the federal right.

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

***HN4*** A *42 U.S.C.S. § 1983* claim must be based upon the violation of the plaintiff's personal rights, and not the rights of someone else.

Education Law > Civil Liability > Supervision of Students

***HN5*** School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property.

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

***HN6*** The provisions of *42 U.S.C.S. § 1983* are not meant to federalize state tort law.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Expressive Conduct

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition

***HN7*** The *First Amendment* protects, along with other modes of expressive conduct, the right to petition the government for redress of grievances. The Petition Clause is interpreted to apply in a variety of circumstances, i.e., the right to petition the representatives of the people in Congress , or to petition the executive branch, and the right of access to the courts.

316 F. Supp. 2d 1052, *1052; 2004 U.S. Dist. LEXIS 7863, **1

Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition

Labor & Employment Law > ... > Unfair Labor Practices > Employer Violations > Interference With Protected Activities

**HN8** When a plaintiff is not an employee of the defendants and no contractual relationship exists between the parties, the court employs the Worrell substantive standard to a retaliation claim brought pursuant to the Petition Clause of the *First Amendment*. Accordingly, the court looks to whether the plaintiff has alleged the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition

**HN9** There is no question that access to the courts is a constitutionally protected right. Yet, under the law of the Tenth Circuit, simply claiming a denial of access to the courts is not, in and of itself, a constitutionally protected activity. Rather, the Petition Clause requires that one's petition must comment upon matters of public concern.

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition

**HN10** There appears to be two views regarding the imposition of limitations, if any, on the Petition Clause. The first view is that the petition right, including the right of access to courts, may be subjected to exactly the same limitations as would other *First Amendment* rights under similar circumstances, such as the requirement that the matter be of public concern. Proponents of the second view contend that the petition right is fundamentally different from, and superior to,

the other *First Amendment* rights and that, as a result, the right to petition confers the same status on all petitions, regardless of their content or the context in which they are presented.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview

**HN11** Even outside the public employment context, the United States Court of Appeals for the Tenth Circuit requires that, in order for speech to be protected, it must touch upon a matter of public concern. Moreover, the filing of a lawsuit to vindicate private rights is not a matter of public concern.

Civil Rights Law > ... > Section 1983 Actions > Scope > Government Actions

Civil Rights Law > ... > Section 1983 Actions > Scope > Quasi-Public Facilities

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

Education Law > Civil Liability > General Overview

**HN12** For a plaintiff to establish *42 U.S.C.S. § 1983* liability against a school district, as a quasi-municipal agency, he must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged.

Civil Rights Law > ... > Immunity From Liability > Local Officials > General Overview

Education Law > Immunities From Liability > School District Immunity

**HN13** Government entities may not assert qualified immunity.

Civil Rights Law > ... > Immunity From Liability > Local Officials > General Overview

Governments > Local Governments > Claims By & Against

**HN14** The United States Court of Appeals for the Tenth Circuit holds that, where a court determines that the individual defendants committed no constitutional violation, municipal liability may not be imposed.

CORY RUSH

316 F. Supp. 2d 1052, *1052; 2004 U.S. Dist. LEXIS 7863, **1

Civil Procedure > ... > Jurisdiction > Subject Matter
Jurisdiction > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction >
Jurisdiction Over Actions > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction >
Supplemental Jurisdiction > General Overview

*HN15* When the bases for federal subject matter
jurisdiction have been extinguished, the district
court may decline to exercise continuing pendent
or supplemental jurisdiction over a plaintiff's
state claims. *28 U.S.C.S. § 1367(c)(3)*.

**Counsel:** Michael D Van Deelen, Plaintiff, Pro
se, Eudora, KS.

For Shawnee Mission Unified School District
No. 512, Karl Krawitz, Keith Burgat,
Defendants: Michael K. Seck, LEAD
ATTORNEY, Fisher, Patterson, Sayler & Smith,
LLP -- Overland Park, Overland Park, KS.

For Curtis Tideman, Lathrop & Gage L C,
Defendants: Kenneth L. Weltz, LEAD
ATTORNEY, Tammy M. Somogye, LEAD
ATTORNEY, Lathrop & Gage, LC -- Overland
Park, Overland Park, KS.

For Does, Defendant: Tammy M. Somogye,
LEAD ATTORNEY, Lathrop & Gage, LC --
Overland Park, Overland Park, KS.

**Judges:** Carlos Murguia, [**2] United States
District Judge.

**Opinion by:** Carlos Murguia

| Opinion |
|---|

## [*1054] MEMORANDUM AND ORDER

Plaintiff Michael D. Van Deelen, appearing pro
se, brings suit against defendants Shawnee
Mission Unified School District # 512 (the
School District defendant), and Karl Krawitz
and Keith Burgat (the individual defendants),
alleging violations of the *First* and Fourteenth
Amendments to the United States Constitution.
This matter is before the court on defendant
Shawnee Mission Unified School District # 512,

Karl Krawitz and Keith Burgat's Motion to
Dismiss Plaintiff's Second Amended Complaint
(Doc. 98); defendant Shawnee Mission Unified
School District # 512, Karl Krawitz and Keith
Burgat's Amended Motion to Dismiss Plaintiff's
Second Amended Complaint (Doc. 100);
plaintiff's Motion for Continuance (Doc. 103);
plaintiff's Motion to Strike Portions of
Defendants' Amended Motion to Dismiss or in
the Alternative Plaintiff's Motion to Amend
Complaint (Doc. 104); defendants' Motion to
Review and Objections to Magistrate Judge's
Order (Doc. 124); and plaintiff's Motion to
Review and Objections to Magistrate Judge's
Order (Doc. 136).

### I. Facts

As alleged in the Second Amended Complaint,
plaintiff's [**3] son, Matt Van Deelen, broke his
leg during football practice at Shawnee Mission
West High School (SMWH) on October 17,
2000. Plaintiff asserts that Matt received no
medical attention from any of the coaches
present. Plaintiff subsequently complained to
defendant Krawitz, SMWH principal, and told
defendant Krawitz that he would file suit against
the School District and its employees if
defendant Krawitz failed to satisfactorily resolve
the problem. Plaintiff alleges that in December
2000, in response to plaintiff's inquiry,
defendant Krawitz told plaintiff that there would
be no investigation and that, if plaintiff pressed
the matter, Matt's athletic career at SMWH
would be over.

Matt played football again in 2002. Before the
October 18th game, Matt became ill, and a
physician was summoned, who diagnosed Matt
with an elevated heart rate. Notwithstanding,
coach John Krug inserted Matt into the game.
Plaintiff met with defendant Krawitz several
days later to express his displeasure over Matt
being inserted into the game. Plaintiff alleges
that defendant Krawitz refused to investigate the
matter and that, in response, plaintiff threatened
to file a lawsuit.

On October 28, 2002, defendant [**4] Krawitz
prohibited plaintiff from entering any School

316 F. Supp. 2d 1052, *1054; 2004 U.S. Dist. LEXIS 7863, **4

District property, except to drop off and pick up his son at SMWH.

On November 19, 2002, SMWH held an academic awards banquet, which plaintiff claims only his wife and son, Matt, attended. The next day, plaintiff alleges that defendant Krawitz published a letter or memo to School District employee Gene Johnson "and others," accusing plaintiff of attending the awards banquet. The letter also accused plaintiff of refusing to accept three certified letters, violating the verbal directive of Johnson to remain off campus, violating warnings given to plaintiff by school security, having a bad record of behavior, being out of control, personally attacking unnamed persons on multiple occasions, being the most out-of-control parent defendant Krawitz had witnessed in 31 years of education, and being so threatening to defendant Krawitz that defendant Krawitz physically feared plaintiff. Plaintiff alleges that defendant Krawitz published another letter to School District personnel on November 22, 2002, accusing plaintiff of out-of-control behavior, making **[*1055]** threats, and using profanity during a certain meeting. On December 2, 2002, plaintiff **[**5]** filed a civil suit against defendant Krawitz and the School District for negligence, defamation, invasion of privacy, and intentional infliction of emotional distress.

On January 9, 2003, defendant Burgat, SMWH associate principal, called Matt into his office and suspended Matt from school for five days. Plaintiff alleges that Matt was suspended without cause and without due process. Defendants allege that Matt was suspended for "mooning" students at a wrestling meet at Lawrence High School (LHS) on January 7, 2003. Defendants were acting upon a statement from Dick Patterson, LHS Principal, who reported to defendants that, at the wrestling meet, Matt and plaintiff used inappropriate language and obscene hand gestures directed at the teachers, students, and himself, which included Matt mooning LHS students. Plaintiff claims that, at the meeting between Matt and

defendant Burgat, defendant Burgat denied Matt's request to summon plaintiff.

Defendant Burgat signed the document that formalized Matt's suspension. The document stated that Matt would be considered a student in good standing when he returned to school following his suspension. Matt signed the document, which was then sent **[**6]** to plaintiff's wife.

On January 10, 2003, plaintiff filed another lawsuit against defendant Krawitz and others, alleging that Matt was suspended without due process, and further alleging assault, criminal and terroristic threats, invasion of privacy, and extreme and outrageous conduct. Plaintiff contends that, on the afternoon of January 10, 2003, he told Curtis Tideman, attorney for the School District, that he had in fact filed another lawsuit. That same day, in a letter dated January 10, 2003, defendant Krawitz sent a letter to plaintiff stating that Matt had been removed from the wrestling team for Matt's inappropriate behavior at the LHS wrestling match. Plaintiff alleges that defendant Krawitz sent the letter after Tideman and defendant Krawitz spoke about plaintiff's second lawsuit. Defendants deny this allegation.

Plaintiff further alleges that he met with Tideman on January 13, 2003, at which time plaintiff claims Tideman attempted to threaten plaintiff into dropping his lawsuits. That same day, Tideman authored a letter to plaintiff, notifying plaintiff that he was no longer allowed on School District property due to plaintiff's conduct at the LHS wrestling match.

## **[**7] II. Motion to Dismiss Standard**

*HN1* The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*; *Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir. 1998)*, or when

316 F. Supp. 2d 1052, *1055; 2004 U.S. Dist. LEXIS 7863, **7

an issue of law is dispositive, *Neitzke v. Williams, 490 U.S. 319, 326, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989)*. The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher, 144 F.3d at 1304*, and all reasonable inferences from those facts are viewed in favor of the plaintiff, *Witt v. Roadway Express, 136 F.3d 1424, 1428 (10th Cir. 1998)*. The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984).*

[**8] [*1056] III. Discussion

Defendants move for dismissal, claiming that plaintiff fails to state a claim upon which relief may be granted and that the individual defendants are entitled to qualified immunity. Plaintiff moves the court to strike that portion of defendants' motion to dismiss which seeks dismissal on the grounds that plaintiff fails to state a claim. Plaintiff contends that defendants' motion on this basis is untimely. The court turns to the relevant procedural history of this case.

Pursuant to the court's Scheduling Order, all dispositive motions were due by January 30, 2004. Pursuant to that order, any motions to dismiss for failure to state a claim were to be filed by July 25, 2003. Plaintiff filed his Second Amended Complaint on July 22, 2003, which defendants moved to strike on the basis that plaintiff had not sought leave of court. The court, recognizing that plaintiff may have been confused by the Scheduling Order amendment provision, overruled defendants' motion to strike. By that time, the deadline to file motions to dismiss for failure to state a claim had passed.

Notwithstanding, defendants' motion to dismiss on the basis of qualified immunity is properly [**9] before the court. Plaintiff accordingly has responded to that part of defendants' motion to

dismiss which asserts qualified immunity. As such, the court will consider whether the individual defendants are entitled to qualified immunity.

A. Qualified Immunity

*HN2* Under certain circumstances, the affirmative defense of qualified immunity shields public officials from individual liability in actions brought under *42 U.S.C. § 1983*. *Harlow v. Fitzgerald, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)*. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001)*.

*HN3* Once a defendant asserts a qualified immunity defense, the court employs a two-part test. Under the first of the two-part qualified immunity test, the court must determine whether the facts alleged by the plaintiff, taken in the light most favorable to him, show that the conduct of the individual defendants violated a constitutional right. *Hope v. Pelzer, 536 U.S. 730, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002)* (citing *Saucier v. Katz, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001))*. [**10] If the plaintiff fails to meet the threshold burden of demonstrating a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier, 533 U.S. at 201*. If, on the other hand, the plaintiff's factual allegations amount to a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established at the time of the [defendants'] unlawful conduct such that a reasonable person in the [defendants'] position would have known that the alleged conduct violated the federal right." *Id.*

With respect to plaintiff's federal constitutional claims, plaintiff alleges that defendants, "acting individually and in conspiracy with one another, suspended plaintiff's son Matthew from school and removed him from the wrestling team and banished plaintiff from defendant SMSD

316 F. Supp. 2d 1052, *1056; 2004 U.S. Dist. LEXIS 7863, **10

property and defamed the plaintiff and colored the plaintiff in a false light in the public eye in retaliation for plaintiff's threatening to exercise his constitutional right of equal access to the courts and in retaliation for plaintiff's exercising his constitutional right of equal access to the court." (Second Amended [**11] Complaint, P 21).

As a preliminary matter, the court addresses plaintiff's allegations regarding [*1057] his son's suspension from school and removal from the wrestling team. Plaintiff's son, Matt, is not a named plaintiff in this lawsuit. As such, the court must keep firmly in mind the well-settled principle that *HN4* a *§ 1983* claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else. *Dohaish v. Tooley, 670 F.2d 934, 936 (10th Cir. 1982)* ("The *§ 1983* civil rights action is a personal suit. It does not accrue to a relative, even the father of the deceased."). Thus, regardless of what happened to plaintiff's son, this case turns upon whether plaintiff personally suffered any deprivation of a constitutional right possessed by him individually. *Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990)*.

Plaintiff also alleges that he was banished from school property. Plaintiff does not allege, nor could the court find authority supporting the notion, that plaintiff has a constitutional right to enter school property. To the contrary, *HN5* school officials have the authority to control students and school personnel on school [**12] property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property. *See, e.g., Carey v. Brown, 447 U.S. 455, 470-71, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980)* (stating that the Constitution does not leave state officials powerless to protect the public from threatening conduct that disturbs the tranquility of schools); *Goss v. Lopez, 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729 (1975)* (a school official's determination of the existence of an ongoing threat of disruption of the academic process can justify immediately removing a person from school property). Plaintiff has failed to allege that defendants' barring him from school property is a constitutional violation. *See Lovern v. Edwards, 190 F.3d 648, 656 (4th Cir. 1999)* (holding that non-custodial parent's claims that public school superintendent's order barring him from school property, on ground of parent's "continuing pattern of verbal abuse and threatening behavior towards school officials," violated parent's constitutional rights were "plainly insubstantial and entirely frivolous").

Finally, the court addresses plaintiff's [**13] allegation that he was defamed and colored in a false light. Plaintiff does not appear to assert that this conduct, in and of itself, was a constitutional violation. Moreover, plaintiff fails to identify any constitutionally protected liberty or property interest of which he was deprived as a result of this alleged conduct. As the Supreme Court repeatedly has stressed, *HN6 § 1983* was not meant to federalize state tort law. *See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989)*. Accordingly, plaintiff's allegations of defamation and invasion of privacy do not constitute a constitutional violation.

The court is left to consider plaintiff's claim that defendants engaged in the aforementioned conduct in retaliation for plaintiff's exercise of his right to access the courts.

*HN7* The *First Amendment* protects, along with other modes of expressive conduct, the right to petition the government for redress of grievances. The Supreme Court has interpreted the Petition Clause to apply in a variety of circumstances, noting the right to petition the representatives of the people in Congress, or to petition the executive branch, and the right [**14] of access to the courts. *Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972)* ("The right of access to the courts is but one aspect of the right of petition.").

316 F. Supp. 2d 1052, *1057; 2004 U.S. Dist. LEXIS 7863, **14

*First Amendment* retaliation claims are generally, but not always, brought in the public employment context. *Connick v.* [*1058] *Myers, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)*; *Pickering v. Bd. of Educ., 391 U.S. 563, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968)*. In this case, *HN8* plaintiff is not an employee of defendants, and no contractual relationship exists between the parties. The court therefore employs the substantive standard announced in *Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000)*. *See McCook v. Spriner Sch. Dist., 44 Fed. Appx. 896, 903 (10th Cir. 2002)*. Accordingly, the court looks to whether plaintiff has alleged the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially [**15] motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell, 219 F.3d at 1212*.

Pursuant to this approach, the court first examines whether plaintiff was engaged in a constitutionally protected activity. *HN9* There is no question that access to the courts is a constitutionally protected right. Yet, under the law of this circuit, simply claiming a denial of access to the courts is not, in and of itself, a constitutionally protected activity. Rather, the Petition Clause requires that one's petition must comment upon matters of public concern. *Martin v. City of Del City, 179 F.3d 882, 887 (10th Cir. 1999)*; *see generally Connick v. Myers, 461 U.S. 138, 147, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)*.

*HN10* There appears to be two views regarding the imposition of limitations, if any, on the Petition Clause. The first view is that the petition right, including the right of access to courts, may be subjected to exactly the same limitations as would other *First Amendment* rights under similar circumstances, such as the requirement

that the matter be of public concern. Kara Elizabeth Shea, *San Filippo v. Bongiovanni: The Public* [**16] *Concern Criteria and the Scope of the Modern Petition Right, 48 Vand. L. Rev. 1697 (1995)*. Proponents of the second view contend that the petition right is fundamentally different from, and superior to, the other *First Amendment* rights and that, as a result, the right to petition confers the same status on all petitions, regardless of their content or the context in which they are presented. *Id.*

For example, in *San Filippo v. Bongiovanni, 30 F.3d 424 (3rd Cir. 1994)*, the plaintiff brought a *§ 1983* claim, alleging he had been retaliated against by his government employer for filing grievances and bringing a libel action in state court against university administrators. The Third Circuit held that the right to petition need not always require that the subject matter of the petition address a matter of public concern, reasoning: "[Plaintiff's] expressive conduct was not limited to speech. It included the filing both of lawsuits, and also a grievance under a collective bargaining agreement, against the [defendants], activities that implicate the petition clause, rather than the free speech clause, of the *First Amendment*." *Id. at 434-35*. [**17]

In *Martin v. City of Del City*, the Tenth Circuit considered and specifically rejected the Third Circuit's holding in *San Filippo*. The court stated:

> We are, however, persuaded by Judge Becker's dissent in *San Filippo* to "adopt the position of the seven other circuits which hold that a public employee plaintiff who has 'petitioned' is in no better position than one who has merely exercised free speech." [*San Filipo*] at 449; see *San Filippo, 30 F.3d at 440 n.19* and cases there cited. And, we note, that such other *First Amendment* claims must meet the "public concern" test.

[*1059] *Martin, 179 F.3d at 889*. In

*Martin*, the court also cited to a previous Tenth Circuit opinion, *Schalk v. Gallemore, 906 F.2d 491, 494, 497-98 (10th Cir. 1990)*, wherein the court held: "[Plaintiff's] right to petition is inseparable from her right to speak. As such, we see no reason to subject this claim to a different sort of analysis." *Martin, 179 F.3d at 888* (citing *Schalk, 906 F.2d at 499* (citation omitted)). Accordingly, the *Schalk* court held that the public concern test applied to plaintiff's **[**18]** claim under the Petition Clause.

The court recognizes that the plaintiff's claims in *Martin* were brought in the public employment context. Yet, it appears the public concern requirement is applicable even outside the public employment context. In *McCook v. Spriner School District*, the parents of an expelled high school student, who were barred from entering school property, alleged that the school district and several of its employees retaliated against them for exercising their *First Amendment* rights. *44 Fed. Appx. 896 (10th Cir. 2002)* (unpublished). The plaintiffs contended that this *First Amendment* retaliation was in response to their complaints, lawsuits, and other objections regarding the school district. Specifically, the plaintiffs' criticisms included allegations about the incompetent administration of the school district; loss of students from the district and improper disciplinary practices; violations of State Board of Education policies, the *Open Meetings Act,* and the district's own policies; unconstitutional use of drug-sniffing dogs on campus; and the school board's wrongful restriction of public input at board meetings. Additionally, in June 1998, **[**19]** the plaintiffs filed a lawsuit against a board member because the son of the board's president was selected as a scholarship recipient instead of the plaintiffs' son. Several days before plaintiffs' son's suspension, the plaintiffs' also filed a complaint of reverse racial discrimination against the board, contending that the board hired a much less qualified Hispanic individual for a teacher position.

The plaintiffs' in *McCook* argued that, where no employment or contractual relationship exists between the parties, there is no requirement that protected speech involve matters of public concern. In considering the plaintiffs' argument, the court cited to *Dishnow v. Sch. Dist. of Rib Lake, 77 F.3d 194, 197 (7th Cir. 1996)*, which held that the rights of public employees to exercise free speech is limited to speech on matters of public concern. The *McCook* court stated, "While this conclusion was reached in reviewing the law governing public employee free speech claims, we think the Seventh Circuit's view of 'public concern' is compelling on the facts of this case." *McCook, 44 Fed. Appx. at 904*.

Even more instructive in *McCook* is the very **[**20]** next paragraph, wherein the court stated that "some of the [plaintiffs'] activities were not protected by the *First Amendment, for example, filing a lawsuit to vindicate private rights (not a matter of public concern)." Id.* (citing *Rice v. Ohio Dep't of Transp., 887 F.2d 716, 720-21 (6th Cir. 1989)*, vacated on other grounds, *497 U.S. 1001, 111 L. Ed. 2d 744, 110 S. Ct. 3232 (1990)*). Thus, *HN11* even outside the public employment context, the Tenth Circuit requires that, in order for speech to be protected, it must touch upon a matter of public concern. Moreover, the filing of a lawsuit to vindicate private rights is not a matter of public concern.

In the case at hand, plaintiff's sole basis for his retaliation claim is that he filed other lawsuits against defendants. Those lawsuits, which included claims for negligence, defamation, invasion of privacy, intentional infliction of emotional distress, assault, criminal and terroristic threats, and extreme and outrageous conduct, and this lawsuit, which alleges a civil rights claim under *§ 1983*, merely seek **[*1060]** redress for plaintiff's private rights. In other words, plaintiff is not advancing a cause or claiming that there is a bigger **[**21]** pattern of official misconduct. Rather, the substance of those lawsuits are aimed at achieving only redress for plaintiff's private grievances. *See,*

316 F. Supp. 2d 1052, *1060; 2004 U.S. Dist. LEXIS 7863, **21

*e.g., McCormick v. City of Lawrence, 253 F. Supp. 2d 1156, 1170 n.8 (D. Kan. 2003)* (finding plaintiff's *§ 1983* claim not a matter of public concern).

Therefore, pursuant to the law of this circuit, the court concludes that plaintiff was not engaged in a constitutionally protected activity. As such, there can be no constitutional violation, and defendants Krawitz and Burgat are therefore entitled to qualified immunity. [1]

The only remaining defendant is the School District. *HN12* For plaintiff to establish liability against the School District, as a quasi-municipal agency, he "must show 1) the existence of a municipal policy or custom, and 2) that there [**22] is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).*

The School District is not entitled to assert the defense of qualified immunity. *Owen v. City of Independence, 445 U.S. 622, 650-53, 63 L. Ed. 2d 673, 100 S. Ct. 1398 (1980)HN13* (government entities may not assert qualified immunity). However, in the course of considering whether the individual defendants are entitled to qualified immunity, the court has found no constitutional violation. *HN14* The Tenth Circuit has held that, where a court determines that the individual defendants committed no constitutional violation, municipal liability may not be imposed. *Butler v. City of Prairie Vill., 172 F.3d 736, 747 (10th Cir. 1999)* ("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."). *See also Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996)* ("A municipality may not be held liable where there was no underlying constitutional [**23] violation by any of its officers."). Accordingly, plaintiff's claims against the School District cannot stand.

**B. Remaining Motions**

The court concludes that the allegations contained in plaintiff's Second Amended Complaint do not amount to a constitutional violation of plaintiff's rights. In reaching this conclusion, the court excludes from consideration that portion of defendants' motion to dismiss which seeks dismissal on the grounds that plaintiff fails to state a claim. As such, the court denies as moot plaintiff's Motion to Strike Portions of Defendants' Amended Motion to Dismiss. Plaintiff also moved for a continuance, requesting that he be allowed to file his response to that portion of defendants' motion to dismiss for failure to state a claim until after the court rules on plaintiff's motion to strike. As such, plaintiff's Motion for Continuance also is denied as moot. Plaintiff alternatively requested an order granting leave to amend his Second Amended Complaint, but failed to attach a copy of his proposed amended complaint. Because plaintiff failed to set forth in his motion the substance of the proposed amendment, the court denies plaintiff's request. Finally, the [**24] court denies as moot both parties' Motions to Review and Objections to Magistrate Judge's Order.

**C. Remaining State Law Claims**

The preceding analysis effectively disposes of all of plaintiff's claims arising [*1061] under federal law. Thus, the bases for federal subject matter jurisdiction have been extinguished. *HN15* Under these circumstances, the district court may decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state claims. *28 U.S.C. § 1367(c)(3)*; *United Mine Workers v. Gibbs, 383 U.S. 715, 725-26, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)* ("If the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). The court therefore dismisses without prejudice plaintiff's state law claims.

---

[1] At the very least, the law was not clearly established that plaintiff's conduct was constitutionally protected, thus entitling defendants Krawitz and Burgat to qualified immunity on this basis as well.

316 F. Supp. 2d 1052, *1061; 2004 U.S. Dist. LEXIS 7863, **24

**IT IS THEREFORE ORDERED** that Defendants Shawnee Mission Unified School District # 512, Karl Krawitz and Keith Burgat's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 98) and Defendants Shawnee Mission Unified School District # 512, Karl Krawitz and Keith Burgat's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 100) are granted. Plaintiff's Motion for Continuance (Doc. **[\*\*25]** 103); Plaintiff's Motion to Strike Portions of Defendants' Amended Motion to Dismiss or in the Alternative Plaintiff's Motion to Amend Complaint (Doc. 104); defendants' Motion to Review and Objections to Magistrate Judge's Order (Doc. 124); and plaintiffs' Motion to Review and Objections to Magistrate Judge's Order (Doc. 136) are denied. This case is hereby dismissed.

Dated this 18 day of February 2004, at Kansas City, Kansas.

**s/ Carlos Murguia**

**United States District Judge**